# EXHIBIT 29

11/17/2003  09:31 FAX-202-982...   Systematic Biology

OV-14-03 11:03A                                                    P.02

112 Greenhill Road
Greenbelt, MD 20770

November 13, 2003

Wayne Mathis, Ph.D.
Ted Schultz, Ph.D.
National Museum of Natural History
10th & Constitution Ave., N.W.
Washington, D.C. 20560-0105
By Courier and by fax (202-786-2894)

Dear Wayne and Ted:

As you know, three years ago I nearly died from the Dengue Hemorrhagic Fever
(DHF) that I contracted while doing field work for the Smithsonian. Since then, I've
returned to work twice on "light duty" hours without any accommodations specific to the
naphthalene sensitivity and other disabilities acquired as a result of the DHF.

During my last period of "light duty" hours, my doctors, the Smithsonian Health
Professionals, and I made repeated, specific requests for accommodations, including
flexible hours and a reduction of naphthalene exposure. As Ted acknowledge in his
letter, information from my doctors was conveyed to you. Neither of you however,
followed the advice of the doctors, nor did you give me the accommodations that have
routinely been given to other department members with less serious needs. Instead, you
relied upon legal counsel to draw up a restrictive, time specific return to work document
that you used to prevent me from making up time missed as a result of medical
appointments. Although I had spent the previous two decades working independently at
the museum after hours and on weekends, I was suddenly perceived as incapable of
working any time other than my new "agreed upon" hours in the presence of others. Not
only was I not given the accommodations that I needed, I was treated as being less
capable of independent judgment and initiative than I was before my illness. As a direct
result of these restrictive regulations, there were several weeks in which I was unable to
work twenty hours, even though I would have been capable of doing so if my time had
not been restricted.

In response to my continued request for accommodations, you, legal counsel and
others held a meeting in late October. Although medical personnel raised several viable
accommodations, you chose not to adopt any of them. You also chose not to involve me
in any of the discussion and decision making. Instead, you chose to terminate my light
duty status. As a result of this meeting, I was given the attached memo terminating my
light duty hours as of November 30, 2002.

Nothing in the memo suggests that the Smithsonian was prepared to
accommodate my disability even if I were to work full time. After I was given the memo,
neither you nor anyone else in the department discussed accommodations or any other
plan for my return. In fact, when I was given the memo I asked if I could discuss it and
was told that I could not. On Nov. 29, 2002, I sent a memo by email to you and several

*[handwritten margin note:]* Miller & staff considered it and denied it prior to prop...

*[handwritten margin note:]* ?

others asking, "Will anything dealing with my exposure be different upon return, or is my return based upon no longer being sensitive to naphthalene?" My only response was from Dr. Lawford who stated, "This is a 100% management question as to what they can offer you, so sorry, I can't speculate on this one."

I was told to contact Carolyn Lohr about any disability related questions. I made numerous attempts to reach her and sent her the attached emails asking how I could return to work. The only reply I received from her was that my doctor would have to determine when I could work full time. She, like the rest of Smithsonian management, declined to address my need for accommodations. Despite my ongoing, well-documented need for accommodations, I have not been offered anything other than temporary light duty, nor have I been given any sort of directions in regard to updating anyone as to my medical progress.

After you terminated the light duty, I continued to contact Dr. Lawford, who told me that my file was "inactive." We spoke informally at least once a month, primarily because Dr. Lawford took a personal interest in my near-fatal illness and continued recovery. After I left, he was sufficiently involved with my care to consult with one of my doctors on my medical status and history. He has never, however, suggested that I should be consulting with him on a more formal basis or that my file had been reactivated.

I have now received a letter from you noting that I had not updated Dr. Lawford as to my medical status and that you propose to remove me from the rolls. If my medical file at the Smithsonian is no longer "inactive" and Dr. Lawford is again able to review my doctors' reports, I would like him to do so because I very much want to come back to work for the Smithsonian. I am still a productive and capable scientist; in fact, I have continued to make significant contributions to the field of entomology even while out on disability.

In order for my doctors to be able to evaluate my ability to work full time, I need the following information as to my working environment:

1. How will my naphthalene sensitivity be accommodated?
2. Will I be given flexible working hours so that I can go to doctors' appointments or leave early if the migraines triggered by the DHF recur?
3. Will a protocol be put into place to protect me from retaliation or continued hostility to my need for accommodation?

