Alex T. Sliheet, D.C. Bar No. 438977
Vickie Inge Fang, *pro hac vice*
Attorneys for Plaintiff Beth Norden
8702 Nightingale Drive
Lanham, MD  20706
alexsliheet@yahoo.com
fvickie@comcast.net
(301) 552-4908

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **Beth M. Norden,** ) | |
| ) | **Case No. 051232 (RMC)** |
| **Plaintiff** ) | |
| ) | **AFFIDAVIT OF VICKIE FANG** |
| **v.** ) | **IN SUPPORT OF PLAINTIFF'S OPPOSITION** |
| ) | **TO DEFENDANT'S MOTION TO AMEND** |
| ) | **THE SCHEDULING ORDER FOR AN** |
| **Lawrence M. Small,** ) | **EXTENSION OF TIME TO OPPOSE** |
| ) | **PLAINTIFF'S SUMMARY JUDGMENT,** |
| **Defendant** ) | **OR IN THE ALTERNATIVE, SUMMARY** |
| ) | **ADJUDICATION MOTION** |
| ) | |

**AFFIDAVIT OF VICKIE FANG**

I, Vickie Fang declare:

1.      I am over the age of eighteen and competent to testify.

2.      My address is 8702 Nightingale Drive, Lanham, MD.

3.      Until October 18, 2006, Defendant's entire attempt to seek formal discovery

consisted of: 14 interrogatories, 9 document requests, and 6 requests for admissions.

4.      Despite the fact that Plaintiff executed a release for all her medical records,

Defense counsel has not requested Plaintiff's psychologist's files, and it appears that

Defense counsel may not have requested any medical records at all.  On September 11, 2006, Plaintiff's counsel sent Defense Counsel an email noting that doctors' records had not been requested and asking whether he needed anything in addition to Dr. Norden's release in order to get them.  Neither Defense Counsel nor anyone else on the defense team ever responded to this email.

5.      On the afternoon of October 18, 2006, Defense counsel began for the first time to request dates to depose Dr. Norden and her expert economist.  Within 24 hours of Defendant's request, Plaintiff's counsel agreed upon two dates Defendant had suggested, but as of the time of this filing, Defendant has not yet confirmed those dates, much less filed a notice of deposition, or actually deposed anyone in this case.

6.      Dr. Norden filed four informal and four formal complaints against the Defendant and cooperated fully in whatever investigation Defendant chose to conduct.

7.      The EEO hired an outside investigator, Mr. Gee, to investigate and report on Dr. Norden's charges of discrimination and retaliation.  The results of both reports were available to all parties long before the instant litigation began.

8.      Email chains between Smithsonian OHR, EEO, and the Smithsonian defending lawyers show active attorney and EEO involvement in approving the April 2004, retaliatory return to work plan, the head of Defendant's EEO insisted that she approve the language of the retaliatory April 2004, return to work plan before it was sent to Dr. Norden, and they also show Ms. Earhart's involvement in approving the October 2004, letter that fired Dr. Norden.

9.      A handwritten note on material sent to Dr. Norden's counsel in 2004 states that a copy was sent to Ms. Earhart, apparently because it was "her case now."

10.     Ms. Earhart was listed as "of counsel" on the answer to Dr. Norden's complaint, and Ms. Earhart attended depositions conducted by Dr. Norden's counsel.

11.     Dr. Norden's medical files have been made available to Defendant since the fall of 2000, and the Defendant's own doctor, Dr. Lawford, was in consultation with five of Dr. Norden's physicians for the two years that followed.

12.     Defendant's own legal counsel determined that there was sufficient evidence of Dr. Norden's disability long before Dr. Norden filed this lawsuit, and Dr. Schultz, who was designated as the person most qualified to speak on the issue of accommodations, testified that there had never been a question as to whether Dr. Norden suffered from a disability.

13.     In November of 2003, Dr. Norden's psychologist wrote to the Smithsonian's Doctor Lawford, giving Dr. Norden's active diagnoses of Major Depressive and Post Traumatic Shock Disorders, stating that both disorders were caused in large part by Defendant's failure to accommodate.  The two doctors communicated with each other about Dr. Norden both before and after this period.

14.     Dr. Norden responded to the Smithsonian EEO demand with a 7 page list of requests and responses, giving specific dates, the names of involved employees, and references to numerous documents within the Defendant's possession.   A specific date was given for nearly every example.

15.     Defendant has provided documents that Dr. Norden did not refuse a respirator. At deposition in August of 2006, Dr. Schultz testified that Dr. Norden did not refuse a respirator and that she could not have done the majority of her work in the ventilated room.

16.    Dr. Norden's complaints regarding the April 2004, return to work plan, and the October 2004, termination as being retaliatory, were both the subject of the independent investigation ordered by the EEOC and performed by Mr. Gee.

17.    On November 15, 2004, counsel for Dr. Norden filed a nine page informal complaint outlining both the relevant facts and the substantive legal arguments.  Included in this complaint was a list of four positions which would have been appropriate for Dr. Norden both in terms of using her special talents and education and in supplying the necessary accommodations.


I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.



Dated: 10/22/06                                    Respectfully submitted,


_____/s/_____
Vickie Fang