**Donald L. Oberg, Ph.D.**
**Licensed Psychologist**
E-Mail: doberg@oberggroup.com

Ψ

6713 44th Avenue
University Park, MD 20782
Ph: 301-220-0707
Fx: 301-699-1912

1717 K Street, NW, Suite 600
Washington, DC 20036
Ph: 202-331-9777
Fx: 202-331-3332

November 24, 2003

Dear Dr. Lawford,

I am writing in response to a request to provide information regarding the return to work of Dr. Beth Norden and her needs vis-à-vis reasonable accommodation.

Dr. Norden has been under my care since April 30, 2003 to the present. We have met at least weekly for 90 minutes sessions. On intake I diagnosed Dr. Norden as having Posttraumtic Stress Disorder in addition to also having the diagnosis of Major Depressive Disorder, Recurrent Severe -Without Psychotic Features. These diagnoses are still active.

Dr. Norden has made great progress in treatment and I believe that returning to work would be highly therapeutic – under the right circumstances. In spite of Dr. Norden's progress, at this point in time her return to work would require accommodation. Specifically, Dr. Norden would require:

1. Protection from exposure to naphthalene – this would include both atmospheric exposure and direct contact due to specimen handling. Dr. Norden's sensitivity to naphthalene is a direct consequence of the DHF.
2. Flexible scheduling to accommodate her incapacitating and unpredictable migraines which are a direct consequence of the DHF.
3. Flexible scheduling to accommodate medical appointments, given that the course of her recovery from DHF is uncertain and continuing complications unpredictable.
4. Protection against agency/supervisor retaliation and hostility in the form of being assigned work less intellectually demanding than the work she performed prior to contracting DHF. This is particularly important in that doing less intellectually demanding work in all likelihood will:
    a) result in greater naphthalene exposure
    b) deprive Dr. Norden of the intellectual stimulation essential to neurological recovery, and
    c) foster a sense of devaluation and punishment.

Finally, given that the DHF made Dr. Norden vulnerable to a depression which was exacerbated by the workplace's failure to meet her needs during her last period of work,

SI-0465



5. Rehabilitative re-entry to offset the prior workplace trauma. Rehabilitative re-entry would consist primarily of a complete job description and names of line supervisors. With this in hand, work hardening interventions could be conducted to ensure Dr. Norden's successful return to the workplace.

If I may be of additional assistance, please feeling free to contact me.

Sincerely,

Donald L. Oberg, PhD, CAS, CEAP, FPPR.
Licensed Psychologist

SI-0466