
Smithsonian
*National Museum of Natural History*

Department of Entomology
PO Box 37012, NHB CE 619, MRC 169
Smithsonian Institution
Washington, D.C. 20013-7012

October 8, 2004



Dr. Beth Norden
112 Green Hill Road
Greenbelt, MD 20770

Dear Dr. Norden:

It was my decision on the November 5, 2003 proposal to separate you from your position of Museum Specialist (Zoology), GS-1016-11, and from the rolls of the Smithsonian. The basis for the proposal was your inability to perform the duties required for your position.

I received the response that you sent on November 13, 2003, addressed to both the proposing official and myself. You wrote that you very much wanted to come back to work for the Smithsonian and that you believed you would be able to work full time if given appropriate accommodations. You stated your willingness to have your doctors provide information regarding your ability to work full time to the Smithsonian Occupational Health Physician, Dr. Thomas Lawford. In that letter you designated your attorney, Vickie Fang, Esq. as your representative in this matter.

On December 23, 2003, Dr. Lawford reported that he had recently received two medical reports from your treating physicians, Donald Oberg, Ph.D. and David Granite, M.D. and that he had received clarification and additional information from his discussions with them. They advised him that you were capable of performing your full duties for 40 hours per week, although Dr. Oberg proposed a review of your job description and of who would be providing your supervision. Both your doctors believed that you would require protection from exposure to naphthalene to avoid triggering migraines. No one could predict what the frequency of migraines might be once you re-entered the naphthalene ambient atmosphere in our department. Your doctors advised a flexible work schedule because you have numerous medical appointments each month and would need to take leave for some of those as well as for the migraines.

An agreement was written to outline the arrangements by which you would return to work under conditions that would meet the needs your doctors were recommending. The agreement was reviewed by Dr. Lawford and by the Smithsonian Office of Equal Employment and Minority Affairs' Disability Program Manager. The agreement was received by Ms. Fang on April 8, 2004. At her request, the performance plan and the work plan that had been written to more fully define the agreement terms were sent the same day. The agreement projected your return to work on April 18, 2004.

Ms. Fang responded on April 16, 2004, that you would not be able to report to work on April 18, and advised that a further response would be forthcoming. In an April 21 e-mail message, Ms. Fang reiterated that you objected to the agreement and indicated that she would respond promptly to any new proposal we wished to make.

It is apparent to me that management did make a good faith effort to alter your assignments and work schedule in the draft agreement and accompanying plans you received on April 8. The intent was to achieve a clear understanding of expectations as a basis for an agreement on the adjustments made to enable you to return to your GS-11 Museum Specialist position. Since Ms. Fang made it clear that you did not wish to sign the agreement, a restatement of the plan for your return to work within the limitations recommended by your doctors was sent to Ms. Fang on April 22, 2004,

without agreement provisions. She was asked to provide any proposed alterations within the following week so that you could return to work on May 3, 2004.

In an April 30, 2004 letter, Ms. Fang strongly objected to the return to the plan that was sent on April 22. She claimed that the necessary limiting of naphthalene exposure could be accomplished by returning you to your former research support position, and that the proposed work plan required a career change from research to collections work involving direct rather than ambient contact with naphthalene. Ms. Fang objected to the species of insect and to the education level of the supervisor with which you would be assigned to work. She also claimed that the proposed work schedule and periodic performance reviews were retaliatory. Ms. Fang stated that she was advising you not to return to work until a more acceptable effort was made to safeguard you from environmental hazards and what she viewed as retaliation.

Management's response to the April 30, 2004 letter was sent to Ms. Fang by Marilyn Slomba, the Smithsonian Human Resources Specialist representing management, on June 9, 2004; it noted that the only alternative Ms. Fang had proposed was to simply return you to your former research position. The June 9 message clearly stated that the plan for your return to work, which was sent again with the June 9 message, was consistent with your position description and with the duties you performed prior to your illness. It cited an October 17, 2002 report resulting from a study conducted by the Smithsonian Office of Safety and Environment Management, which noted that your work prior to your illness involved constant exposure to low level of naphthalene.

The June 9, 2004 message reiterated that the 2004 work plan was designed to minimize naphthalene exposure as much as possible within the requirements of your position. It pointed out that your office would be moved to the fourth floor of the East Court of the Natural History Building, where there are no permanent collections and the ambient naphthalene levels are lower, and that the office was located almost directly across from the ventilated room where OSEM recommended that you conduct all your work. It explained that the performance review schedule was intended to provide you with feedback on your performance, and that the proposed alternative work schedule was designed to facilitate scheduling of medical appointments and to assist you in making up unscheduled leave. The message concluded by advising you that failure to return to duty by July 12, 2004, under the provision of that attached plan, would be considered as a basis to separate you for inability to perform the duties of your position, as was proposed on November 5, 2003. On June 19, 2004, Ms. Fang confirmed that she had conveyed to you the message that was faxed to her on June 9, and that you were aware of the July 19 deadline.

