# Smithsonian Institution

**Memo**

Office of Safety and Environmental Management
Environmental Management Division

Date: October 17, 2002

To: Scott Miller, Chair
Department of Systematic Biology, NMNH

cc: Ross Simons
Wayne Mathis
Ted Schultz
Rudy Anderson
~~Beth Norden~~

Through: Rachel L. Gregory, Assistant Director
Walter G. Bailey, Assistant Director for Occupational Health Services

From: Thomas Lawford, M.D.
Kathryn Makos, Industrial Hygienist

Subject: Naphthalene Exposure Control Options for Beth Norden

**ACTION REQUIRED:** Respond, as soon as feasible, with plan of action based on recommendations.

This memorandum outlines recommendations for managing potential occupational exposure to naphthalene for Dr. Beth Norden, of your staff. With the concurrence of Dr. Norden's personal physician, Dr. David Granite, we recommend that she be relocated to a work area free of naphthalene supplies and, to the greatest extent feasible, be allowed to work with collections without residual naphthalene vapor associated with past storage and treatment practices.

## Background

Dr. Norden appears to have developed an acute sensitization to naphthalene as a side effect of hemorrhagic fever contracted in the course of fieldwork for the Smithsonian Institution in August 2000. Since returning to work in the Court East, 5th floor, she has progressively exhibited symptoms, including nosebleeds, intense headaches, and nausea. Both hemorrhagic fever, and naphthalene, can cause these symptoms, as well as hematological dysfunction. In addition, naphthalene exposure can inflame nasal passages and vessels. In Dr. Norden's case, the two conditions appear to be acting in concert to aggravate her symptoms considerably.

Ambient air monitoring conducted on Dr. Norden's floor revealed naphthalene concentrations of 0.039-0.100 parts per million (ppm) in the adjacent office and in the hallway outside her office. These concentrations are significantly less than the Permissible Exposure Limit of 10.0 ppm for naphthalene, established by the Occupational Safety and Health Administration (OSHA). However, the exposure standards established by OSHA

PO Box 37012
Victor Building, Suite 9100, MRC-932
Washington DC 20013-7012
202.275.1167 Telephone
202.275.0746 Fax


GOVERNMENT EXHIBIT SJ 28

are based on a relatively healthy worker population, not a community with wide variance in age and health histories, and are not meant to accommodate highly susceptible individuals.

Over the past six months, this office has consulted with her immediate supervisor, Dr. Ted Schultz, her personal physician, and had conducted inspections of her work areas with Mr. Rudy Anderson, NMNH Safety Manager. Exposure control options were discussed with Drs. Schultz and Norden, but it is unclear as to how fully these have been attempted. It would be of value, at this point, to systematically re-evaluate the feasibility of these options, in the new context of relocation to a naphthalene-free environment.

**Discussion of Control Options**

Based on Dr. Norden's description of her typical tasks, an acute exposure to naphthalene might be initiated upon opening treated cases to retrieve specimen drawers. Dr. Norden has been medically certified, trained, and fit-tested to wear a full-face air-purifying respirator for this task. However, Dr. Norton reported that a respirator, loaned to her from this office to assess its effectiveness, was unwieldy and impractical. Dr. Schultz, and Dr. David Furth, collections manager, agreed that technicians, in most cases, could accomplish the "pulling" task. Although naphthalene may have been added to the perimeter of a specimen drawer, the boxes of specimens within each drawer are typically not treated. Dr. Furth suggested that these boxes could be removed to a new, untreated drawer, by technicians, prior to any examinations by Dr. Norden. If Dr. Norden is required to open treated collection cases for any reason, or work with drawers containing naphthalene, she must wear the appropriate respirator, which the department is responsible for providing.

Another option discussed would be to purchase a table-top ductless fume hood for Dr. Norden's office, under which treated specimens and/or drawers could be left while she works. These cost in the range of $2500-3500 for a unit with appropriate alarms and breakthrough monitoring ports. We have researched four major vendors, several of which have units of the dimensions which could fit into her office. However, given the fact that this unit would still not vent the ambient office and collections area, it seems best for her to attempt to do the majority of her work in a relatively naphthalene-free environment.

The selection of suitable alternative work sites is within your purview, as we are not aware of all the possibilities. However, consideration might be given to the laboratories at the Museum Support Center, or a Court East office on a floor not associated with a naphthalene storage collection. A lesser option would be to move Dr. Norden's microscope and examining station, and data entry equipment, to the Court East, 4th floor processing room. This room does not contain treated cabinets, according to Dr. Furth, and contains table-height wall return slot grilles which were designed specifically for the purpose of venting residual vapors from treated collections while they are being examined or catalogued.

We ask that you notify us as soon as possible as to the course of actions to be taken to minimize naphthalene exposure to Dr. Norden in the course of her work. We are continuing to provide medical and industrial hygiene oversight in the management of this case, and remain available to consult with you as to these recommendations. Should you wish to discuss this case further, please contact us at either 202-275-9286 (Dr. Lawford) or 202-275-0705 (Ms. Makos).