## DECLARATION OF MARILYN SLOMBA

I, Marilyn Slomba do state:

1. I am a Human Resources Specialist (Employee Relations) in the Labor and Employee Relations Department of the Office of Human Resources at the Smithsonian Institution.

2. I assisted Ted Schultz in drafting the November 2003 proposal to remove Beth Norden.

3. When Dr. Norden informed the Entomology Department that she could return to work full-time with accommodations for naphthalene, I assisted in drafting a return to work settlement agreement. The settlement agreement was based on a template that the Smithsonian uses after it has issued a proposal to remove an employee, but the employee and the Smithsonian have negotiated a return to work under certain conditions. The Smithsonian gives up its ability to take immediate action on the pending proposal in return for the employee making certain promises.

4. The draft settlement agreement was intended to establish a clear plan for Dr. Norden's return to work and establish tools for assessing its success. The conditions proposed by the Smithsonian specific to Dr. Norden's return to work were drafted to meet the department's staffing needs and priorities and to respond to the recommendations of Dr. Norden's doctors. The eight week review periods were intended to give Dr. Norden and her supervisor opportunity for early and continuing feedback on the success of her return to work.

5. Dr. Lawford reviewed the agreement and agreed that the medically related items were reasonable and appropriate. (SI 2326)

6. The draft settlement agreement would have held in abeyance the proposal to separate Dr. Norden and returned her to work with accommodations, remedying the failure to accommodate her condition that Dr. Norden alleged in her pending EEO complaint and rendering the complaint moot. That is the reason Paragraph 20 requested Dr. Norden to agree that her EEO claim had been settled by the agreement.

7. Paragraph 19 asked for Dr. Norden to waive "her right to grievance/arbitration procedures, to appeal to the Merits Systems Protection Board and any right to file suit in Federal or state court for any adverse actions based on performance or conduct taken against her during the life of this agreement or an any separation effected as a result of her failing to meet the terms of the agreement." This is a standard provision intended to protect the Smithsonian from frivolous appeals if Dr. Norden had failed to meet the terms of the agreement. The agreement reserved Dr. Norden's right to file an appeal based on a non-frivolous allegation "that the Smithsonian violated a material term or acted in bad faith or that she did not breach the agreement."

8. The agreement referenced a work plan, which the Entomology Department prepared.

9. I sent the draft agreement, work plan, and position description to Dr. Norden's attorney on April 8, 2004, proposing that Dr. Norden return to work on April 18. (SI 2306-2324)

1

10. Dr. Norden's attorney responded on April 16, that Dr. Norden would not be returning on April 18 and that she was preparing a response to my April 8th package. (SI 2302)

11. On April 19, Dr. Norden's attorney responded that Dr. Norden would not be able to return to work under the conditions set forth in the return to work document and that she had filed an informal complaint of retaliation with the Smithsonian's Office of Equal Employment and Minority Affairs (OEEMA) in response to it. (SI 2300)

12. On April 22, I faxed a response to Dr. Norden's attorneys' objections to the agreement, as set forth in the informal OEEMA complaint, along with a modified return to work plan that eliminated the provisions that would have required Dr. Norden to waive her EEO and MSPB rights. I asked Dr. Norden's attorney to propose alterations to it. (SI 2292-2293).

13. On April 30, Dr. Norden's attorney responded by expressing objections to the plan and suggesting that "much of the necessary limiting of Dr. Norden's exposure could be accomplished by simply returning her to her former research support position." (SI 2289-90).

14. I investigated Dr. Norden's objections to the plan, including her contention that the work plan represented a career change and was inconsistent with her doctor's recommendations regarding naphthalene. I responded to these contentions on June 9 and asked that Dr. Norden report to work on July 12.

15. Dr. Norden's attorney responded on July 7, that Dr. Norden would not accept the return to work offer. She asked whether there were any open positions within the Smithsonian for which Dr. Norden was qualified. (SI 2282)

16. I responded that the Smithsonian would conduct a vacancy search before taking any action upon the proposal to remove Dr. Norden. (SI 2282)

17. On July 16, after receiving a resume from Dr. Norden, I requested that Audrey Davis in the Office of Human Resources conduct a vacancy search using OHR's Procedures for Identifying Vacant Positions for Disabled Employees and taking into account Dr. Norden's sensitivity to naphthalene and the need for some flexibility in her schedule.

18. The Office of Human Resources identified one position for which Dr. Norden might have been qualified and I informed her of that on September 8, 2004.

19. On September 23, 2004, Dr. Norden's attorney informed me that the position was in no way similar to Dr. Norden's past work and that Dr. Norden did not have the experience or training for the vacancy. (SI 2252)

Pursuant to 28 U.S.C. sec. 1746 and under penalty of perjury, I certify that the foregoing statement is true and correct.

_____        Nov. 17, 2006
Marilyn Slomba                          Date