# AFFIDAVIT

**City of: Washington**  )
)
)
)
**District of: Columbia)**

I, Nancy Ellen Adams, am being first duly sworn on oath make the following statement freely and voluntarily to James S. Gee who has identified himself to me as an investigator assigned by the Smithsonian Institution to perform this investigation, knowing that this statement may be used in evidence. I understand that this statement is not confidential and may be shown to any party who has an official interest.

This affidavit is given in relation to the complaint of discrimination filed by, Beth Norden, on January 25, 2005, SI Case NO.: 05-06-012505.

Q. What is the name of the agency for which you worked the organizational unit to which you were assigned and the address of your duty station at the time of the alleged discrimination (April 8, 2004 through October 15, 2004)?

A. I worked for the Smithsonian Institution, National Museum of Natural History, Systematic Biology – Entomology, located at 10th Street and Constitution Ave., Washington, DC. I personally was located on the 6th Floor of the East Court Building, Room 608.

Q. What were your position title, series and grade at the time of the alleged discrimination? How long did you hold this position?

A. My position title was Museum Specialist, Supervisory, and it is in the 1016 series and my grade was a 12 step 5. I have held the Museum Specialist, Supervisory position for, I believe, 8 years and at a grade 12 for probably 6 years. You could contact Juel Rembert, our Dept. Administrative Assistant, who has a copy of my personnel files, which would have recorded the exact dates that I became a Museum Specialist, Supervisory and the exact date that I became a GS-12.

Q. Please provide the names and titles of your immediate and second-level supervisors at the time of the alleged discrimination.

A. My immediate supervisor was Dr. David Furth, Collections Manager for the entire Entomology Department. My second level supervisor would be the Chair of the Department.

Q Please give a brief history of your employment with the National Museum of Natural History. Have any of your positions been supervisory?

A. I started working in March 1983 in a temporary position as a Museum Technician, GS-5 inventorying different parts of the insect collection. I worked in that position for a year and ½. When a full-time position became available, in Oct. 1984, I applied for it and got it. I was still a Museum Technician (GS-5) but now only working for one specific Research Entomologist, Dr. Oliver S. Flint, Jr. I worked for him until his retirement in Dec. 1994. During the time I worked for Dr. Flint I went from a Museum Technician (GS-5 to a GS 9.) In Jan. 1995, Dr. David Furth, the Dept. Collections Manager, became my supervisor and has been

Initials_____

ever since. At that time our Department was preparing to move offices and collections from one side of the building to the other, into new facilities that had been build specifically for Entomology. I think it was sometime in 1995 that Collection Unit Manger positions were advertised in-house. In other words, our Dept. would go from basically each Research Entomologist having an assistant to a Collections Unit Management system where David Furth would supervise the Unit Managers and coordinate the move of the Dept. These Unit Management positions would be supervisory and had potential for promotion. I applied for one of those positions and was hired to prepare a large portion of the collections and offices to move. During the years of the pre-move & move the Orders of Insects that I was to manage and the people I was to manage changed about every 6 months. My Unit moved into the new facility first and was pretty well settled in by 2000. Our Dept. remained in the Unit Management System until the other half of the collection moved into the new facility. Someone else coordinated that. I continued to clean up left over messes and started improving many parts of the collection that had been neglected for years. After the move was complete, several employees either retired for left so we had fewer & fewer staff. The Research Entomologists wanted to go back to having an assistant per Researcher like it was before the move and that's what happened though we really didn't have enough support staff to do that so many 1016 series staff had to try to split their time between two researchers and two completely different groups of insects. Thankfully, I was given a huge amount of collections to manage. I also, still assist Dr. Flint with transactions and inventories of the groups of insects that he does research on. I believe I still have supervisory in my official title though I have not supervised support staff since the Dept. went back to the Tech. per Researcher style of management.

