Alex T. Sliheet, D.C. Bar No. 438977
Vickie Inge Fang, *pro hac vice*
Attorneys for Plaintiff Beth Norden
8702 Nightingale Drive
Lanham, MD 20706
alexsliheet@yahoo.com
fvickie@comcast.net
(301) 552-4908

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Beth M. Norden, ) | Case No. 051232 (RMC) |
| ) | |
| Plaintiff ) | AFFIDAVIT OF DONALD L. OBERG, Ph.D. |
| ) | |
| v. ) | |
| ) | |
| Lawrence M. Small, ) | |
| ) | |
| Defendant ) | |

### AFFIDAVIT OF DR. DONALD L. OBERG

I, Dr. Donald L. Oberg, declare:

1. My name is Donald L. Oberg. I am over the age of eighteen and competent to testify. My address is 6713 44th Avenue, University Park, MD 20782-1106.

2. I am a licensed psychologist, and I have been Dr. Beth Norden's treating psychologist from April 30, 2003, through the present. Dr. Norden and I have

1

met at least once weekly for 90 minute sessions during this period of time, except when travel or illness has prevented our regular meetings.

3. On intake, I diagnosed Dr. Norden as having Posttraumatic Stress Disorder in addition to also having the diagnosis of Major Depressive Disorder, Recurrent Severe --Without Psychotic Features. These diagnoses are still active today. The prognosis for both of these disorders is of a long-term nature.

4. Posttraumatic Stress Disorder is a mental condition that affects the neurological system and causes great anxiety and stress. Major Depressive Disorder, Recurrent Severe-Without Psychotic Features is a mental condition that affects the neurological system and causes depression and feelings of a lack of self worth.

5. Treatment of these mental conditions is complicated due to the fact that Dr. Norden cannot be treated with most of the medications used for these conditions due to other medical diagnoses.

6. Dr. Norden's dengue fever has damaged her neurological and vascular systems and has made her much more vulnerable to these mental conditions. These conditions have been exacerbated by her problems at her work in terms of obtaining accommodations and by the loss of the intellectual stimulation of her job in terms of doing research support that is done for the purpose of publishing and advancing the science of Entomology.

7. These mental conditions make Dr. Norden much more vulnerable to stress. For example, Dr. Norden experiences stress in the form of nightmares almost on a nightly bases, and many nights, on a multiple basis. Dr.Norden grinds her teeth at

2

night due to the stress. Dr. Norden was fitted with a mouth retainer to wear at night in an attempt to prevent the grinding, and Dr. Norden wore down the retainer. She has had replacement devices made and has broken these in her sleep due her intense biting and grinding.

8. Because of her dengue fever antibodies and their damaging effects on her health, especially her immune system, Dr. Norden is limited in the type and amount of medications that she can take for her mental conditions. This has made it difficult to medically treat and control her mental conditions and essentially cut out half of the recommended treatment approach, that being psychotherapy and medications.

9. Returning to work that allows her to use her entomology skills and abilities in an intellectually challenging manner would be highly therapeutic for Dr. Norden. During the course of her treatment, Dr. Norden has performed volunteer work on a part time basis at the USDA. I have observed that this work substantially alleviates her depression and post traumatic distress syndrome, in part because it lessens her sense of devaluation and punishment and removes much of the stress that she experiences in not being productive. Also during the course of her treatment, Dr. Norden has performed full time volunteer work at a research station in Florida. On her return from Florida she has been in noticeably higher spirits, with an enhanced ability to sleep at night and concentrate during the day. The effects of her PTSD and Major Depressive Disorder return rapidly, however, when Dr. Norden is not able to exercise her scientific skills and to contribute to the work practiced by her peers.

3

10. Dr. Norden and I discussed both versions of the Smithsonian's 2004 return to work proposals and the difference between pure collection work and research support that is done for the purpose of publishing and advancing the science. Accepting either version of the 2004 return to work proposal would have been very harmful to Dr. Norden's mental condition and would have exacerbated the disorders from which she suffers. Both proposals ignored my recommendations in the November 24, 2003, letter to Smithsonian consultant Dr. Lawford as to the type of work that would accommodate Dr. Norden's clinical needs. In that November 24, 2003 letter, I specifically state that assigning work that is less intellectually demanding than the work she performed prior to Dr. Norden contracting DHF would be harmful. The reasons are based on the following: 1) such an assignment would result in greater naphthalene exposure, 2) such an assignment would deprive Dr. Norden of the intellectual stimulation essential to her neurological recovery, and 3) such an assignment would foster a sense of devaluation and punishment in Dr. Norden and increase her stress level. I am aware that stress is also a trigger for her dengue migraines, as is the naphthalene. The time constraints imposed by the 2004 work plan on its various tasks are stress provoking and are not stress reducing. In my professional opinion, the stress that Dr. Norden experiences, her mental conditions, and her dengue migraines, are all interrelated. I strongly supported Dr. Norden's decision not to accept either version of the 2004 return to work proposal.

10. I believe that returning to work that is as intellectually demanding as Dr. Norden's

4

work at the Smithsonian prior to contacting the dengue would, at minimum, greatly alleviate the symptoms of Dr. Norden's psychological disorders and greatly reduce her stress level. I believe that Dr. Norden would be capable of fulfilling such tasks on a full time basis with such reasonable accommodations.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: 12/21/06

Donald L. Oberg, Ph.D

5