Alex T. Sliheet, D.C. Bar No. 438977
Vickie Inge Fang, *pro hac vice*
Attorneys for Plaintiff Beth Norden
8702 Nightingale Drive
Lanham, MD 20706
alexsliheet@yahoo.com
fvickie@comcast.net
(301) 552-4908

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Beth M. Norden, | Case No. 051232 (RMC) |
| Plaintiff | AFFIDAVIT OF DR. DAVID S. GRANITE |
| v. | |
| Lawrence M. Small, | |
| Defendant | |

AFFIDAVIT OF DR. DAVID S. GRANITE

I, Dr. David S. Granite, declare:

1. My name is David S. Granite; I am over the age of eighteen and competent to

1

   testify. My address is 115 Centerway, Greenbelt, Maryland.

2. I am a physician, and I have been Dr. Beth Norden's treating physician since 1987 both before she contracted dengue and continue to remain her physician through the present. I have seen Dr. Norden each month subsequent to her contracting dengue. Each month we talk about the effects of her dengue and her dengue induced migraines for the past month, as well as other medical issues that may arise.

3. In the summer of 2000, Dr. Norden acquired Dengue Hemorrhagic Fever (DHF). The DHF has globally affected Dr. Norden in terms of suffering neurological damage, including brain vasculitis, an impaired immune system, and a damaged hematological system (capillary fragility) resulting in a dramatically increased tendency towards capillary bleeds and increased keloid formation.

4. Dr. Norden has the dengue antibodies that weaken her capillary system for the rest of her life. The presence of these antibodies is permanent, and their effect on her capillary system has been ongoing since her exposure to dengue fever. These antibodies make the capillaries vulnerable to leaking, and it is the leaking capillaries that cause severe migraine headaches, severe loss of energy, bruising, and cognitive impairment. Dr. Norden also has difficulty thermo regulating, due to the dengue antibodies, and the dengue antibodies cause her immune system to be compromised and function in an abnormal manner so that any infection can cause severe and alarming results. In September 2006, she experienced a cat bite

that caused a severe hand infection. This infection was followed by neuroma and keloid formation due to the Dengue antibody induced vasculitis.

5. Finally, being chronically ill with DHF makes Dr. Norden much more susceptible to depression. The medications used to manage the effects of dengue, particularly migraines, cause severe disruption in her sleep pattern. DHF causes capillary fragility. Therefore, Dr. Norden cannot take antidepressant medications that also compromise capillary integrity. In addition, Dr. Norden cannot take triptan medications for her migraines and is limited to taking narcotics for that severe pain. Therefore, from December of 2005 through the spring of 2006, Dr. Norden agreed to try painful experimental steroid injections into her fifth cranial nerve in an attempt to control the migraines. The injections themselves caused severe migraines, incapacitating her for days at a time. The treatment ultimately reduced the intensity of the migraines but did not stop them. The beneficial effects of the treatment have not lasted. Dr. Norden will begin the treatments again in January of 2007.

6. Dr. Norden will carry the dengue antibodies for the rest of her life. The past and current effects that the dengue antibodies have on Dr. Norden's health in terms of capillary fragility are of a long-term nature and their effects on her health will in all probability be permanent.

7. Dr. Norden is prone to easy bleeding and recurrent severe migraines caused by a variety of triggers including heat, stress, certain chemicals, medical procedures,

and barometric pressure.

8. Dr. Norden's migraines since contracting DHF are atypical in their extreme severity. The migraines she experiences are totally incapacitating. She experiences severe vomiting, loses vision, has excruciating pain, disorientation, and cannot stand or do any other task over a period of one to several days.

9. Dr. Norden's easy bleeding is exacerbated by naphthalene exposure. During the period when Dr. Norden was exposed to naphthalene in 2002, Dr. Norden had increased blood in her urine, nosebleeds and easy bruising.

10. I see Dr. Norden each month and we talk about the effect of her dengue and her migraines for the previous month. The frequency with which Dr. Norden suffers from dengue-produced migraines varies depending on the presence of triggers. These triggers include the aforementioned heat, stress, certain chemicals, medical procedures and barometric pressure. Dr. Norden has never had a month free of dengue-induced migraines. Dr. Norden cannot control the frequency or duration of the triggers. The migraines follow accordingly. For the period from 2003 through 2005, she has had many episodes of total incapacitation from the migraines that lasted from 3 to 6 days in a particular month.

11. I believe that Dr. Norden is capable of working in an environment that is adjusted to her situation. Such adjustments would include but are not limited to the absence of toxins that may aggravate her vascular sensitivity. Thus, Dr. Norden requires control procedures to limit her exposure to naphthalene. She also requires

flexible work schedule to deal with the unpredictability of the DHF induced severe migraines. Her capillary fragility impedes her healing when other medical conditions occur. Consequently, she requires close medical monitoring whenever she is experiencing any other disease entity or injury.

12. Increasing Dr. Norden's direct naphthalene exposure by increasing her contact with specimens is directly contrary to the advice I gave in 2003 for Dr. Norden's return to work. Eight hours of "flex time" every two weeks is very unlikely to be adequate for Dr. Norden's medical needs.

13. Any work plan that might create a sense of devaluation is not medically advisable. The neurological trauma Dr. Norden suffered because of the DHF predisposes her to depression.

14. Dr. Norden suffers sleep disturbance consequent to the narcotic medications she must frequently take for her severe migraines. As noted previously, she cannot tolerate the usual medications for migraine since they aggravate her capillary fragility. Therefore, she must rely on narcotics, which in turn disrupt her sleep. I believe she will be forced to take narcotics for pain relief indefinitely.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: 12/20/06                     _David S. Granite MD_
                                    David S. Granite, M.D.