# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| BETH M. NORDEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 05-1232 (RMC) |
| | ) | |
| CRISTIAN SAMPER, ACTING SECRETARY | ) | |
| SMITHSONIAN INSTITUTION, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## DEFENDANT'S STATEMENT OF GENUINE ISSUES AND RESPONSE TO PLAINTIFF'S STATEMENT OF MATERIAL FACTS NOT IN DISPUTE

Pursuant to the Local Civil Rules, a party opposing a motion for summary judgment must provide "a separate concise statement of genuine issues setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated, which shall include references to the parts of the record relied on to support the statement." LCvR 7(h); LCvR 56.l. In the present matter, however, Defendant does not contend that any genuine issues of material fact exist as to whether Plaintiff was on "constructive notice" of her EEO rights and responsibilities, and has so moved for summary judgment on its behalf. See Defendant's Renewed Motion for Summary Judgment. With respect to the merits of Plaintiff's claim, Defendant asserts that the material facts are in genuine dispute and responds to Plaintiff's Statement of Material Facts Not in Genuine Dispute as follows:

1.    The statement in paragraph 1 is in dispute. Plaintiff has offered no evidence that the Smithsonian received Mr. Goodman's February 10, 2003 letter. Instead, the only evidence before this Court is that the letter was not received by the Angela Roybal, the agency's EEO official and intended recipient. Declaration of Angela Roybal ("Roybal Decl.") at ¶¶ 4-8. It is

also undisputed that Plaintiff did not provide the Smithsonian the letter during discovery and

denied the Smithsonian the ability to seek additional discovery on this matter or the opportunity

to question Plaintiff about it during her deposition.  See Plaintiff's Memorandum of Points and

Authorities in Support of Cross-Motion for Summary Judgment at 8.

      2.      The statement in paragraph 2 is not in dispute.

      3.      The statement in paragraph 3 is in dispute.  The February 10, 2003, letter

specifically references the accommodations recommended in the Office of Safety and

Environmental Management's October 2002 memo and the November 30, 2002 termination of

light duty.  Pl. Ex. 1.  It makes no reference to Plaintiff's interest in working at USDA, and

therefore cannot be construed as an exhaustion of her administrative remedies under National

R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 114-15 (2002) (a party must file a charge of

discrimination within the Title VII limitations period for each discrete act of discrimination

alleged or lose the ability to recover for it).

      4.      With respect to the statement in paragraph 4, because the Plaintiff did not provide

the Smithsonian the letter during discovery, Defendant could only assume that paragraph 4 is

incorrect.  If, on the other hand, Plaintiff's attorney mailed a copy of the letter to Plaintiff, as is

alleged in paragraph 4, then it was improperly withheld and Plaintiff effectively denied the

Smithsonian the opportunity to question Plaintiff about it during her deposition or to engage in

follow-up discovery.[1]

      5.      The statement in paragraph 5 is in dispute.  Plaintiff has been represented by

---

[1]  Because Plaintiff improperly withheld the letter during discovery, Defendant intends to
file a Motion to Strike and for Sanctions pursuant to Fed. R. Civ. P. 35.

counsel throughout these proceedings, and further was well aware that the crux of this claim was whether or not she timely filed her administrative claim.  Accordingly, Plaintiff was aware of the importance and significance any correspondence evidencing prior EEO contact.

6.     The statement in paragraph 6 is not in dispute.

7.     The statement in paragraph 7 is not in dispute.

8.     Defendant does not dispute Dr. Aldrich's statement that he e-mailed Dr. Mathis a memo. However, there is no evidence, however, that Dr. Mathis received such a memo.  Indeed, Dr. Mathis states that he has no record of such an e-mail, but rather that he discussed the detail with Dr. Aldrich on the telephone.  Second Declaration of Wayne Mathis ("Mathis 2d Decl.") at ¶ 5.  Moreover, Plaintiff did not pursue the idea with Dr. Mathis once her light duty assignment ended.  Mathis 2d Decl. ¶ 7.

