Alex T. Sliheet, D.C. Bar No. 438977
Vickie Inge Fang, *pro hac vice*
Attorneys for Plaintiff Beth Norden
8702 Nightingale Drive
Lanham, MD  20706
alexsliheet@yahoo.com
fvickie@comcast.net
(301) 552-4908

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **Beth M. Norden,** ) | **Case No. 051232 (RMC)** |
| ) | |
| **Plaintiff** ) | |
| ) | **PLAINTIFF'S OPPOSITION TO** |
| ) | **DEFENDANT'S MOTION TO STRIKE** |
| **v.** ) | **AND FOR SANCTIONS** |
| ) | |
| ) | |
| **Cristian Samper,** ) | |
| **Acting Secretary of** ) | |
| **Smithsonian** ) | |
| ) | |
| **Defendant** ) | |

## OPPOSITION MEMORANDUM

**Table of Contents**                                                        **page**

**Summary**……………………………………………………………………...1

**I.**    **Statement of the Facts as to the February 10, 2003, letter**………………….…2

**II.**    **Standard of Review as to FRCP 37(c)(1)**……………………………….…..4

**III.**    **The Rule 37(c)(1) Factors**……………………………………………..…..5

**IV.**    **The Rule 37(c)(1) Factors as Applied to the February 10, 2003, Letter**………..…6

   **A)**    **Exhibits 1 and 2 demonstrate beyond a reasonable doubt that the
          Smithsonian knew about the letter, received it, and responded to it**…..…..6

   **B)**    **Other factors showing substantial justification and/or lack of harm**………12

**V.**    **Defendant's Request for Severe Sanctions are in Bad Faith**……………………..20

**VI.**    **Conclusion**………………………………………………………………...22

**Table of Authorities**

*Cases:*

*Alvariza v. Home Depot,*
  241 FRD 663, 665 (DC Colo 2007)……………………………………….......12

*Banks v. Office of the Senate Sergeant-At-Arms & Do.,*
  2005 U.S. Dist. LEXIS 7956 *5, (D.D.C. 2005)……………………………….......4

*Borg v. Chase Manhattan Bank U.S.A.*
  2007 Fed. App. 0516N, 12007 U.S. App. LEXIS 17422, *24…………………….......6

*David v. Caterpillar, Inc,*
  324 F.3d 851, 857 (7th Cir. 2003)…………………………………………….......5

*Jacobsen v. Deseret Book Co.,*
  287 F.3d 936, 953 (10th Cir. 2002)…………………………………………….......5

*Jones v. Lincoln Elec. Co.,*
  188 F.3d 709, 728 (7th Cir. 1999)…………………………………………….......15

*McFarlane v. Ben-Menashe,*
  1995 U.S. Dist. LEXIS 3463 *8 (D.D.C. 1995)……………………………….......14

*Mitchell v. Bannum, Inc.,*
  2007 U.S. Dist. LEXIS 77558 *2 (D.D.C. 2007, Collyer)……………………….......14

*Nicholas v. Pennsylvania State Univ.*
  227 F.3d 133, 148 (3rd Cir. 2000)…………………………………………….......5

*Peterson v. Hantman,*
  227 F.R.D. 13, *16 (D.D.C. 2005)…………………………………………….......4

*Robinson v. Transamerica Ins. Co.,*
  368 F. 2d 37, 39 (10th Cir. 1966)…………………………………………….......12

*Southern States Rack & Fixture, Inc. v. Sherwin-Williams Co.,*
  318 F.3d 592, 596 (4th Cir. 2003)……………………………………………. 5,6

*St. Paul Mercury Ins. Co. v. Capitol Sprinkler Inspection, Inc.*
  2007 U.S. Dist. LEXIS 39606 *34, (D.D.C. June 1, 2007)……………………….......5

*Vance v. United States,*
    1999 U.S. App. LEXIS 14943, *16-17 (6th Cir. 1999)…………………………………6


**_Codes:_**

Fed. R. Civ. P. 37(c)(1) …………………………………………………………..…et. al.


**_Other:_**

29 CFR §1602.14…………………………………………………………….…………11

29 CFR §1614.108(b)………………………………………………………..…………17

29 CFR §1614.102(2)……………………………………………………..…………….17

29 CFR §1614.102(3)...........................................................................................................17

7 James Wm. Moore et. Al., Moore's Federal Practice §§ 37.60[2][b], 37.61 (3d ed. 2002)……5

## Summary

The Smithsonian is asking this Court to sanction its conduct and to finish what the Smithsonian started by eliminating the February 10, 2003 letter from the evidence, thus distorting the record on which the Court bases its decision.  Plaintiff's Exhibits 1 and 2, *infra,* will demonstrate beyond a reasonable doubt that the Smithsonian knew about the February 10, 2003 letter, received it, and responded to it just as Ms. Roybal testified, i.e.,: "It is my practice to provide employees or their counsel with the OEEMA complaint form…in response [to] letters like…[the Goodman February 10, 2003, letter]" *[1/08/08 Roybal, aff., Defendant's Opposition to Plaintiff's MSJ].*

Plaintiff's Exhibit 1 is a copy of the Smithsonian "OEEMA complaint form" that shows on the top of each of its four pages that it was faxed on February 25, 2003 at 14:11 (time) from fax number 202-275-2055 from the "SMITHSONIAN OEEMA." *[Fang, aff., Plt. Ex. 1]*