I believe that I will be able to work full time if I am given appropriate accommodations, and I am deeply disappointed that I have not been allowed to do so thus far. After over 20 years of devoted service, the publication of more than 50 scientific papers, a Fulbright Scholarship, two Unsung Hero Awards, and a long and painful illness suffered as a result of doing work for the Smithsonian, I believe that I am now being treated as if I were too compromised by my illness to merit the routine considerations given to others. I hope that you or Wayne will contact my attorneys, Vickie Fang, Esq. and Alex Slibeck, Esq. They both can be reached at (301) 552-4908, by email at fvickie@comcast.net, or by mail at Law Office of Vickie Fang, 8702 Nightingale Drive, Lanham, MD 20706. I hope to have my questions as to

working conditions answered, and I hope to come back to work. I am looking forward to your reply.

Sincerely,

*Beth B. Norden*

Beth Norden, Ph.D.

Enclosure

Cc: Christian Samper, Director, National Museum of Natural History

# EXHIBIT  30

3013451697

OCT 02,2006 17:36

## Memorandum

**To:** Wayne Mathis
Chair, Department of Entomology

**From:** Ted Schultz
Department of Entomology

**Date:** 17 December 2003

**Subject:** My resignation as Norden's supervisor

**CC:** Scott Miller

I want to make it perfectly clear that in the event that Beth Norden returns to duty in the Department of Entomology, I **will not** serve as her supervisor.

This reiterates a request I made almost two years ago in a memo dated 22 March 2002 (copy attached), which was ignored at the time.

In her letter of 13 November 2003, transmitted via her attorney Vickie Fang, Beth requests a "protocol" to protect her from the "retaliation" and "continued hostility" that she expects to encounter when she returns. Given this fear, and given the events that have transpired during the three years since Beth contracted dengue fever, I think a "fresh start" is in the best interests of both Beth and myself. In my opinion, Beth should be assigned to another supervisor and another unit, ideally outside of Entomology.

Whatever your decision, however, I refuse to continue as her supervisor. I am willing to continue to serve in this role in the present context of interacting with OHR regarding whether or not Beth will be separated from her position or whether she will return to work. If it becomes clear that she will return, however, then I'm afraid that you will need to assign her to a new supervisor.

I apologize for any inconvenience that this decision may cause for you and the Department.

**SI-1237**

# EXHIBIT  31

To: Era Marshall
Fax # (202) 275-0160
From: Vickie Fang, Esq. fax no. (301 552-4435)
Email address: fvickie@comcast.net
Re: Beth Norden, Ph.D., Informal Complaint of Retaliation
Date: April 19, 2004
Total no of pages including cover:
By fax and by mail to:
Era Marshall
OEEMA
Smithsonian Institution
P.O. Box 37012
Victor Bldg., Ste. 8100, MRC 921
Washington, DC 20013-7012


Dear Era Marshall,


Please be advised that this notification constitutes an informal complaint being filed by
Beth Norden, Ph.D., regarding the Return to Work Document from the Smithsonian
Institution (Attached with this complaint) and dated April 8, 2004.  The Smithsonian
Return to Work Document constitutes new and independent adverse employment action
and is retaliatory.


The Smithsonian Return to Work Document establishes new and independent grounds of
retaliation as follows:

1.  The Smithsonian has committed an entirely separate wrong by conditioning Dr.
    Norden's accommodations/reinstatement on a waiver of her rights.  The
    Smithsonian is retaliating against Dr. Norden by conditioning Dr. Norden's
    accommodations/reinstatement on the grounds that Dr. Norden waive all of her
    presently outstanding claims and complaints as of this date: April 18, 2004.


2.  The Smithsonian has committed an entirely separate wrong by conditioning Dr.
    Norden's accommodations/reinstatement on a waiver of her rights.  The
    Smithsonian is retaliating against Dr. Norden by conditioning Dr. Norden's
    accommodations/reinstatement on the grounds that Dr. Norden waive: 1)  her
    right to grievance/arbitration procedures, 2) her right to appeal to the MSPB, and
    3) her right to file suit in Federal or State court regarding conduct taken against
    her in the future based on the Smithsonian Return to Work Document.