Ms. Fang responded by e-mail on July 7, 2004, informing us that you were declining the return to work plan, which you saw as being at variance with your doctors' recommendations. In that message she conveyed your belief that there were other positions at the Smithsonian for which you would be qualified that do not require exposure to naphthalene. She inquired if there were any such positions that had opened since the past fall or were anticipated to open in the near future. Ms. Slomba's response on the same day was that current Smithsonian federal vacancies at or below Dr. Norden's grade level would be reviewed before any further action was taken on the proposal to remove. Ms. Fang was asked to provide an updated copy of your resume by July 14, 2004, to ensure that Smithsonian's Office of Human Resources has the most recent information on your qualifications. Ms. Fang sent your resume by fax on July 16, 2004, and Ms. Slomba provided it to Audrey J. Davis, the HR Specialist assigned to search for vacant positions for which you might be qualified.

Ms Davis sent you a message by e-mail on September 8, 2004, regarding a vacant position at the Smithsonian's National Zoological Park (NZP) for which she thought you might be qualified. Among the vacancies announced from the date you provided your resume through the following 30 days, that was the only one for which Ms. Davis found you might qualify. In her September 8 message, Ms. Davis asked you to respond to the selective factor listed on the vacancy announcement by September 23. Ms. Slomba confirmed that information in an e-mail message to Ms. Fang on the same date. On September 13, you sent an e-mail message to Ms. Davis acknowledging receipt. On September 23, Ms. Fang sent a response to Ms. Slomba, in which she stated that the specialized knowledge required for the zoological registration specialist position is entirely different from your specialized knowledge based on your education and subsequent years of experience in research and research support in the highly specialized field of entomology. Ms. Fang informed us that you would not pursue the NZP position although you continued to look

forward to the opportunity to resume a full time position in entomological research. No such vacant positions were identified by Ms. Davis during her search.

After my review of the information on which the proposal was based and the efforts made in identifying and considering potential accommodations as described above, it is clear to me that we are not able to accommodate your doctors' recommendations, in manner that you find acceptable, that would allow you to do the work of your position of Museum Specialist. I also find that when you clearly declined further consideration of returning to that position and provided a current resume, a search was made to identify another vacant Smithsonian position for which you would be qualified, but that effort was unsuccessful.

Since we are unable to plan for your return to duty, I believe that your separation from Smithsonian rolls is warranted, based on your inability to perform the essential duties of your position. The effective date will be October 15, 2004.

Your separation from Smithsonian rolls will not, in any way, interfere with decisions of the Department of Labor's Office of Workers' Compensation regarding the compensation you are receiving. If you have questions regarding OWCP or any other benefits to which you may be entitled, please contact the Benefits Branch of the Smithsonian Office of Human Resources at 202-275-1102.

If you believe this action is not warranted, you may appeal to the Merit Systems Protection Board (MSPB) or you may file a grievance under the negotiated agreement between the Smithsonian Institution and the American Federation of Government Employees, Local 2463. You may not file both a written grievance and an appeal. An appeal must be filed within 30 calendar of the effective date of this action; a grievance must be filed within 20 calendar days of the effective date of this action. An appeal to the MSPB should be filed on the attached Appeal Form 185. It must be filed by mail, by facsimile or by personal delivery during normal business hours to the Regional Director, Merit Systems Protection Board, Washington Regional Office, 1800 Diagonal Road, Suite 205, Alexandria, Virginia 22314. If you file an appeal to the MSPB after the time limit, the appeal must be accompanied by a motion for wavier of the time limit containing evidence and argument showing good cause for the untimely filing. A copy of 5 CFR, Part 1201, "MSPB practices and Procedures," is attached for your information.

If you believe this action is being taken wholly or in part because of discrimination based on race, color, religion, sex (including sexual harassment), national origin, disability, or age, you may include the allegation in any grievance or MSPB appeal you choose to file on this action. Alternatively, you may file a discrimination complaint with the Smithsonian Office of Equal Employment and Minority Affairs (OEEMA), 750 Ninth Street, N.W. Suite 8100, Washington, DC 20560, within 45 days of the effective date of this action. For information about filing a discrimination complaint, please see the Smithsonian Staff Handbook for Equal Opportunity, SSH 1300, Chapters 10-13, or call 202-275-0145. If you file a discrimination complaint, the complaint must be instead of (not in addition to) a written grievance or appeal.

If you would like advice about your rights or about the procedures to follow, please contact our Human Resources Specialist, Audrey Davis, 750 Ninth Street, NW, Suite 6100, 202-275-1005.

Sincerely,

Wayne N. Mathis

Enclosures:   MSPB Practices and Procedures
              MSPB OF 185

cc:   Vickie Fang, Esq.