When Beth expressed an interest in coming back to work full-time at the Smithsonian, Entomology Dept. in 2004, I was approached by our Chair, Ted Schultz and my supervisor, David Furth, to see if I would be willing to supervisor Beth. I said yes, and drew up a Performance Plan for her. They expressed, at the time, that no research entomologist was willing to take on the supervision of Beth. I thought if Beth really did want to come back she could be a real asset to the collections and to tying up the research for a retired wasp worker and that we could make a good team in getting another section of the collection in very good shape. However, I knew this was not the kind of work that Beth really enjoys doing. So I had my doubts as to whether she would return under the performance plan I had drawn up. Beth and I had at various times talked about the projects that I had listed in the plan so I knew she was interested in having the work done. I was also looking for a plan that could be measurable in some ways because for some time Beth had had a difficult time coming in regularly so as her supervisor I was looking for a way to be able to tell of her accomplishments. It seemed that for years I had heard her be remorseful about not getting credit for difficult or large projects she had completed. So I made a plan up where anyone could see, even Beth, if she were accomplishing things or not. But she did not return to work.

I remain in my current position though I have been out sick a lot battling cancer.

Initials ____

Q. Do you have a mental or physical disability that substantially impacts a major life activity, if so, what is your disability claim?

A. I don't have a disability claim. But I have been out on sick leave most of the last four months because in mid-Dec 2004, I was diagnosed with lymphoma so have been undergoing chemotherapy. There are days that I am too weak or too sick to be able to make meetings.

Q. Please indicate whether you have ever been involved in any prior EEO activity and describe the nature of your involvement (e.g., sought counseling, filed formal complaint, participated as witness, identified as responsible official).

A. I have not been involved in any EEO complaint.

Q. Have you had EEO for Supervisors training and if so, when?

A. Yes, the next time it was offered by the Smithsonian, which was within a couple of months of being hired as a supervisor. Again, I believe, that would be in my personnel records.

Q. Did you know Beth Norden, the Complainant? If so, for how long and in what capacity did you know her?

A. I do know Dr. Beth Norden. We have known each other since the Smithsonian hired her in the late 1980's. When she was hired, we shared an office together for several years. I did a few things socially with her family outside of work. Beth is a gifted teacher and she left the Smithsonian for a time to teach at Eleanor Roosevelt High School. When she returned to the Smithsonian, we remained friends but our work did not put us together very often so we only infrequently caught up with each other at lunch or in the hallway.

Q. To your knowledge, did Ms. Norden engage in any formal or informal EEO activity? If so please explain what you understood about her EEO activity, and when and how you became aware of it.

A. No, I didn't know Dr. Norden was engaged in any formal or informal EEO activity during April – October 2004. During 2003, I knew something was going on with her employment but I wasn't really sure what. In January of 2004, I knew she had an attorney and that she had contacted the Labor Department but I didn't know for what reason. Eventually, I would hear bits from my supervisor, the Chair or from Beth. I cannot tell you in what order or what dates. Since I was not aware of any kind of official "action" I did not know I would have needed to keep a record of dates and people who told me what when. Until I was asked to serve as Beth's supervisor (spring of 2004) if she returned to work, there was no need for me to be involved with whatever was going on. And when she didn't return to

work, I stayed out of the any line of information until I was shown a letter, by e-mail that was going to be sent to Beth saying that her employment with the Smithsonian would be terminated. I did not know the nature of any kind for legal action until I received this e-mail from Mr. Gee. That's when I knew that there was a legal action and that it was an EEO action.

1. **Complainant alleges that she was discriminated against on the bases of disability (physical, perceived mental) and/or reprisal for prior EEO activity, when during the period from April 8, 2004, through October 15, 2004 she was denied a requested reasonable accommodation.**

Q. What was your role in the decision to deny the Complainant's requested for reasonable accommodation?

A. I had no role in setting up what her accommodations would be if she were to return to work. I had no idea that Dr. Norden was denied reasonable accommodation. I'm am not sure what she was asking for but in the documentation that I was shown when I was to be her supervisor, she was to have office space in two locations. One room is a regular office like the rest of the support staff have and the other is a room set up with vents that pull the air away from your working space and out of the room so that if she had to work with a drawer or tray, any naphthalene would be pulled away from her face. She was also going to be provided a fitted respirator. I believe this is about as much ventilation and protection as our Department can provide short of having her work in a fume hood, which would, for me, be very uncomfortable.