9.     The implication in the statement in paragraph 9 that Dr. Mathis hid the Aldrich memo from Plaintiff is disputed.  There is no evidence that Dr. Mathis received Dr. Aldrich's memo, Dr. Mathis has no record of ever receiving an e-mail, and his memory is that he discussed the detail with Dr. Aldrich on the telephone.  Mathis 2d Decl ¶ 5.  Moreover, Plaintiff did not pursue the idea with Dr. Mathis once her light duty assignment ended.  Mathis 2d Decl.  ¶ 7.

10.     The statement is paragraph 10 is not disputed.

11.     The statement in paragraph 11 is in dispute.  It is implausible that Plaintiff believed she was on loan to USDA at the time given that (A) she did not discuss the loan idea with Dr. Mathis once her light duty assignment ended, Mathis 2d Decl. ¶ 7; (B) had been informed on December 30, 2002 that Dr. Mathis had not responded to Dr. Aldrich's memo, Pl. Ex. 4; and (C) testified that she began work at the USDA lab as a volunteer in 2003.  Pl. Depo.

3

209:1-5.

12.    The statement in paragraph 12 is disputed.  The Smithsonian communicated to Plaintiff that she would be returned to full time worker's compensation payments effective November 30, 2002.  Nov. 18, 2002 Memo (Def. Ex. 1B), Def. Ex. 3 to Defendant's (Initial) Motion for Summary Judgment.

13.    The statement in paragraph 13 is in dispute.  Defendant provided complete copies of its files in discovery.  See response to paragraph 8.

14.    The statement in paragraph 14 is not in dispute.

15.    The statement in paragraph 15 is in dispute.  Plaintiff has offered no evidence that the Smithsonian ever received Mr. Goodman's February 10, 2003 letter.  Angela Roybal, the agency's EEO contact and the intended recipient, did not receive it.  Roybal Decl. ¶¶ 4-8. Plaintiff did not provide the Smithsonian the letter during discovery and denied the Smithsonian the opportunity to question Plaintiff about it during her deposition.

16.    The statement in paragraph 16 is disputed.  Dr. Mathis did not approve the detail, but agreed to explore the idea of a detail.  Mathis 2d Decl. ¶¶ 3-4.  Further, Plaintiff was informed that she was to be returned to full time periodic worker's compensation rolls effective November 30, 2002.  Nov. 18, 2002 Memo (Def. Exh. 1B); Ex. 3 to Defendant's (Initial) Motion for Summary Judgment.

17.    The statement in paragraph 17 is in dispute.  Plaintiff was informed that she was to be returned to full time periodic worker's compensation rolls effective November 30, 2002. Nov. 18, 2002 Memo (Def. Ex. 1B); Def. Ex. 3 to Defendant's (Initial) Motion for Summary Judgment.  Plaintiff did not discuss loan idea with Dr. Mathis once her light duty assignment

4

ended. Mathis 2d Decl. ¶ 7. Plaintiff was informed on December 30, 2002 that Mathis had not responded to Aldrich's memo. Pl. Ex. 4. Plaintiff testified that she began work at the USDA lab as a volunteer in 2003. Pl. Depo. 209:1-5. It is thus implausible that Plaintiff understood that the Smithsonian was implementing a detail.

18.     The statement in paragraph 18 is not disputed.

19.     The statement in paragraph 19 is in dispute. Plaintiff was informed that she was to be returned to full time periodic worker's compensation rolls effective November 30, 2002. Nov. 18, 2002 Memo (Def. Ex. 1B); Def. Ex. 3 to Defendant's (Initial) Motion for Summary Judgment. Plaintiff did not discuss the loan idea with Dr. Mathis once her light duty assignment ended. Mathis 2d Decl. ¶ 7.

20.     The statement in paragraph 20 is in dispute. See Attached Reply to Plaintiff's Opposition to Defendant's Renewed Motion to Dismiss.