Plaintiff's Exhibit 2 is an <u>identical copy</u> of Exhibit 1 *[along with Exhibit 1's, February 25, 2003 (date) and 14:11 (time) from the SMITHSONIAN OEEMA and fax number 202-275-2055].*  <u>This can easily be seen on page 3 of Exhibit 2</u>.    Bruce Goodman filled out and signed Exhibit 2, and then it was faxed back to the Smithsonian on April 7, 2003, at 18:36 (time).   Exhibit 2 was subsequently produced by the Smithsonian to both the EEOC and to Dr. Norden. *[Fang, aff., Plt. Ex. 2]*

Plaintiff's Exhibit 1 and Exhibit 2 unequivocally show: 1) that on February 25, 2003 at 14:11, the Smithsonian OEEMA faxed to Bruce Goodman's office a Smithsonian "OEEMA complaint form," and 2) that on April 7, 2003, at 18:36, Bruce Goodman's office faxed back to the Smithsonian OEEMA the same form filled out and signed by

Bruce Goodman. Both parties had a copy of the "OEEMA complaint form" during discovery. There are many reasons establishing substantial justification and/or lack of harm as to the February 10, 2003, letter as discussed *infra*, and Exhibits 1 and 2 are certainly among these reasons. However, Exhibits 1 and 2 also undermine the credibility of Ms. Roybal's testimony, and allow the Court under Fed Rules of Evid. R. 301 to rule that the presumption of receipt in Plaintiff's 11/18/07 MSJ motion has not been rebutted by Ms. Roybal's opposition affidavit and that the Court can rule that the Smithsonian received the letter as a matter of law.

I.    **Statement of the Facts as to the February 10, 2003, letter**

There was a transition of attorneys during May-June of 2003 from Bruce Goodman to Dr. Norden's present counsel. Dr. Norden's new counsel were given the informal complaint resolution document from the Smithsonian that contained the incorrect April 7, 2003 date *[11/18/07, Plaintiff's, MSJ Plt. Ex. 2]*, and Dr. Norden's counsel relied on it.

The February 10, 2003, letter from Bruce Goodman to the Smithsonian was kept in a file by Dr. Norden at her home and labeled "Jim Cole." *[Norden, aff., ¶ 2]* The file was labeled Jim Cole because Jim Cole is the attorney whome Dr. Norden knew from church who put her in touch with counsel Bruce Goodman. *[Norden, aff., ¶ 3]* Dr. Norden kept all documents and correspondence from or to Bruce Goodman in this "Jim Cole" file. *[Norden, aff., ¶ 4]*. This "Jim Cole" file resulted in <u>harm to the Plaintiff,</u> not the Defendant, as the February 10, 2003 letter was missed and not used by Dr. Norden's

2

counsel to make the obvious arguments to the EEOC in 2004 - 2005 and to this Court in Plaintiff's 2006 MSJ.

As Dr. Norden previously testified, although she received the February 10, 2003, letter and knew of its existence, she was not aware of its legal significance in the face of the official Smithsonian informal resolution statement that indicated a first contact date of April 7, 2003. *[11/18/07, Plaintiff's MSJ, Plt. Ex. 2]*    Therefore, she relied on the authority of Smithsonian's informal resolution and testified and answered discovery and interrogatories accordingly. *[Norden, aff., ¶ 6]*

Dr. Norden's attorneys prepared their 11/18/07 MSJ simultaneously with preparing the demand for settlement of this case as requested by the Defendant.  One item in the demand is reimbursement for costs incurred by Dr. Norden.  Accordingly, upon searching for the retainer cost that Dr. Norden paid to Bruce Goodman, Dr. Norden found the letter.  The letter was immediately put into the 11/18/07 MSJ to give Defendant notice of the letter which also serves under the law as notice of information to correct the previous interrogatory responses after the close of discovery.  (FRCP 26(e) "…must supplement or correct its disclosure or response: if the additional or corrective information has <u>not otherwise been made known</u> to the other parties during the discovery process or <u>in writing</u>…") (emphasis added)

Upon receipt of Defendant's opposition that asserted that Plaintiff's MSJ had not proved the letter was mailed to the Smithsonian *[1/08/08, Defendant's Opposition to Plaintiff's MSJ, footnote #1],* Plaintiff's counsel subpoenaed Bruce Goodman (on January 15, 2008), and scheduled the deposition of Bruce Goodman in the State of Maryland, Prince George's County on January 23, 2008., at 10:00 a.m. *[Sliheet, aff., attachment 1]*

Defense counsel was given notice by mail on January 15, 2008, and by a phone call in which Plaintiff's counsel spoke directly to Defense counsel. *[Sliheet, aff., attachment 1]*

Defense counsel took no position and made no statements regarding the subpoena. On the day of the deposition, January 23, 2008, Bruce Goodman telephoned Plaintiff's counsel and stated that he was ill in bed and could not leave the house and would not be attending the deposition. Plaintiff's counsel called Defense counsel at approximately 9:00 a.m. and 9:45 a.m. and left a message on his voice mail and also sent an email to Defense counsel informing him that the deposition was off for the day. *[Sliheet, aff., attachment 2]* Defense counsel did not respond at all, <u>at anytime</u>, and did not ask that the deposition be rescheduled. *[Sliheet, aff., ¶ 3-6]*

Subsequently, Bruce Goodman agreed to provide an affidavit to Plaintiff which was included in Plaintiff's 1/30/08 MSJ reply brief. Defendant then proceeded to file its Motion to Strike without the good faith meet and confer requirements of LCvR7 (m), and Defendant specifically claimed on page six of its Motion to Strike that it was harmed by its inability to depose Mr. Goodman.