3. Furthermore, the Smithsonian has committed an entirely separate wrong by retaliating against Dr. Norden and refusing to provide full relief to Dr. Norden in the terms and conditions of her accommodations/reinstatement as follows:

   a. failing to follow the recommendations provided by its own medical personnel;
   b. changing her work description and responsibilities from research support to collections support so that she wouldn't be doing projects like she used to do;
   c. assigning Dr. Norden work that focused on such insects as flies and lice rather than the hymenoptera which were her area of expertise and had been her primary focus during her previous years at the Smithsonian;
   d. for the first time in Dr. Norden's long tenure with the Smithsonian, assigning Dr. Norden to work for a manager with far less formal education and knowledge of Dr. Norden's area of expertise than Dr. Norden has;
   e. reducing Dr. Norden's accumulated sick leave and vacation leave;
   f. imposing an unrealistic work plan with arbitrary time restrictions and the threat to dismiss Dr. Norden if she fails to meet any of the work plan's requirements;
   g. assigning Dr. Norden a probationary status by holding her "separation in abeyance while she demonstrates satisfactory performance and attendance as shown by compliance with this agreement, as judged at the end of each 320-hour (8 week) review cycle." and
   h. restricting Dr. Norden's options in selecting her own work hours so that she would lose the scheduling flexibility that she (like her peers) had routinely enjoyed in the past.

Sincerely,


Vickie I. Fang, Esq.

# EXHIBIT  32

## Vickie Fang

**From:**      "Marilyn Slomba" <SlombaM@HR.si.edu>
**To:**        <fvickie@comcast.net>
**Sent:**      Wednesday, September 08, 2004 2:31 PM
**Attach:**    DUE _9_23_04 Position Identified.eml
**Subject:**   Fwd: DUE: 9/23/04 Potential Position Identified

Forwarding the vacancy announcement mentioned in the earlier e-mail together with Ms. Davis' directions to Dr. Norden on what is needed for a response. That response would be due by September 23, 2004.

The announcement includes a selective factor in addition to general qualification requirements for this job series. As is stated in the announcement and established in Smithsonian's Merit Placement Program, applicants must meet the selective factor in order to be considered qualified for the position.

So in her response it would be essential for Dr. Norden to provide a statement of her knowledge of professional museum registration methods and collection management standards used in a zoo or similar wildlife setting.

If Dr. Norden is found to be qualified for the position, she would not need to compete for it. Therefore it is not required that she address the quality ranking factors. But it would be helpful if she were to include with her response any pertinent information regarding those knowledges and skills.

Please let me know if you have any questions on the vacancy or the process.

Marilyn Slomba

# EXHIBIT  33

**Smithsonian**
*National Museum of Natural History*

Department of Entomology
PO Box 37012, NHB CE 619, MRC 169
Smithsonian Institution
Washington, D.C. 20013-7012

October 8, 2004

Dr. Beth Norden
112 Green Hill Road
Greenbelt, MD 20770

Dear Dr. Norden:

It was my decision on the November 5, 2003 proposal to separate you from your position of Museum Specialist (Zoology), GS-1016-11, and from the rolls of the Smithsonian. The basis for the proposal was your inability to perform the duties required for your position.

I received the response that you sent on November 13, 2003, addressed to both the proposing official and myself. You wrote that you very much wanted to come back to work for the Smithsonian and that you believed you would be able to work full time if given appropriate accommodations. You stated your willingness to have your doctors provide information regarding your ability to work full time to the Smithsonian Occupational Health Physician, Dr. Thomas Lawford. In that letter you designated your attorney, Vickie Fang, Esq. as your representative in this matter.

On December 23, 2003, Dr. Lawford reported that he had recently received two medical reports from your treating physicians, Donald Oberg, Ph.D. and David Granite, M.D. and that he had received clarification and additional information from his discussions with them. They advised him that you were capable of performing your full duties for 40 hours per week, although Dr. Oberg proposed a review of your job description and of who would be providing your supervision. Both your doctors believed that you would require protection from exposure to naphthalene to avoid triggering migraines. No one could predict what the frequency of migraines might be once you re-entered the naphthalene ambient atmosphere in our department. Your doctors advised a flexible work schedule because you have numerous medical appointments each month and would need to take leave for some of those as well as for the migraines.