Q. What is your response to the Complainant's allegation that she was subjected to discrimination when she was denied a requested reasonable accommodation? Did the Complainant present satisfactory evidence that she was disabled? If so, what was the evidence and what was the official response? Was the official response based on Smithsonian's rules and policies? If so, what rules and/or policies were applied?

A. I did not know that she thought she was being discriminated against or denied reasonable accommodation until I received this document. Dr. Norden has never presented me with any documentation on her disability. I have not seen any evidence or official response on any evidence dealing with her disability, if she has one.

2. **Complainant alleges that she was discriminated against based on disability and/or reprisal, when on October 15, 2004 she was separated from her Museum Specialist, GS-1016-11, position and the rolls of the Smithsonian.**

Q. In what way were you officially involved in the decision to separate the Complainant from her Museum Specialist, GS-1016-11, position and the rolls of the Smithsonian?

Initials_____                                                            Page 4 of 7 Pages

A.  I had no involvement, officially or unofficially, in the decision to have Dr. Norden separated from the Smithsonian.

Q.  If you were involved in the decision-making process, how was it determined that the Complainant should be separated from her position and the rolls of the Smithsonian? What criteria were used in making the determination?

A.  I was not involved in the decision to separate Beth from her Museum Specialist, GS-1016-11, position and the rolls of the Smithsonian.

Q.  Was the Complainant's disability status and involvement in prior EEO activities among the evaluation criteria? If so, what criterion was applied?

A.  I was not involved in the decision to separate Beth from her Museum Specialist, GS-1016-11, position and the rolls of the Smithsonian.

Q.  What knowledge do you have that bears directly on the failure of the Complainant to remain in the position in question? Please elaborate.

A.  I do not know why Beth did not remain in the position. I know Beth was recovering from denge fever. I do not know if she was or is fully recovered. I know she was trying to work full weeks and full 8 hr. days but having difficulty doing so.

Beth said that the naphthalene bothered her, gave her headaches and capillary bleeds. I know, as a Department we were trying to remove the naphthalene from the Department even though many tests were held in several parts of the Dept. that indicated that the naphthalene levels in all locations were within the "okay for humans" range.

I know that Maureen Mello was asked to put naphthalene back into cabinets on the floor that Beth worked on and even in cabinets in Beth's working office. I do not have first hand knowledge of who asked Maureen to do this but I was told that it was Dr. Schultz by my supervisor, Dr. Furth and by Dr. Norden.

I know that Dr. Norden would prefer to do her own research or assist another Research Entomologist in their research though that is not necessarily what her GS-11, 1016 series is hired to do. In fact, in our Department it is the rare exception and not the rule. When she was presented with the Performance Plan that I had provided which was filled mostly with Collections work instead of Research, I suspected she would have been disappointed. But the plan, with its responsibilities and quantity of work was well within her job grade and series and is work that we need done.

I know with more and more staff retiring and the Museum and the Dept. asking more and more out of less & less the Dept. was looking for as much "bang for the

Initials_____                                                    Page 5 of 7 Pages

      from her Museum Specialist, GS-1016-11, position and the rolls of the Smithsonian?? Please explain?

A.    I do not have enough evidence in its chronological order at this time to answer this question.

Q.    Is there anything more you wish to add to your statement? If so, please explain.

A.    No.


I have read this statement consisting of __9__ pages and I have made all necessary corrections and additions, and have initialed every page.

I hereby declare under penalty of perjury that the forgoing statement is true, correct, and complete to the best of my knowledge and belief.

Signature of Affiant: _____

Date: _____

Subscribed and sworn to before me this ____ day of _____, 2005:


_____
Signature of EEO Investigator or Notary Public

Initials____                                                           Page 7 of 7 Pages