21.     The statement that the Natural History building is comprised of several buildings is not in dispute, Plaintiff's characterization of the buildings as "a massive series of buildings" is not material to the issue of constructive notice, and is a conclusory statement that is not proper in a Statement of Material Facts. To the extent that a response is required, Defendant disputes Plaintiff's characterization of the buildings as a "massive series."

22.     The statement in paragraph 22 is not in dispute.

23.     The statement in paragraph 23 is in dispute. Plaintiff's 2002 return to work encompassed a period of approximately eight months. Declaration of Cynthia Lancaster Murphy ("Murphy Decl.") and attached Exhibit. Moreover, Plaintiff's statement in paragraph 24 demonstrates that she left her office to eat lunch in the SEM lab.

24.    The statement in paragraph 24 that Plaintiff ate her lunch in the SEM lab is not in dispute.  The statement that there were no posters at or near the SEM lab is in not in dispute.  These facts are not materials, as there were posters on each of the museum department's bulletin board throughout the building.  Declaration of Tracey Cones ("Cones Decl.") ¶¶ 6-7.

25.    The statement in paragraph 25 is not in dispute, but is not material to issue of constructive notice.

26.    The statement in paragraph 26 is in dispute. There were posters on each of the museum department's bulletin board.  Declaration of Tracey L. Cones ("Cones Decl.") ¶¶ 6-7. Furthermore,  the location of posters in 2007 not material to issue of poster locations in 2002.

27.    Defendant cannot admit to the statement in paragraph 27, however, Defendant finds it highly unlikely that Plaintiff *never* used the cafeteria.  In any event, the fact is not *material* to the issue as to whether Plaintiff was on "constructive notice."

28.    The statement in paragraph 28 is in dispute.  Tracey Cones directed that posters be hung in public areas upon receiving the posters from OEEMA and thereafter saw them in the cafeteria  Cones Decl. ¶¶ 5-7.

29.    Defendant cannot admit to the statement in paragraph 29, however, the fact is not *material* to the issue as to whether Plaintiff was on "constructive notice."

30.    The statement in paragraph 30 is in dispute.  Plaintiff admits that she went to the Kirby Room, and therefore passed by the posters.  In any event, the fact is not *material* to the issue as to whether Plaintiff was on "constructive notice."

31.    The statement in paragraph 31 is not in dispute,  but is immaterial to the issue of constructive notice.

32.    The statements in paragraph 32 are not in dispute, but are immaterial to the issue of constructive notice.

33.    The statements in paragraph 32 are not in dispute, but are immaterial to the issue of constructive notice.

34.    The statement in paragraph 34 is not in dispute, but is immaterial to the issue of constructive notice.

35.    Defendant is unable to admit to or dispute the statement in the first sentence of paragraph 35. Defendant disputes the improper conclusory characterization that the West Wing is "far away" from Plaintiff. The statements regarding travel time from Dr. Norden's office to the West Wing are not material to the case.

36.    The statement in paragraph 36 is in dispute, but is immaterial to the issue of constructive notice.

37.    The statement in paragraph 37 is in dispute. In her affidavit of 7/27/04 Plaintiff stated that she saw the 6th floor bulletin board covered with notices. 7/27/04 Dec. ¶ 25; Ex. 2 to the Defendant's Reply to Plaintiff's Opposition to (Initial) Motion for Summary Judgment.

38.    The statements in paragraph 38 are in dispute. PRISM has been functioning as the Smithsonian's intranet since 1996 and Dr. Norden had a network account that gave her access to it prior to her illness. Declaration of Richard Freeman ("Freeman Decl.") ¶¶ 3-8.

39.    The statements in paragraph 39 are in dispute. PRISM has been functioning as the Smithsonian's intranet since 1996 and employees with network accounts had access to the system. Freeman Decl. ¶¶ 3-6.

40.    The statements in paragraph 40 are in dispute. PRISM has been functioning as the

Smithsonian's intranet since 1996 and employees with network accounts had access to. Freeman Decl. ¶¶ 3-6.