## II.    <u>Standard of Review as to FRCP 37(c)(1)</u>

"…The central requirement of <u>Rule 37</u> is that 'any sanction must be just…'"; See: *Banks v. Office of the Senate Sergeant-At-Arms & Do.*, 2005 U.S. Dist. LEXIS 7956 *5, (D.D.C. 2005). "…[T]his Circuit has emphasized any sanctions awarded must be proportional to the underlying offense." *Peterson v. Hantman*, 227 F.R.D. 13, *16 (D.D.C. 2005). "Fed. R. Civ. P. 37(c)(1)…generally provides for exclusion of a party's experts [or evidence] unless [it] had 'substantial justification' for disclosing them late or

unless [its] late disclosure was 'harmless.'" *St. Paul Mercury Ins. Co. v. Capitol Sprinkler Inspection, Inc.* 2007 U.S. Dist. LEXIS 39606 *34, (D.D.C. June 1, 2007). "The alternative sanctions referenced in the rule [37(c)(1)] are primarily intended to apply when a party fails to disclose evidence helpful to an opposing party. *Southern States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 596 (4th Cir. 2003) citing to 7 James Wm. Moore et. Al., Moore's Federal Practice §§ 37.60[2][b], 37.61 (3d ed. 2002)"

## III. **The Rule 37(c)(1) Factors**

There is no specified list of factors for the court in the D. C. Circuit to consider in making a substantial justification and/or harmless error analysis specifically for and under FRCP 37(c)(1). Plaintiff has found factors that courts in 37(c)(1) cases have used.

1. The factors of the 3rd, 7th and 10th Circuit.

In determining whether the failure to disclose was harmless under Rule 37(c)(1), the Third Circuit identified four factors as being helpful: "(1) prejudice or surprise to the party against whom evidence is offered; (2) ability to cure the prejudice; (3) likelihood of disruption to trial; and (4) bad faith or willfulness of the non-compliant party." *Nicholas v. Pennsylvania State Univ.* 227 F.3d 133, 148 (3rd Cir. 2000) Accord: *David v. Caterpillar, Inc,* 324 F.3d 851, 857 (7th Cir. 2003); *Jacobsen v. Deseret Book Co.,* 287 F.3d 936, 953 (10th Cir. 2002);

      2.      The slightly different Factors of the 4th Circuit:

A district court should be guided by the following factors: "(1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence." *Southern States Rack & Fixture, Inc. v. Sher.-Williams Co.*, 318 F.3d 592, 597 (4th Cir. 2003).

      3.      The Advisory Committee Notes

The advisory committee note to Rule 37 "strongly suggests that 'harmless' involves an honest mistake on the part of the party coupled with sufficient knowledge on the part of the other party." *Borg v. Chase Manhattan Bank U.S.A.,* 2007 Fed. App. 0516N, 2007 U.S. App. LEXIS 17422, *24 (6th Cir. 2007) (quoting *Vance v. United States,* 1999 U.S. App. LEXIS 14943, *16-17 (6th Cir. 1999).

**IV.**    **The Rule 37(c)(1) Factors as Applied to the February 10, 2003, Letter**

Under any of the above tests, the substantial justification/harmless standard is met.

**A)**    **Exhibits 1 and 2 demonstrate beyond a reasonable doubt that the Smithsonian knew about the letter, received it, and responded to it.**

Plaintiff's Exhibit 1 is the "OEEMA complaint form" filled out and signed by Bruce Goodman on April 7, 2003, before his office faxed it to the Smithsonian. *[Fang, aff., Plt. Ex. 1]* Exhibit 1 shows at the top of any of its 4 separate pages that it was faxed to the recipient on February 25, 2003 at 14:11 (time) from fax number 202-275-2055 and specifically from the "SMITHSONIAN OEEMA." *[Fang, aff., Plt. Ex. 1]* We also

know that fax 202-275-2055 is the fax for the Smithsonian OEEMA because Exhibit 1 itself contains this fax number in its the main body paragraph 1.   *[Fang, aff., Pt. Ex. 1]* We also know that Exhibit 1 was faxed to Bruce Goodman's office on February 25, 2003, not only because Bruce Goodman filled out and signed Exhibit 1, but because his office faxed Exhibit 1 back to the Smithsonian OEEMA on April 7, 2003, at 18:36 (time).  *[See Plaintiff's Exhibit 2, infra]*