An agreement was written to outline the arrangements by which you would return to work under conditions that would meet the needs your doctors were recommending. The agreement was reviewed by Dr. Lawford and by the Smithsonian Office of Equal Employment and Minority Affairs' Disability Program Manager. The agreement was received by Ms. Fang on April 8, 2004. At her request, the performance plan and the work plan that had been written to more fully define the agreement terms were sent the same day. The agreement projected your return to work on April 18, 2004.

Ms. Fang responded on April 16, 2004, that you would not be able to report to work on April 18, and advised that a further response would be forthcoming. In an April 21 e-mail message, Ms. Fang reiterated that you objected to the agreement and indicated that she would respond promptly to any new proposal we wished to make.

It is apparent to me that management did make a good faith effort to alter your assignments and work schedule in the draft agreement and accompanying plans you received on April 8. The intent was to achieve a clear understanding of expectations as a basis for an agreement on the adjustments made to enable you to return to your GS-11 Museum Specialist position. Since Ms. Fang made it clear that you did not wish to sign the agreement, a restatement of the plan for your return to work within the limitations recommended by your doctors was sent to Ms. Fang on April 22, 2004,

SMITHSONIAN INSTITUTION
National Museum of Natural History
10th & Constitution Avenue NW
Washington DC 20560

without agreement provisions. She was asked to provide any proposed alterations within the following week so that you could return to work on May 3, 2004.

In an April 30, 2004 letter, Ms. Fang strongly objected to the return to the plan that was sent on April 22. She claimed that the necessary limiting of naphthalene exposure could be accomplished by returning you to your former research support position, and that the proposed work plan required a career change from research to collections work involving direct rather than ambient contact with naphthalene. Ms. Fang objected to the species of insect and to the education level of the supervisor with which you would be assigned to work. She also claimed that the proposed work schedule and periodic performance reviews were retaliatory. Ms. Fang stated that she was advising you not to return to work until a more acceptable effort was made to safeguard you from environmental hazards and what she viewed as retaliation.

Management's response to the April 30, 2004 letter was sent to Ms. Fang by Marilyn Slomba, the Smithsonian Human Resources Specialist representing management, on June 9, 2004; it noted that the only alternative Ms. Fang had proposed was to simply return you to your former research position. The June 9 message clearly stated that the plan for your return to work, which was sent again with the June 9 message, was consistent with your position description and with the duties you performed prior to your illness. It cited an October 17, 2002 report resulting from a study conducted by the Smithsonian Office of Safety and Environment Management, which noted that your work prior to your illness involved constant exposure to low level of naphthalene.

The June 9, 2004 message reiterated that the 2004 work plan was designed to minimize naphthalene exposure as much as possible within the requirements of your position. It pointed out that your office would be moved to the fourth floor of the East Court of the Natural History Building, where there are no permanent collections and the ambient naphthalene levels are lower, and that the office was located almost directly across from the ventilated room where OSEM recommended that you conduct all your work. It explained that the performance review schedule was intended to provide you with feedback on your performance, and that the proposed alternative work schedule was designed to facilitate scheduling of medical appointments and to assist you in making up unscheduled leave. The message concluded by advising you that failure to return to duty by July 12, 2004, under the provision of that attached plan, would be considered as a basis to separate you for inability to perform the duties of your position, as was proposed on November 5, 2003. On June 19, 2004, Ms. Fang confirmed that she had conveyed to you the message that was faxed to her on June 9, and that you were aware of the July 19 deadline.

Ms. Fang responded by e-mail on July 7, 2004, informing us that you were declining the return to work plan, which you saw as being at variance with your doctors' recommendations. In that message she conveyed your belief that there were other positions at the Smithsonian for which you would be qualified that do not require exposure to naphthalene. She inquired if there were any such positions that had opened since the past fall or were anticipated to open in the near future. Ms. Slomba's response on the same day was that current Smithsonian federal vacancies at or below Dr. Norden's grade level would be reviewed before any further action was taken on the proposal to remove. Ms. Fang was asked to provide an updated copy of your resume by July 14, 2004, to ensure that Smithsonian's Office of Human Resources has the most recent information on your qualifications. Ms. Fang sent your resume by fax on July 16, 2004, and Ms. Slomba provided it to Audrey J. Davis, the HR Specialist assigned to search for vacant positions for which you might be qualified.