41.    The statements in paragraph 41 are in dispute. PRISM has been functioning as the Smithsonian's intranet since 1996 and Dr. Norden had a network account that gave her access to it prior to her illness. Freeman Decl. ¶¶ 3-8.

42.    The statements in paragraph 42 are in dispute. PRISM has been functioning as the Smithsonian's intranet since 1996 and Dr. Norden had a network account that gave her access to it prior to her illness. Freeman Decl. ¶¶ 3-8.

43.    The statement contained in paragraph 43 is disputed. After Dr. Miller provided the November 2002 memo to Dr. Norden, Dr. Norden asked him questions about the memo and Dr. Miller responded to those questions. Deposition of Scott Miller ("Miller Depo.") 86:9-6:21.

44.    Defendant does not dispute that Plaintiff sent an email to Kathy Makos, Rudy Anderson, Ted Shultz and Carol Gover. Plaintiff's email is contained at Plaintiff's Exhibit 10. Accordingly, Defendant respectfully refers to the Court to the email for the best evidence of its content. Defendant does not dispute that Dr. Schultz did not respond to this e-mail.

45.    The statement is paragraph 45 is in dispute. Dr. Lawford and Ms. Gover both replied directly to Plaintiff's questions. See Pl. Ex. 11 and 12.

46.    Defendant does not dispute that Dr. Lawford and the Office of Human Resources responded to Plaintiff's e-mail. Dr. Lawford's emails are contained in Plaintiff's Exhibit 11. Defendant disputes Plaintiff's characterization of any alleged correspondence or lack of correspondence and respectfully refers to the Court to the e-mails for the best evidence of its content.

8

47.    Defendant does not dispute that Ms. Gover responded to Plaintiff's e-mail.  Her e-mail is contained at Plaintiff's Exhibit 12.  Accordingly, Defendant respectfully refers to the Court to the email for the best evidence of its content.

48.    Defendant does not dispute that it publishes a newsletter and respectfully refers to the Court to Plaintiff's Exhibit 13 for the best evidence of its content.  However, newspaper or newletter articles are not among the materials permitted by Rule 56(c) as evidence to carry a party's burden of proof.  Such articles are not "competent summary judgment evidence" because they are "classic, inadmissible hearsay" when, as here, they are submitted to establish the truth of the article's statements.  See Roberts v. City of Shreveport, 397 F.3d 287, 295 (5th Cir. 2005); accord Turner v. City of Taylor, 412 F.3d 629, 652 (6th Cir. 2005) (article submitted at summary judgment is "inadmissible hearsay" that cannot "create a genuine issue of material fact for trial"); Cody v. Harris, 409 F.3d 853, 860 (7th Cir. 2005) ("article is clearly hearsay" and not competent evidence at summary judgment).  In fact, the newsletter article is "hearsay within hearsay" that "cannot be considered" at summary judgment because it purports to convey prior factual statements of individuals other than the author.  See Horta v. Sullivan, 4 F.3d 2, 8-9 (1st Cir. 1993).

49.    The statements contained in paragraph 49 attributed to a co-worker's email are hearsay and double hearsay and, therefore, not appropriate for consideration on summary judgment.

50.    The statement in paragraph 50 is disputed.  The paragraph mischaracterizes Schultz's statement and takes out of context the question, which followed questions about the department efforts to move Plaintiff's office in November 2003 (after her termination was

9

proposed ans she responded that she could return to work).  Deposition of Theodore Schultz ("Schultz Depo.") 10:5-12:22.

51.     The statements in paragraph 51 are improper conclusory statements that are not proper under Fed. R. Civ. P. 56, and further the statements in paragraph 51 are not *material* facts.