Plaintiff's Exhibit 2 is a copy of Exhibit 1.   *[Fang, aff., Plt. Ex. 2]* Exhibit 2 is from the Smithsonian packet that was submitted by the Smithsonian to the EEOC and to Plaintiff in 2004.   In 2004, the EEOC ruled that the Smithsonian must do a further investigation on the adequacy of its poster evidence. *[Fang, Aff. ¶ 2]*  Subsequently, the Smithsonian submitted an investigative response of 108 pages in response to both the EEOC and to Plaintiff.  In the Smithsonian's investigative response (pages 61 of 108 through 64 of 108) was Exhibit 2 which is a copy of Exhibit 1.  *[Fang, aff., Plt. Ex. 2]* All parties had a copy of Plaintiff's Exhibit 2 which contains two sets of fax information on top of each page.  *[Fang, aff., Plt. Ex. 2]*   Page 3 of Exhibit 2 is the clearest, and shows that Bruce Goodman's office is faxing on 4/7/03 at 18:36 (time) from fax number 301-439-7090 the identical "OEEMA complaint form" that was received on 2/25/2003 at 14:11 (time) from the Smithsonian OEEMA.  *[Fang, aff., Plt. Ex. 2].*   We know that Bruce Goodman's office is the sender of Exhibit 2 because the sender's fax number on top of Exhibit 2, 301-439-7090 is the same as the fax number on Bruce Goodman's letterhead on his February 10, 2003, letter, 301-439-7090. [See: 1/30/08, Plaintiff's MSJ Reply, Exhibit 1].

Plaintiff's Exhibit 1 and Exhibit 2 unequivocally show: 1) that on February 25, 2003 at 14:11, the Smithsonian OEEMA faxed to Bruce Goodman's office a Smithsonian "OEEMA complaint form," and 2) that on April 7, 2003, at 18:36, Bruce Goodman's office faxed back to the Smithsonian OEEMA the <u>identical form</u> filled out and signed by Bruce Goodman. This is how the Smithsonian OEEMA was able to include Exhibit 2 in its investigative response to the EEOC and to Plaintiff. *[Fang, aff., Plt. Ex. 1] [Fang, aff., Plt. Ex. 2]*

The faxing by the Smithsonian of its "OEEMA complaint form" to Bruce Goodman on February 25, 2003, at 14:11, is exactly the procedure that Ms. Roybal's states in her affidavit is the usual practice in response to Mr. Goodman's February 10, 2003, letter: "It is my practice to provide employees or their counsel with the OEEMA complaint form…in response [to] letters like…[the Goodman February 10, 2003, letter]" *[Roybal, aff., 1/08/08 Defendant's Opposition to Plaintiff's MSJ].*

Exhibits 1 and 2 are direct and almost conclusive evidence, that the Smithsonian faxed Bruce Goodman's office its "OEEMA complaint form" on February 25, 2003, at 14:11, in direct response to his February 10, 2003, letter. <u>The only other theoretically possible scenario is as follows:</u>

1) Bruce Goodman specifically took the time to research and find the name of Ms. Angela Roybal and the address of the OEEMA to put on his February 10, 2003, letter.

2) Bruce Goodman then wrote the February 10, 2003, letter to Ms. Roybal and sent it to Dr. Norden.

3) Bruce Goodman wrote the letter fully intending it to be a complaint, formal or informal, under EEOC <u>requirements</u> and that Ms. Roybal, the recipient, should so consider the letter: *"The Department has failed and refused to accommodate Dr. Norden...please consider this letter to be an informal or a*

*formal complaint under the ADA." [11/18/07, Goodman Letter, Plaintiff's MSJ, Exhibit 1]*

4)     Despite going through all of the above trouble, Bruce Goodman then did not mail his letter to the Smithsonian, and decided instead between February 10, 2003, and February 25, 2003, after all of this trouble, to call the Smithsonian and request an "OEEMA complaint form" which was faxed on February 25, 2003.

<u>Nonsense.</u> Bruce Goodman testified that he mailed his February 10, 2003, letter to the Smithsonian, [11/18/07, Plaintiff's MSJ, Goodman aff.] and Ms. Roybal's testified that: "It is my practice to provide employees or their counsel with the OEEMA complaint form...in response [to] letters like...[the Goodman February 10, 2003, letter]" *[1/08/08, Roybal, aff., Defendant's Opposition to Plaintiff's MSJ].*     Thus, Exhibits 1 and 2 are highly probative:

- As to the veracity of Bruce Goodman's affidavit that the February 10, 2003, letter was mailed to the Smithsonian.

- As to knowledge, receipt and response to the Goodman letter on February 25, 2003, by the Smithsonian in faxing the "OEEMA complaint form" i.e., the Smithsonian followed Ms. Roybal's stated procedure in her affidavit and sent the "OEEMA complaint form" in response to Mr. Goodman's February 10, 2003, letter:

- As to veracity of Dr. Norden's testimony that she had a conversation with Bruce Goodman on March 12, 2003, regarding information he needed to fill out the Smithsonian "EEO form."

Exhibits 1 and 2 provide highly corroborating evidence that Mr. Goodman and Dr. Norden testified accurately and that the Smithsonian had knowledge of the February 10, 2003, letter, and received and responded to the letter on February 25, 2003.

Furthermore, Ms. Roybal's affidavit makes clear that she responded to the February 10, 2003 letter insufficiently under the rules, and that her own failure to follow the requirements of 29 CFR 1614.105 is the real cause of the incorrect use of the April 7,

9

2003, first contact date. Ms. Roybal testified only that her practice is to provide a complaint form in response to letters like the one sent by Mr. Goodman. The Goodman letter, however, was a first contact initiated with a counselor within 45 days of a matter alleged to be discriminatory in accordance with 29 CFR 1614.105(a)(1). The correct response to such a contact is not simply to send a complaint form. Under 29 CFR 1614.105(b)(1) and (c), Ms. Roybal was required to advise Dr. Norden in writing of her rights and responsibilities, to conduct counseling activities in accordance with the instructions contained in Commission Management Directives, and to submit a written report to both the agency office that has been designated to accept complaints and to the aggrieved person within 15 days.