Ms. Davis sent you a message by e-mail on September 8, 2004, regarding a vacant position at the Smithsonian's National Zoological Park (NZP) for which she thought you might be qualified. Among the vacancies announced from the date you provided your resume through the following 30 days, that was the only one for which Ms. Davis found you might qualify. In her September 8 message, Ms. Davis asked you to respond to the selective factor listed on the vacancy announcement by September 23. Ms. Slomba confirmed that information in an e-mail message to Ms. Fang on the same date. On September 13, you sent an e-mail message to Ms. Davis acknowledging receipt. On September 23, Ms. Fang sent a response to Ms. Slomba, in which she stated that the specialized knowledge required for the zoological registration specialist position is entirely different from your specialized knowledge based on your education and subsequent years of experience in research and research support in the highly specialized field of entomology. Ms. Fang informed us that you would not pursue the NZP position although you continued to look

forward to the opportunity to resume a full time position in entomological research. No such vacant positions were identified by Ms. Davis during her search.

After my review of the information on which the proposal was based and the efforts made in identifying and considering potential accommodations as described above, it is clear to me that we are not able to accommodate your doctors' recommendations, in manner that you find acceptable, that would allow you to do the work of your position of Museum Specialist. I also find that when you clearly declined further consideration of returning to that position and provided a current resume, a search was made to identify another vacant Smithsonian position for which you would be qualified, but that effort was unsuccessful.

Since we are unable to plan for your return to duty, I believe that your separation from Smithsonian rolls is warranted, based on your inability to perform the essential duties of your position. The effective date will be October 15, 2004.

Your separation from Smithsonian rolls will not, in any way, interfere with decisions of the Department of Labor's Office of Workers' Compensation regarding the compensation you are receiving. If you have questions regarding OWCP or any other benefits to which you may be entitled, please contact the Benefits Branch of the Smithsonian Office of Human Resources at 202-275-1102.

If you believe this action is not warranted, you may appeal to the Merit Systems Protection Board (MSPB) or you may file a grievance under the negotiated agreement between the Smithsonian Institution and the American Federation of Government Employees, Local 2463. You may not file both a written grievance and an appeal. An appeal must be filed within 30 calendar of the effective date of this action; a grievance must be filed within 20 calendar days of the effective date of this action. An appeal to the MSPB should be filed on the attached Appeal Form 185. It must be filed by mail, by facsimile or by personal delivery during normal business hours to the Regional Director, Merit Systems Protection Board, Washington Regional Office, 1800 Diagonal Road, Suite 205, Alexandria, Virginia 22314. If you file an appeal to the MSPB after the time limit, the appeal must be accompanied by a motion for wavier of the time limit containing evidence and argument showing good cause for the untimely filing. A copy of 5 CFR, Part 1201, "MSPB practices and Procedures," is attached for your information.

If you believe this action is being taken wholly or in part because of discrimination based on race, color, religion, sex (including sexual harassment), national origin, disability, or age, you may include the allegation in any grievance or MSPB appeal you choose to file on this action. Alternatively, you may file a discrimination complaint with the Smithsonian Office of Equal Employment and Minority Affairs (OEEMA), 750 Ninth Street, N.W. Suite 8100, Washington, DC 20560, within 45 days of the effective date of this action. For information about filing a discrimination complaint, please see the Smithsonian Staff Handbook for Equal Opportunity, SSH 1300, Chapters 10-13, or call 202-275-0145. If you file a discrimination complaint, the complaint must be instead of (not in addition to) a written grievance or appeal.

If you would like advice about your rights or about the procedures to follow, please contact our Human Resources Specialist, Audrey Davis, 750 Ninth Street, NW, Suite 6100, 202-275-1005.

Sincerely,

Wayne N. Mathis

Enclosures:     MSPB Practices and Procedures
                MSPB OF 185

cc:     Vickie Fang, Esq.

# EXHIBIT  34

## INTERROGATORY NO. 18

EXPLAIN and DESCRIBE any legitimate, nondiscriminatory reasons for the clauses in the April 2003 Return to Work offer, which differed from her previous conditions of employment, that: required Plaintiff to be reviewed every 8 weeks, required her to lose her position if she failed to meet any deadline for any reason, required her to work under much more tightly defined schedules than she had worked under during her career at the Smithsonian, required her to do collections work, required her to work for someone whose formal education ended with a bachelor's degree, and required her to relinquish all complaints and causes of action.