52.     The statements contained in paragraph 52 relate to Dr. Schultz's conduct in 2003 and are not material to the remaining issue in this case, the termination of Plaintiff's light duty assignment in 2002.  To the extent a response is necessary, Defendant admits that Dr. Shultz requested that he no longer be Plaintiff's supervisor in 2003, and respectfully refers the Court to Plaintiff's Exhibit 17, but disputes that this memo constitutes his sole reaction to Plaintiff's 2003 request.

53.     The statement in paragraph 53 is in dispute.  The Smithsonian disputes that it denied  Plaintiff accommodations.  Plaintiff received numerous accommodations for her naphthalene sensitivity and other conditions, including reduced hours, reduced workload, March 6, 2002 Schultz Memo (Def. Ex. 2B), March 22, 2002 Schultz memo, (Pl. Ex. 26), Miller Depo. 38:20-22; testing 5th floor areas for naphthalene, Pl. Depo. 78:1-78:8; transferring trays of specimens stored in her office into new drawers that were naphthalene-free, Pl. Depo. 78:10-79:11; authorization to order a respirator, Youmans Decl ¶¶1 0-13, and suggesting plaintiff work in a ventilated room on the 4th floor.  Pl. Depo. 80:7-80:12.

54.     The statement in paragraph 54 is not in dispute.

55.     The statement in paragraph 55 is not in dispute.

56.     Defendant disputes that the Court's opinion addressed Plaintiff's disability during the 2000-2002 time-frame.  See Memorandum Opinion at 26-27.  Moreover, Defendant disputes

that Plainitff was disabled in 2002. There is no evidence in the record that Plaintiff or her

doctor's informed the Smithsonian of sexual dysfunction, post traumatic stress syndrome, or

immune system impairments; or that the condition was permanent, and the records they did

provide do not mention them. October 10, 2001 Blake letter (Def. Ex. 3B); Nov. 26, 2001

Kessler letter (Def. Ex. 4B); Dec. 17, 2001 Kauffman letter (Def. Ex. 5B). Defendant was

specifically informed that Plaintiff was recovering from a temporary condition. Def. Ex. 3B;

Def. Ex. 4B; and Def. Ex. 5B.

    57.    Defendant disputes that the Court's opinion addressed Plaintiff's record of disability

during the 2000-2002 time-frame. See Memorandum Opinion at 28. Defendant also disputes

that Plaintiff was regarded as disabled because Defendant was informed that Plaintiff was

recovering from a temporary condition. Def. Ex. 3B; Def. Ex. 4B; and Def. Ex. 5B.

    58.    Defendant disputes that it was informed of Plaintiff's sexual dysfunction, post

traumatic stress syndrome; or immune system impairments. See Def. Ex. 3B; Def. Ex. 4B; and

Def. Ex. 5B. Defendant also disputes that Dr. Granite's declaration serves as proof that the

Smithsonian was aware of the impairments he described. Indeed, Dr. Granite does not assert that

he informed the Smithsonian of the impairments he described.

    59.    The statement in paragraph 59 is in dispute. Plaintiff initially received a fully

successful rating in 2002, which was withdrawn at her request and replaced with a narrative

rating that did not use the standard rating categories. See Defendant's (Initial) Motion for

Summary Judgment at Def. Ex. 26 (Plaintiff's Performance Appraisals).

    60.    Defendant respectfully refers to the Court to Pl. Ex. 30 for the best evidence of its

content. Defendant disputes that Plaintiff did not have accommodations for her napthalene

11

sensitivity.  See Defendant's response to paragraph 53.

61.    Defendant disputes that the Court's opinion addressed whether Plaintiff was qualified during the 2000-2002 time period and disputes that Plaintiff was qualified during this period (and beyond).  Plaintiff worked less than an average of 20 hours a week between March 24, 2002 and November 30, 2002.  Murphy Decl. and Exhibit.  Plaintiff took a month off in the summer of 2002 for reasons unrelated to naphthalene (to avoid commuting in the heat).  9/2/02 e-mail from Lawford to Schultz (Def. Ex. 6B); 8/9/02 handwritten note from Plaintiff to Schultz (Def. Ex. 7B).  Plaintiff never informed the Smithsonian that she was capable of working full time with or without accommodations for her naphthalene sensitivity.  Pl. Depo. 127:25-130:8.