Instead of performing any of the requirements under the CFR rule, Ms. Roybal simply faxed a complaint form within exactly 15 days. Had Ms. Roybal followed the regulations, everyone would have been aware of the legal significance of Mr. Goodman's letter, and there could have been no doubt in anyone's mind as to the correct date of the first complaint. Ms. Roybal's failure to follow the CFR rule and to maintain an appropriate written file for Dr. Norden is only one of many such failures on the part of the Defendant EEO. As will be discussed *infra,* there have been at least three other instances in which the Defendant EEO either deliberately attempted to conceal, or negligently failed to maintain, key information in Dr. Norden's EEO file.

Finally, Plaintiff's counsel wishes to make this observation to the court regarding Exhibits 1 and 2. It is difficult enough to successfully prosecute employment discrimination claims, which usually have vast amounts of hundreds of documents as was exponentially true in Dr. Norden's case, without having the Smithsonian conveniently

being unable to locate documents or intentionally not provide documents which are harmful to the Smithsonian's case. Exhibits 1 and 2 make it highly probable that the Smithsonian received and responded to the February 10, 2003, letter and either then lost the letter or did not produce it in discovery as they were required to do in response to Plaintiff's production requests (#6 and #13). *[Fang, aff., Plt. Ex 3]* Such Smithsonian conduct not only would violate FRCP 37(c)(1), but also would violate the EEOC regulations on document retention. See 29 CFR section 1602.14: "Preservation of records made or kept:"[1]

- This is the 2nd time that the Smithsonian has denied receipt as a defense to its lack of production of documents which are harmful to its case.

- This is the 2nd time that the Defendant has not produced a document in discovery and claimed that it never received the document.

- This is the 2nd time that Plaintiff's counsel through their own efforts and considerable attorney hours, have nevertheless discovered the document despite the Smithsonian's failure to produce the document or the Smithsonian's misdirection as to the existence of the document.

Plaintiff is referring to the fact that Dr. Aldrich of the USDA sent a memo to Dr. Mathis stating that he obtained funding at the rate of $22,500 per year for a period of three years and which would be reimbursable to the Smithsonian for loaning Dr. Norden to the USDA. *[11/18/07, MSJ, Plt.Ex:3, Aldrich affidavit]* The Smithsonian not only

---

[1] "Where a charge of discrimination has been filed…against an employer under title VII or the ADA, the respondent employer shall preserve all personnel records relevant to the charge or action until final disposition of the charge or the action. The term ``personnel records relevant to the charge,'' for example, would include personnel or employment records relating to the aggrieved person...The date of final disposition of the charge or the action means...the date on which such litigation is terminated."

11

failed to produce Dr. Aldrich's December 6, 2002, memo in response to Plaintiff's discovery requests, but the Smithsonian also lied about the issue of receiving knowledge of the funding in its denial of Plaintiff's Admission Request No.16. *[11/18/07, MSJ, Plt.Ex.38]*

### Conclusion as to Exhibits 1 and 2

Exhibits 1 and 2 establish Plaintiff's substantial justification and/or the lack of harm to the Smithsonian under FRCP 37(c)(1). Exhibit 1 and 2 also establish that the presumption of receipt of the February 10, 2003, letter under Fed. Rules of Evid. R. 301 has not been rebut by Ms. Roybal's opposition affidavit. Finally, Exhibit 1 and 2 also demonstrate Smithsonian misconduct, causing Plaintiff's counsel to have to expend considerable attorneys' hours for the litigation of this case.[2]

**B)    Other factors showing substantial justification and/or lack of harm.**

### Not close to trial

Dr. Norden's case is not close to trial and has no trial date. "Purpose of discovery rules is to produce evidence for speedy determination of trial. *Robinson v. Transamerica Ins. Co.*, 368 F. 2d 37, 39 (10th Cir. 1966). Specifically, <u>Fed. R. Civ. P. 37(c)</u> was chiefly targeted at protecting party from being ambushed at trial with previously undisclosed evidence." *Alvariza v Home Depot* 241 FRD 663, 665 (DC Colo 2007).

---

[2] <u>Throughout the EEOC litigation and the federal litigation</u>, Smithsonian mis-directions, intransigence, multiple motion requests for extensions, motions to strike, denials of receipt, withholding of documents, all have required Plaintiff's counsel to expend considerable attorney hours.