## RESPONSE:

Subject to and without waiver of defendant's general objections, defendant responds as follows: Defendant objects to any attempt by plaintiff to state a cause of action relating to the Return to Work offer. Such offer was made during an effort to settle plaintiff's administrative claims of discrimination and, therefore, is a protected communication pursuant to Federal Rule of Evidence 408.

## INTERROGATORY NO. 19

EXPLAIN the DECISION to give Dr. Norden the NOVEMBER 2002 MEMO putting her on disability status rather than implementing the accommodations recommended by Ms. Makos and Dr. Lawford.

## RESPONSE:

Subject to and without waiver of defendant's general objections, defendant responds as follows: The Smithsonian denies that it decided to put Dr. Norden "on disability status rather than implementing the accommodations recommended by Ms. Makos and Dr. Lawford." The

# EXHIBIT  35

Law Office of Vickie Fang
8702 Nightingale Drive
Lanham, MD  20706
fvickie@comcast.net

August 16, 2006

John Henault, Esq.
Assistant United States Attorney
555 Fourth Street, N.W. – Civil Division
Washington, D.C.  20530

Re. Norden v. Small

Dear Mr. Henault:

First, thank you for mailing the document production rather than having me make
a trip downtown to select them.  Being able to stay inside during Friday's heat was much
appreciated.  Also, many of the discovery responses were very thorough, and I appreciate
that as well.  I do, however, have a series of questions which may be considered informal
objections that I would like to discuss with you in the hopes that we can reach an
understanding without litigation.  My concerns are as follows:

## I.      Privilege Log and Interrogatory Number 18

Nine of the twenty one documents listed seem to be emails between lay people
and are labeled "work product privilege."   The dates on the emails are given (though
the date on SI-2132 – SI 2135 is incorrect), and the names of the correspondents are
given, but there is no summary of the contents and no explanation as to why this
material is considered privileged.  Given that most of these emails were written at
about the time that the return to work offer was made to Dr. Norden, I'm guessing
that the emails concern this offer.  The Answer to Interrogatory Number 18 consists

of a refusal to give any information about reasons for the April 2004 return to work
offer, citing Federal Rule of Evidence 408 for the proposition that the offer and
everything concerning the offer are protected settlement communications.

As we have filed a claim of retaliation based on this offer, we consider this
information very important.  We do not consider the 2004 return to work offer to be a
settlement offer, and our belief is strengthened by the fact that no correspondence
with attorneys appears during the relevant time frame.   Apparently, the Department
of Justice doesn't regard this offer as privileged since several interrogatory answers
rely upon elements of the offer, taking the position that Dr. Norden was
uncooperative with the accommodation process because she declined the
"settlement."  Surely, you don't expect to offer her refusal into evidence while
claiming that the contents of the refused offer are privileged.

Furthermore, even if the return to work offer were an attempt at settlement, we
still have the right to discover all documents and conversations regarding it.  As the
federal rule you cited and decisions based on the rule make clear, not all documents
and discussions labeled "settlement" are inadmissible, nor does the question of their
admissibility make them unavailable for discovery.  Carney v. American University,
151 F.3d 1090, 331 U.S.App.D.C. 416 (1998) holds as follows: "although settlement
letters are inadmissible to prove liability or amount, they are admissible 'when the
evidence is offered for another purpose.' FED. R. EVID. 408.  In particular, such
correspondence can be used to establish an independent violation (here, retaliation)
unrelated to the underlying claim which was the subject of the correspondence."
Like the plaintiff in Carney, we are alleging an independent violation (here, also

retaliation) that was committed during the course of what the Smithsonian terms an attempt at settlement. The <u>Carney</u> court concluded "Carney offered the settlement correspondence not to prove that the University discriminated against her, but to show that the University committed an entirely separate wrong by conditioning her benefits on a waiver of her rights. The letters were therefore admissible." We make the same allegation, and all documents and correspondence concerning settlement are admissible for the same reasons.