62.    The statement in paragraph 62 is not in dispute.

63.    Defendant admits that plaintiff made certain requests between May 2002 and November 2002, but disputes that they were the same or consistent with each other or the recommendations made in the October 17 memorandum sent by Dr. Lawford and Kathy Makos. Defendant respectfully directs the Court to the October 17 memorandum (Pl. Ex. 23) itself for the best evidence of its content.  For example, Plaintiff requested a respirator then advised Carol Youmans not to purchase the respirator.  Youmans Decl.  ¶ 11.  Moreover, plaintiff confirmed to Ms. Youmans that Ms. Youmans should not purchase the respirator until Ms. Youmans heard back from plaintiff and plaintiff never subsequently requested that Ms. Youmans order the respirator.  Youmans Decl. ¶¶ 12-13.

64.    The statement in paragraph 64 is not in dispute though Defendant notes that Dr. Shultz is not a medical doctor and, therefore, not competent to testify as to the effects naphthalene had on Plaintiff's medical condition.

65.     The statement in paragraph 65 is not in dispute.

66.     The statements in paragraph 66 are in dispute.  Plaintiff received numerous

accommodations for her naphthalene sensitivity and other conditions, including reduced hours,

reduced workload, Def. Ex. 2B; Pl. Ex. 26, Miller Depo. 38:20-22; testing 5th floor areas for

naphthalene, Pl. Depo. 78:1-78:8; transferring trays of specimens stored in her office into new

drawers that were naphthalene-free, Pl. Depo. 78:10-79:11; authorization to order a respirator,

Youmans Decl ¶¶ 10-13; and suggesting Plaintiff work in a ventilated room on the 4th floor, Pl.

Depo. 80:7-80:12; Sept. 30, 2002 E-mail from T. Shultz to B. Norden (Def. Ex 29 to Defendant's

(initial) Motion for Summary Judgment).

67.     Defendant disputes the improper characterization of Dr. Lawford's e-mail and

respectfully directs the Court to the memorandum itself (Pl. Ex. 25) for the best evidence of its

content.

68.     The first sentence of paragraph 68 is not in dispute.  Defendant disputes the

second sentence.  Plaintiff was permitted to work a half-time schedule 40 hours a pay period (20

hours a week) with a reduced workload, which was in and of itself flexible.  Miller Depo. 38:2-

22; Pl. Ex. 26, Def. Ex. 2B.  At Plaintiff's request, her schedule was changed from five four-hour

days (with hours in excess of four to be credited as flex time) to three longer days.  Compare Def.

Ex. 2B with Pl. Ex. 26.  Additionally, the Smithsonian agreed to set Plaintiff's agreed-upon hours

on a pay period basis.  Pl. Ex. 26.  During the 17 pay periods in which she was allowed to work

this reduced 50% schedule, she fulfilled the part-time schedule in only 7 pay periods (three of

which included federal holidays on her scheduled work day.)  Murphy Decl. and Exhibit.

69.     The statements in paragraph 69 are in dispute.  Defendant's response to Paragraph

13

68 establishes that Plaintiff's light duty arrangement was in and of itself flexible. Plaintiff actually was allowed to work less than a 50% schedule for 17 weeks. Murphy Decl. and Exhibit.

70.     The statement in paragraph 70 is mischaracterization. Indeed, the statements contained in the Pl. Ex. 27 do not support paragraph 70. Defendant never made any "misrepresentation" as Dr. Miller is referenced as saying Plaintiff told the Smithsonian not to purchase the respirator, not that she refused to wear it. See Pl. Ex. 27. See also Youmans Decl. ¶¶ 9-13. This is not a misrepresentation, but rather is a fact conceded by Plaintiff.