***Defendant's argument that a new affidavit can not contradict a previous affidavit is based on a misstatement of the law and shows no harm.***

Defendant cites *Pyramid Secs. Ltd. v. IB Resolution, Inc.*, 924 F.2d 1114, 1123 (D.C. Cir. 1991) and *Franks v. Nimmo*, 796 F.2d 1230, 1237 (10th Cir.) for the proposition that a party can never contradict his own past testimony. In fact, neither case says any such thing. Both cases hold that a party cannot create a controversy merely by contradicting his own affidavit <u>with nothing more</u>. Dr. Norden has offered considerably more, to wit:

    a. a copy of the February 10th letter,

    b. a copy of the postmarked envelope in which the letter was sent to Dr. Norden,

    c. Exhibit 1 which shows that Defendant responded to the February 10, 2003, letter on February 25, 2003, by faxing an "OEEMA complaint form" to Bruce Goodman,

    d. Present sense impression notes on Dr. Norden's March 12, 2003, calendar regarding discussions with Bruce Goodman on the "EEO form,"

    e. Exhibit 2 which shows that Bruce Goodman specifically filled out and signed and faxed Exhibit 1 back to the Smithsonian because Exhibit 2 was later used by the Smithsonian in a production to the EEOC and to Plaintiff, and

    f. An affidavit from Mr. Goodman, a member of the bar, testifying that he mailed the February 10, 2003, letter to the Defendant.

***Smithsonian able to respond and rebut***

As to Plaintiff's 11/18/07, MSJ, the Smithsonian was able to submit the affidavit of Ms. Roybal, and was able to respond and state its position that the letter was never received. The ability to respond or rebut the evidence in the MSJ is a factor which was available and was utilized by the Smithsonian to minimize any prejudice. See, *McFarlane v. Ben-Menashe*, 1995 U.S. Dist. LEXIS 3463 *8 (D.D.C. 1995) ("…The defendants had an opportunity, through their reply brief, to argue their view of the significance of the plaintiff's evidence, which they have done. The Court therefore denies the defendants' Rule 37(c) request.") Moreover, Exhibit 1 and 2, strongly demonstrate Smithsonian knowledge, receipt and response to the letter and therefore a lack of prejudice or surprise as to the letter or even the necessity of further discovery as to the mailing of the letter to the Smithsonian.


***Smithsonian purposely chose not to Depose Bruce Goodman***

See *Mitchell v. Bannum, Inc.,* 2007 U.S. Dist. LEXIS 77558 *2 (D.D.C. 2007, Collyer) as to expert testimony:

> "…A plaintiff's late disclosure of expert testimony can necessitate exclusion because the late disclosure deprives the defendant of the opportunity to depose the expert, to challenge the expert's credentials and testimony, and to solicit the defendant's own experts.

Applying *Mitchell* to the February 10, 2003, letter instead to expert testimony, the Smithsonian did not want to even attempt to depose Bruce Goodman. The February 10, 2003, letter was known to Defendant as of 11/18/07 upon the filing of Plaintiff's MSJ. Defendant made no attempt to subpoena Bruce Goodman to cure any perceived prejudice or harm. Defense counsel made no communication whatsoever with Plaintiff's counsel

14

in attempt to attend or reschedule Plaintiff's subpoenaed deposition of Bruce Goodman on January 23, 2008, to cure any perceived prejudice or harm. *[Sliheet, aff., ¶ 3-6, attachments 1-2]*

### Lack of Bad Faith

Under the advisory committee's notes, Dr. Norden's mistake regarding the February 10, 2003, letter was an honest mistake by Dr. Norden and her counsel. Dr. Norden did not proceed in bad faith, and was misled by the Smithsonian's informal resolution decision that stated the 1st contact date as April 7, 2003. [11/18/07, Plaintiff's, MSJ, Plt. Ex. 2] Plaintiff's counsel, who began representing Dr. Norden in late May of 2003, were also misled by the Smithsonian's informal resolution decision. *("In addition, we note that this is not a situation in which Jones sought to 'sandbag' the district court by sitting on an alleged error for tactical reasons and raising the issue only when his case made a turn for the worse." Jones v. Lincoln Elec. Co.*, 188 F.3d 709, 728 (7th Cir. 1999)) As has been discussed above, this mistake would not have occurred if the Defendant's EEO had followed the CFR requirements for pre-complaint processing and if it had properly retained the February 10th letter in Dr. Norden's file.

Furthermore, there has been nothing in Dr. Norden's employment history or her conduct during the five years of EEO and Court proceedings to suggest that Dr. Norden is in anyway dishonest or disrespectful of the rules. Her deposition testimony became almost humorous when she was questioned on the subject of her initial contacts with attorneys. Despite careful instructions from Mr. Henault that she was not to reveal the contents of her communications, Dr. Norden began recounting her conversations with attorneys in her overeager attempts to answer Mr. Henault fully. *[Fang, aff., Plt. Ex. 4]*

Dr. Norden's behavior is that of a very naïve and anxious litigant, not of a person who is trying to hide anything. The "hiding" has been on Defendant's part throughout all phases of the complaint process, and if overlooking the February 10 letter has been the result of any bad faith, it has been bad faith on Defendant's part. In addition, Defendant has previously been excused by the court on two separate occasions for conduct that violated the rules, but was not done in bad faith.[3]

### The February 10, 2003, letter and evidence are important

Finally, the February 10, 2003, letter is important to the extent that it may affect the ability of Plaintiff to get to the merits of her claim of failure to accommodate during the 2002 period, depending on how the court rules as to when the USDA loan/detail accommodation was denied. In Plaintiff's 11/18/07, MSJ, the USDA loan/detail accommodation was stated to be denied in late January of 2003 which is within the 45 day limit to the February 10, 2003, letter. As even Defendant admits on page 3 of its Motion to Strike, whether Dr. Norden complained to the EEO within 45 days of being discriminated against is a "threshold issue in the case."