Furthermore, even if the Smithsonian wishes to maintain its position that that information regarding the settlement is inadmissible, contrary to the holding in <u>Carney</u>, accord, <u>Council for National Register of Health Service v. American Home Assurance</u>, 632 F.Supp 144 (1985), it does not follow that the documents are exempt from discovery. As the court held in <u>Center for Auto Safety v. Department of Justice</u>, 576 F.Supp. 793 (1983)"The protection afforded by Rule 408 is far less broad than than the DOJ asserts. While its intent is to foster settlement negotiations, the sole means chosen to effectuate that end is a limitation on their admission of evidence produced during settlement negotiations for the purpose of proving liability at trial, not the application of a broad discovery privilege." In explaining that Rule 408 limits a document's relevance at trial, but not its disclosure for other purposes, the Court cited Weinstein's Evidence Par. 408[1] at 408-14 (1981) "The policy of allowing open and free negotiations between parties by excluding conduct or statements made during the course of these discussions is not intended to conflict with the liberal rules of discovery embodied in the Federal Rules of Civil Procedure." I therefore request that all documents concerning the return to work offer be produced immediately so

that I can review them prior to depositions.  I also intend to ask questions about the

return to work offer of 2004 during next week's depositions and expect to receive

frank and complete answers to those questions

The final document listed (SI-2442 – SI-2443) is labeled attorney client privilege,

though I am not clear as to who the attorney is.  Was Marilyn Slomba ever an

attorney?  Please also explain the basis of this claim of privilege.


## II.     Document Responses

1.  You have objected to Requests numbered 1 – 4 as they inquire into positions that

    were open at the time Dr. Norden was seeking accommodations but that Dr.

    Norden did not apply for individually.  Prior to the time that these positions were

    filled, Dr. Norden had satisfied all the requirements imposed by the Personnel

    department to be considered for a full time position with reasonable

    accommodations.  After ignoring all relevant positions in her field, Personnel

    made a single job offer -- a position at the zoo which did not make use of her

    experience and expertise.  We have asked for documents concerning the relevant,

    suitable positions that were not offered to her.  Now that we have a protective

    order in place, I hope you will supply the documents promptly.  While you

    certainly have the right to make any good faith argument you can that this

    information should not be considered at trial or in dispositive motions, the broad

    based nature of discovery does not permit the defendant to decide that it

    wouldn't have been reasonable to offer certain available positions and therefore

    refuse to provide information on them.

2. You have objected to Request number 5 in part because you state that the request is "irevelent" and "overbroad," and because Dr. Norden has not made a claim for disparate treatment. As was stated in the complaint, Dr. Norden repeatedly requested the accommodation of being allowed to work from home. Dr. Schultz repeatedly told her that her work could not have been done from home, and you have repeated this response elsewhere in your answers. As was also stated in the complaint, during some of these same periods, contractors were hired to do the work that Dr. Norden was capable of doing, and they performed the work from home. We are seeking information as to why Dr. Norden was not given a requested accommodation. Again, I hope that the protective order has resolved this issue.

3. Almost no emails between Dr. Norden and Dr. Schultz were provided unless they were copied to other people as well. Please verify that all requested email between the two scientists has been provided.

4. No Statement of Annual Benefits or analogous documents was provided in response to Document Requests 10, 16, and 17. Please verify that there are no other documents extant showing the nature and value of the benefits Dr. Norden received.

5. I have three fax cover sheets that do not appear to be followed with the substantive faxes. They are:

SI-1774, a fax dated November 4, 2003 stating that 9 pages follow,

SI-1753, a fax dated December 5, 2003 from Dr. Schultz to Marilyn Slomba which states that 21 pages follow,

SI-1754, a fax dated December 16, 2003 from Dr. Schultz to Dr. Lawford which states that 6 pages, consisting of two memos prepared by OSEM are to follow. Perhaps I have misunderstood the production's organization, but I cannot find the missing documents elsewhere, either. I would very much appreciate your either providing the substantive documents, submitting a statement under oath as to why they are not being produced, or identifying them for me if they have already been produced.

## III.    Interrogatory Answers

1. Objection is made to Interrogatory number 4 "because the Smithsonian does not admit that Plaintiff had a handicapping condition as defined by the Rehabilitation Act." Please identify when the Smithsonian reversed its position as to Dr. Norden's handicapping condition.

2. Referring to Interrogatory No. 4, statement number 10 on page 5 of the interrogatory answers in which moving Dr. Norden's office and phone from the 5th floor to the 4th floor in 2003 is listed as an accommodation attempt, please confirm that the date is accurate. Dr. Norden did not work at the Smithsonian in 2003.

3.  Referring to Interrogatory No. 4, statement number 11 on page 5 of the interrogatory answers, please identify the job plan that included work on bees.