71.     The statement in paragraph 71 is an improper conclusory statement under Fed. R. Civ. P. 56, and is disputed. The quoted portion of the paragraph referencing Defendant's discovery response is supported by the Youmans Declaration. See Youmans Decl. ¶¶ 9-13.

72.     Defendant disputes that it has asserted Plaintiff "refused" to wear a respirator as misleading and a mischaracterization of the facts. Defendant admits that Plaintiff stated that she could not wear a respirator and, therefore, advised Ms. Youmans not to purchase it on her behalf. Youmans Decl. ¶¶ 9-13.

73.     Defendant disputes Plaintiff's improper characterization that Plaintiff "merely" sent a memo suggesting she could perform her job better with a portable air filter. In addition to the July 5, 2002 e-mail, which is the best evidence of it content, Plaintiff verbally advised Carol Youmans not to purchase the respirator. Youmans Decl. ¶ 11.

74.     The statement in paragraph 34 is not disputed.

75.     The statement in paragraph 75 is in dispute. Plaintiff mischaracterizes the plain language of the document supporting her statement. The document does not state that "the department was still attempting to purchase a respirator," rather , the document states that the

problem could be cured by *using* the respirator.  Pl. Ex. 30.  Moreover, as evidenced by

Plaintiff's own words, on July 5, 2002, Plaintiff knew that Ms. Youmans was waiting for further

instructions from Plaintiff prior to ordering the respirator for Plaintiff, yet Plaintiff never

provided those further instructions.  Youmans Decl. ¶¶ 12-13; Exhibit 3 attached to Youmans

Decl.  Further, there is no evidence that the Smithsonian considered the air filter an effective

accommodation "as of July 22."  The Smithsonian's Environmental Safety Office ultimately

determined that such an air filter would be ineffective for Plaintiff and that the superior

accommodation would be for Plaintiff to use the 4th floor ventilated room.  See 9/18/02 Makos

e-mail (Def. Ex. 8B) ("It seems best for her to attempt to do the majority of her work in the 4th

floor processing room."); October 17, 2002 Memo from K. Makos & T. Lawford (Pl. Ex. 23).

76.     The statement in paragraph 76 is in dispute.  By September 2002, Smithsonian's

Environmental Safety Office had determined that such an air filter would be ineffective for

plaintiff and that the superior accommodation would be for plaintiff to use the 4th floor

ventilated room.  See Def. Ex. 8B ("It seems best for her to attempt to do the majority of her

work in the 4th floor processing room"); see also October 17, 2002 Memo from K. Makos & T.

Lawford (Pl. Ex. 23).

77.     The statements in paragraph 77 are in dispute.  Defendant has disputed the

assertion that Dr. Schultz gave continued assurances until the day the day the Smithsonian

terminated her light duty assignment (see response to paragraph 76) and therefore disputes that

Dr. Schultz's later testimony contracted these assurances.  Moreover, at deposition, Dr. Miller

disagreed with Plaintiff's attorney's suggestion that Plaintiff had not been provided

accommodations.  Miller Depo. 63:3-64:19.

78.     The statement in paragraph 78 is in dispute.  Plaintiff was given the opportunity to work on the 4th floor and apparently believed "the delicate specimens could not be worked on [there] because the air draft is so great."  Pl. Depo. 79:25-80:3.

79.     The statement in paragraph 79 is in dispute.  Dr. Shultz testified that a computer would have been placed in the room upon her request.  Shultz Depo. 114:17-117:8.  He further testified that she could perform her work there.  David Furth also believed Plaintiff could perform her work in the fourth floor room.  Furth Decl. ¶¶ 4-5.

80.     The statement in paragraph 80 is in dispute.  Dr. Shultz testified that a computer would have been placed in the room plaintiff was directed to use upon her request and the specimens she needed could have been brought to the ventilated room.  Schultz Depo. 114:17-117:8.