---

[3]      Defense Counsel Henault missed the scheduling order deadline for filing a MSJ in October of 2006, and without the necessary good cause mandated by 16(b) under the rules. Mr. Henault asked for a total rescheduling of deadlines in order to file a MSJ. The court granted the rescheduling and relieved Defendant of the missed filing deadline.

     Again, Defense Counsel Valdez missed the filing deadline for his MSJ opposition on December 19, 2007, without first getting the necessary court extension under the rules. The court granted the extension request and relieved Defendant of the missed filing deadline under the rules.

***Smithsonian EEO's pattern and practice of lack of objectivity, and negligently maintaining or deliberately concealing key documents in Dr. Norden's EEO file***

The Smithsonian EEO is charged under law with the following duties:

> "**29 CFR 1614.108(b)** ...*the agency shall develop an **impartial** and **appropriate** factual record upon which to make finding on the claims raised by the written complaint. An appropriate factual record is one that allows a reasonable fact finder to draw conclusions as to whether discrimination occurred...*
>
> **29 CFR 1614.102(2)**... *(the agency shall) provide for a prompt**, fair,** and **impartial** processing of complaint...*
>
> **29 CFR 1614.102(3)**... *the agency shall) conduct a continuing campaign to eradicate every form of prejudice or discrimination."* (emphasis added)

Nevertheless, on three separate occasions, the Smithsonian EEO has either neglected to keep adequate records in regard to Dr. Norden's complaint and/or it has committed serious ethical violations in regard to Dr. Norden's complaint

### Example #1:

First, the Smithsonian EEO, <u>the agency that was in place to protect people at the Smithsonian from discrimination</u>, was an active participant in designing the retaliatory return to work proposal that comprised Count II of Dr. Norden's Complaint. *[Fang, aff. Plt. Ex. 5]* Emails eventually produced during the final week of discovery show that the EEO Chair, Era Marshall, demanded the opportunity to approve the final wording of the retaliatory return to work proposal and that EEO counselors Carol Gover and Karen Margensey regularly conferred with Marylin Slomba in the drafting of the retaliatory return to work proposal. *[Fang, aff. Plt. Ex. 6]* Not only did the Smithsonian EEO actually participate in retaliating against an employee for having filed a complaint of discrimination, but it tried to keep this quiet by including the following provision: "23. Dr. Norden

17

and the Smithsonian agree that the facts and terms of this agreement shall be treated as confidential." *[Fang, aff. Plt. Ex. 5]* There is no legitimate reason for requiring an employee to keep the terms of her employment confidential. Instead, Provision 23 demonstrates two things: a) the Smithsonian EEO was conscious of wrong doing in its retaliatory proposal, and b) the Smithsonian EEO attempted to hide its wrong doing by creating a record that could be kept secret. In this instance the Smithsonian EEO both committed a serious ethical violation and attempted to manipulate Dr. Norden's record so that no one would know of the violation.

### Example #2:

The second Smithsonian EEO practice involves a perjured affidavit by the Smithsonian EEO. The history of this perjured affidavit is preceded by a long period of problems with the Smithsonian EEO's in-house mailing system which resulted in Vickie Fang, not receiving the Smithsonian's 108 page investigative report to the EEOC. At one point Smithsonian EEO Counselor Margensey insisted that Ms. Fang had received the document because Ms. Margensey's records reflected receipt of the document by someone in Boyers, Pennsylvania. Ms. Fang protested that she had never been to Boyers, Pennsylvania, didn't know anyone there, and had not received anything from Boyers to no avail. The EEO took the position that it had met its obligations because the document was correctly addressed to Vickie Fang in Maryland, and their records reflected that someone in Boyers received it. The fact that the document had gone from the Smithsonian in-house mailing system to a town where Smithsonian employee

pensions are processed was also given no weight by Ms. Margensey. *[Fang, aff. ¶ 3]*

Concurrently with the above issue, the Smithsonian then attempted to take advantage of its own failure to make proper mailing after Dr. Norden filed an informal complaint based on the retaliatory return to work proposal. The Smithsonian EEO issued a Notice of Final Interview regarding Dr. Norden's complaint. It did not send a copy of the Notice to Dr. Norden, and Ms. Fang never received a copy. The Notice of Final Interview letter was returned to the Smithsonian by the postal office with the word "Refused" stamped on it during the same period in which Ms. Fang had numerous telephone calls and emails with Smithsonian counsel, Mr. Lapinia, and with Ms. Margensey and others at the Smithsonian about the problems she was having receiving mail from the Smithsonian. When the Notice of Final Interview was returned as having been "Refused," the EEO took the incredible position that Vickie Fang must have refused it. Without notifying Ms. Fang, the Smithsonian EEO began counting the days after the Decision had been refused and then determined that the formal complaint that Dr. Norden filed later was time barred because it was made more than 15 days after the "refusal" stamp. When questioned as to why Dr. Norden had never been sent a copy of the Notice of Final Interview, Karen Margensey first defense was to tell Ms. Fang that employees are not sent notification of any decision regarding their informal complaints, only of decisions regarding their formal complaints. *[Fang, aff. Plt. Ex. 9]* *[Fang, aff. ¶ 4]*  Ms. Fang responded by calling Smithsonian Counsel Ms. Farley Earhart and explaining both the

problems with the mailing system and the legal requirement that both the complainant and her counsel receive notice. Ms. Fang cited 29 CFR 1614.605(d) to Ms. Farleigh as well as <u>Dark v. U.S. Postal Service</u>, 01A12537 (2001) which confirmed that the above-referenced regulation applies to Notices of Final Interviews in the informal complaint process. *[Fang, aff. ¶ 4]*