4.  We object to Interrogatory Response number 7 as insufficient. The interrogatory asks for the factual basis for determining that Dr. Norden had been informed of the deadline to make a complaint and the factual basis for determining that Dr. Norden should have known that a final agency action, triggering an obligation to file a complaint within 45 days, had been taken. The response merely gives the date on which Dr. Norden sought counseling and states that she failed to exhaust her remedies.

5.  We object to Interrogatory Response number 13 as insufficient. Dr. Norden's former position had involved a minimum of 50% of her time being spent in research support. Dr. Norden's career in research "support" at the Smithsonian resulted in the publication of fifty peer reviewed articles and a Fulbright award for research. During the period cited in the Interrogatory 13, she was offered only the opportunity to perform collections support and to register animals at the zoo. She was never given the opportunity to return to research support and is simply asking why.

6.  We object to Interrogatory Response number 18 for the reasons given above.

John, this is a factually complex case with many players over several years, and I am still rereading your responses. I may have additional concerns, or I may, for example, realize that the documents I requested in number 5 under Documents above were provided elsewhere. Since we are currently preparing for depositions next week, I would very much appreciate your providing me, by early next week, the documents and

interrogatory answers discussed above.  If you intend to instruct any of the witnesses not

to answer questions about the April return to work offer, I suggest we discuss your

reasons for doing so further before the deposition so that we aren't forced to call the court

during deposition.  Of course, I do understand your right to make a continuing objection

to such questions if you believe they are inadmissible.

Thank you for your attention to this matter.


Sincerely,



Vickie Fang

**EXHIBIT  36**

3013451697

OCT 02,2006 17:35

f) [ ] Disability (Specify i.e diabetic)   HEMORRHAGIC FEVER

g) [ ] Religion (Specify i.e. Catholic )

h) [ ] Reprisal (Complete # 7 below)

i) [ ] Sexual Harassment

**4. If you have an attorney or someone representing you concerning the matters raised in this complaint, please provided the following:**

Name:   BRUCE E. GOODMAN, ESQ.

Address:   7676 NEW HAMPSHIRE AVENUE  -  STE. 114

City:   TAKOMA PARK                    State   MD      Zip   20912

Telephone Number:   (301) 408-2445

**5. On what date(s) did the alleged discrimination take place?**   NOVEMBER 30, 2002

**6. Please explain as clearly as possible:** (use additional sheets, if necessary, and attach copies of all supporting materials pertaining to your claim.)

**(a) what happened(** how you were discriminated against and the date of each incident)

IN AUGUST 2000, DR. NORDEN CONTRACTED HEMORRHAGIC FEVER PERFORMING FIELDWORK FOR THE SMITHSONIAN INSTITUTION. AS A DIRECT RESULT, DR. NORDEN HAS DEVELOPED AN ACUTE SENSITIZATION TO NAPHTHALENE, A CHEMICAL USED THROUGHOUT THE DEPARTMENT OF SYSTEMIC BIOLOGY IN THE NATIONAL MUSEUM OF HISTORY.  IN OCTOBER 2002, THE OFFICE OF SAFETY AND ENVIRONMENTAL MANAGEMENT REQUESTED THAT THE DEPARTMENT DEVELOP A PLAN TO CONTROL DR. NORDEN'S EXPOSURE TO NAPHTHALENE, TO ACCOMMODATE HER DISABILITY.  THE DEPARTMENT FAILED AND REFUSED TO DO SO.  RATHER, THE DEPARTMENT TERMINATED DR. NORDEN'S PART-TIME WORK SCHEDULE EFFECTIVE NOVEMBER 30, 2002.

OCT 02,2006 17:35

**(b) why you believe it happened**

DR. NORDEN BELIEVES THAT THE DEPARTMENT CAN ACCOMMODATE HER DISABILITY, BUT

IS FAILING AND REFUSING TO DO SO.   THE ACCOMMODATION IS A REASONABLE ONE.

**c) list all the names and telephone numbers of those involved**

| Name | | Phone # |
|---|---|---|
| SCOTT MILLER - ACTING DIRECTOR | | |
| Name | TED SCHULTZ  -  SUPER VISOR | Phone # |
| Name | WAYNE MATHIS  -  SECTION HEAD | Phone # |
| Name | | Phone # |

**(d) explain who and how other persons were treated differently from you.**

**7. If you are alleging reprisal for having filed or participated in an EEO complaint, please explain in detail:**

**(a) who did it**

**(b) what was done**