81.     The statement in paragraph 81 is not in dispute.

82.     Defendant does not dispute Dr. Aldrich's statement that he e-mailed Dr. Mathis a memo.  However, there is no evidence, however, that Dr. Mathis received such a memo.  Indeed, Dr. Mathis states that he has no record of such an e-mail, but rather that he discussed the detail with Dr. Aldrich on the telephone.  Mathis 2d Decl. ¶¶ 5, 8-9.  Moreover, Plaintiff did not pursue the idea with Dr. Mathis once her light duty assignment ended.  Mathis 2d Decl. ¶ 7.

83.     Defendant admits that Dr. Mathis did not tell Plaintiff about a December 6, 2002 memo because there is no evidence that Dr. Mathis received Dr. Aldrich's memo, and his memory is that he discussed the detail with Dr. Aldrich on the telephone.  Mathis 2d Decl ¶¶ 5, 8-9.  Moreover, Plaintiff did not pursue the idea with Dr. Mathis once her light duty assignment ended.  Mathis 2d Decl. ¶ 7.

84.     The statement in paragraph 84 that Dr. Mathis hid the Aldrich memo from Dr. Miller is an improper concludory allegation and is in dispute.  There is no evidence that Dr. Mathis received Dr. Aldrich's memo, and his memory is that he discussed the detail with Dr. Aldrich on the telephone.  Mathis 2d Decl ¶¶ 5, 8-9.

85.     The statement in paragraph 85 is not in dispute.  Dr. Miller's statement was made in responsive to a hypothetical question, and is not a material fact.

86.     The statement in paragraph 86 is an improper conclusory allegation and is in dispute.  Defendant did not lie about the memo as Dr. Mathis's recollection is that he spoke with Dr. Aldrich on the telephone and does not know the date on which that call took place.  Mathis 2d Decl. ¶ 5.

87.     The statement in paragraph 87 is in dispute.  The document on which Plaintiff relies for this statement is not the Defendant's motion for summary judgment.  Defendant's motion for summary judgment did not address the merits of Plaintiff's 2002 requests for accommodations because the claim is untimely.  See Def's Reply in Support of Summary Judgement at 4, n. 1.

88.     The statement in paragraph 88 attributed to Ms. Hossain is correct, but does not support the conclusion that the grant received the USDA would have saved the Smithsonian $22,500.  In any event, the statement in paragraph 88 is not a material fact.

89.     Plaintiff has offered no support for the statement contained in paragraph 89, which violates the requirements of Fed. R. Civ. P. 56.  In any event, the statement in paragraph 88 is not a material fact, and is in dispute.

90.     The statement in paragraph 90 is in dispute.  In 2002, Plaintiff claimed that her

17

difficulty working stemmed from a variety of sources <u>not</u> limited to napthalane. "To some degree

the issues changed over the two year period, but she had issues contending with heat.  She had

issues contending with multiple simultaneous tasks.  She had issues working extended hours in

front of a computer.  She had issues with naphthalene."  Miller Depo. 40:21-41:7.  Plaintiff had

been cleared to work only 20 hours a week because she suffered from intense fatigue.  Pl. Aff. ¶

14.  Plaintiff's headaches could be triggered by causes other than naphthalene, including heat,

stress, changes in  barometric pressure, illness, and medication.  Pltf. Aff. ¶ 15.  Plaintiff never

received clearance from her doctors to work full time at the end of 2002 (with or without

naphthalene accommodations).  Pl. Dep. at 110:9-24.


                        Respectfully submitted,


                          /s/ Jeffrey A. Taylor
                        JEFFREY A. TAYLOR, D.C. BAR # 498610
                        United States Attorney


                          /s/ Rudolph Contreras
                        RUDOLPH  CONTRERAS, D.C. BAR # 434122
                        Assistant United States Attorney


                          /s/ Darrell C. Valdez
                        DARRELL C. VALDEZ, D.C. BAR # 420232
                        Assistant United States Attorney
                        Judiciary Center Building
                        555 4th St., N.W., Civil Division
                        Washington, D.C.  20530
                        (202) 307-2843