The Smithsonian EEO's next defense was to produced a sham affidavit from EEO Counselor Ms. Shadella Davis which claimed that a letter Dr. Norden had sent to Ms. Davis notifying her of a change in counsel had been <u>accompanied by a phone call</u> from Dr. Norden explaining that the letter really meant that Dr. Norden did not wish to receive her own copies of notifications from the EEO. Such a phone call would have been of extraordinary significance because it would in effect constitute an oral waiver of Dr. Norden's rights when the rules require that such a waiver be done in writing. Ms. Davis' affidavit did not include a letter from the EEO to Dr. Norden confirming the alleged oral waiver, nor did her affidavit include Ms. Davis' own notes to the file, nor did the affidavit include the date on which the alleged oral conversation took place. Dr. Norden strenuously maintains that Counselor Davis' affidavit is perjured, and the EEOC eventually ruled in Dr. Norden's favor through the expenditure of considerable attorneys' hours all the way through a Motion for Reconsideration. For purposes of this Opposition, only two conclusions are possible. Either Counselor Davis submitted a perjured affidavit, or she kept an extraordinarily poor record on Dr. Norden's behalf. *[Fang, aff. ¶ 5]*

**Example #3:**

The third example of the Smithsonian EEO either failing to keep a proper record of Dr. Norden's file or deliberately distorting that record applies to the 2004 investigatory report discussed *supra*, that the Smithsonian EEO submitted to the EEOC. As described *supra*, this report was ordered so that the EEOC could determine whether Dr. Norden had made her complaint within 45 days after the last date of discrimination. The Introductory/Procedural Background includes the following known misstatement: "The latest date attributable to an alleged discriminatory act was November 30, 2002." *[Fang, aff. Plt. Ex. 8]* However, Defendant EEO had previously required Dr. Norden to provide a listing of all her requests for accommodations. Dr. Norden responded in the fall of 2003 with an October 13, 2003, seven page letter that enumerated dozens of requests and responses. *[Fang, aff. Plt. Ex. 7]* The latest "response" given in the letter was a December 30, 2002, email from the USDA asking Dr. Norden why Dr. Mathis had not responded to the USDA's receipt of funding for Dr. Norden. *[Fang, aff. Plt. Ex. 7, Page 6]* This letter, which provided clear evidence of discriminatory behavior well past November 30, 2002, and within 45 days of the February 10, 2003, letter, was not included in the Smithsonian's EEO report. The report also, of course, included no other information about the USDA funding for Dr. Norden. Once again, the Smithsonian EEO had either lost a significant part of Dr. Norden's record, or it had deliberately distorted Dr. Norden's record in an attempt to let Defendant avoid liability for its discrimination against Dr. Norden. *[Fang, aff. ¶ 6]*

21

### *Conclusion as to FRCP 37(c)(1) analysis*

Thus, based on all of the above, the substantial justification/harmless standard has been met, and the February 10, 2003, letter and evidence should not be excluded under FRCP 37(c)(1).

**V.     Defendant's Request for Severe Sanctions are in Bad Faith.**

Defendant requests that the court dismiss the entire claims of Plaintiff as a sanction.  "The alternative sanctions referenced in the rule [37(c)(1)] are primarily intended to apply when a party fails to disclose evidence helpful to an opposing party. *Southern States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 596 (4th Cir. 2003) citing to 7 James Wm. Moore et. Al., Moore's Federal Practice §§ 37.60[2][b], 37.61 (3d ed. 2002)"  In our case, of course, the letter is not helpful to the Defendant.

Defendant has been found guilty of serious acts of discrimination against a long term employee who was consistently rated as having performed "outstanding" work. This Opposition and Dr. Norden's Renewed Cross Motion for Summary Judgment have demonstrated that Defendant EEO has committed a series of unethical practices in maintaining Dr. Norden's file once she made a complaint of discrimination.   Defendant now attempts to avoid all responsibility for its wrongdoing and to enlist this Court in its pattern and practice of concealing evidence helpful to Dr. Norden.  Granting either the sanction of striking the February 10 letter or any other sanctions would be patently unjust.

## VI.    Conclusion

For all of the above reasons, Dr. Norden prays this Honorable Court to:

1)   hold that under FRCP 37(c)(1), the letter is not excluded based on substantial

justification and/or a lack of harm, and

2)   hold that Exhibits 1 and 2 establish that Ms. Roybal's affidavit fails in

defeating the presumption afforded under Fed Rules of Evid 301, allowing

the Court to rule on receipt of the letter as a matter of law in Plaintiff's

11/18/07, MSJ.

Date: 2-14-08                                    Respectfully submitted,

_____/s/ ALEX SLIHEET_____
Alex T. Sliheet, D.C. Bar No. 438977
Vickie Inge Fang, *pro hac vice*
Attorneys for Plaintiff Beth Norden