UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| BETH M. NORDEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 05-1232 (RMC) |
| | ) | |
| CRISTIAN SAMPER, ACTING SECRETARY | ) | |
| SMITHSONIAN INSTITUTION, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT'S REPLY TO PLAINTIFF'S
OPPOSITION TO DEFENDANT'S MOTION FOR SANCTIONS**

On February 4, 2008, pursuant to Federal Rule of Civil Procedure 37(c), Defendant

moved to strike from the record the February 10, 2003, letter from Andrew Goodman to Angela

Roybal and all testimony referencing it, and to dismiss the remaining count of Plaintiff's claim as

a sanction for not disclosing such evidence as required by Federal Rule of Civil Procedure 26.  In

response to the Motion, Plaintiff admits that Defendant's discovery request called for the

production of the letter and that Plaintiff did not provide it during the discovery period, which

ended November 15, 2006, but argues that the Smithsonian in fact received the letter.  To support

her argument, Plaintiff points to a faxed EEO complaint form sent to Plaintiff's attorney by the

Office of Equal Employment and Minority Affairs (OEEMA) on February 25, 2003.  Using well

placed ellipses, Plaintiff distorts Ms. Roybal's statement that had she received the letter, she

would have responded to it (in writing by certified mail), to "prove" that Ms. Roybal must have

1

sent the February 25, 2003 fax to Mr. Goodman in response to his letter.   The record before the

Court, however, demonstrates otherwise.  Angela Roybal, the intended recipient of the letter, has

unequivocally stated that she did not receive Mr. Goodman's letter.  Indeed, far from

demonstrating that Mr. Goodman's letter was actually received by the OEEMA, the fax only

demonstrates that someone from Mr. Goodman's office requested the form because, as of two

weeks after the date on the letter, an informal EEO complaint had not yet been filed by Plaintiff

or her counsel.

A.      **The February 25, 2003 Fax Does Not Prove Receipt of the Goodman Letter.**

        Plaintiff's theory of receipt rests solely upon the EEO form that was faxed from OEEMA

to Plaintiff's counsel on February 25, 2003, and attached to Plaintiff's Opposition as Plaintiff's

Exhibit 1.  The document, however, shows only that the fax came from OEEMA, but does not

establish who sent the document, much less why.  Notably, Exhibit 1 is not the complete fax sent

from OEEMA, as the header on the document clearly shows that it is "page 02" of the

correspondence.  Without the initial page of the fax, it is impossible to know who sent the fax, to

whom it was addressed, whether it was sent in response to a request by Mr. Goodman or anyone

else, and whether that request was made by letter, phone, or e-mail.  Notably, Ms. Fangs'

affidavit, asserting only that Exhibit 1 is "a true and correct copy of the Smithsonian 'OEEMA

complaint form'" and Mr. Goodman's affidavit (submitted with Plaintiff's Opposition to the

Smithsonian's Renewed Motion for Summary Judgment) both are silent on the question of how

Mr. Goodman came to possess the complaint form shown in Exhibit 1.  Consistent with the other

pleadings in this case, Plaintiff has offered elaborate details about irrelevant matters, but has

carefully avoided addressing this important question directly.

Moreover, it is uncontroverted that the fax transmission was not sent by Ms. Roybal, or the other complaint counselor, Shadella Davis. Declaration of Angela Roybal (Roybal Decl.) at ¶ 9; Declaration of Shadella Davis (Davis Decl.) at ¶ 8. Neither EEO counselor received any correspondence or otherwise had any contact with Mr. Goodman until Ms. Davis received the completed form in April. See generally Roybal Decl. And Davis Decl. Indeed, the use of a fax is inconsistent with the individual EEO Counselor's practice of responding to contacts with employees or their attorneys in writing, by return receipt mail, and not by fax. Roybal Decl. at ¶ 5; Davis Decl. at ¶ 6.

The scenario posited and dismissed by Plaintiff – that Plaintiff or Mr. Goodman called OEEMA and requested a copy of the form – certainly is the most plausible explanation. Mr. Goodman may mistakenly have thought that he sent the letter, and when he received no response (because OEEMA never received his letter), he called and requested a form. Or, Plaintiff herself could have called and asked for the form. Both of these possibilities are consistent with Plaintiff's and Mr. Goodman's affidavits.[1]

The problem Plaintiff faces now is that because Plaintiff withheld the letter until November 2007, Defendant has been denied the opportunity to figure out exactly what happened, whether by questioning Mr. Goodman, questioning Plaintiff about the letter at her deposition, or locating current or former employees who may have knowledge about the outgoing fax.

---

[1] There are also plausible scenarios that are inconsistent with the sworn affidavits offered by Plaintiff. Notably, the letter sent to Plaintiff contains a hand written correction of a typo, which suggests that it was sent as a draft to Plaintiff only for review and not sent to OEEMA at all.

B.     **Mr. Goodman's Cancelled Deposition Well-Outside of the Discovery Period Does not Cure Harm to Defendant.**

Plaintiff also asserts that the Smithsonian had the opportunity to depose Mr. Goodman after the parties' filing of summary judgment motions, but purposely declined to do so.  Not only is this argument wrong, it ignores the fact that discovery had long since closed and the parties already engaged in one round of dispositive motion practice in which Plaintiff affirmatively asserted that she initially sought EEO counseling in April, 2003.

Defendant does not contest that Plaintiff's counsel, Mr. Silheet, scheduled a deposition for Mr. Goodman outside of the discovery period, while motions for summary judgment were pending, and without determining defense counsel's availability.  Mr. Silheet then cancelled the deposition when Mr. Goodman failed to appear.

What is contested is how (and whether) Mr. Silheet conveyed this plan to depose Mr. Goodman to Defense counsel.  Plaintiff alleges that Mr. Silheet "spoke directly" to counsel for the Defendant about the deposition.  Nevertheless, this assertion is  not supported by Mr. Silheet's affidavit, and it is contrary to what actually occurred.  Mr. Silheet's affidavit somewhat vaguely states, "I mailed the subpoena to Mr. Valdez on January 15, 2008, and I called Mr. Valdez on or around January 15, 2008, who returned the phone call and I told him of the Goodman subpoena that was in the mail for the deposition on the 23'd of January.  Mr. Valdez took no position and made no statements regarding the subpoena."  Silheet Aff. at ¶ 4.  In fact, Mr. Silheet left a message on defense counsel's voice mail in which he requested that counsel return his call.  Declaration of Darrell Valdez (Valdez Decl.) at ¶ 3.  Before counsel for Defendant could return the call, Mr. Silheet called again, and asked how things were going for

4

counsel. Counsel for Defendant informed Mr. Silheet that he was in the middle of back-to-back depositions in another matter, had a dispositive pleading due in another and was going to be out of town the entire next week of January 21st. Id. Mr. Silheet acknowledged that he knew that defense counsel was busy, and the attorneys agreed to talk about the case, after defense counsel returned to town. Id.

Nevertheless, on January 22, 2007, Mr. Silheet left a voice mail for defense counsel, stating that a deposition for Mr. Goodman was scheduled for the next day, but that Mr. Goodman probably would not show up because he felt that the notice was improper. Id. at ¶ 4. This was the first time that counsel for Defendant was made aware of the deposition. Id. On January 23, 2007, defense counsel received another voice mail from Mr. Silheet, stating that Mr. Goodman, in fact, had not shown up. Id. at ¶ 5. Plaintiff's Notice of Deposition was not received by defense counsel until February 4, 2007. Id. at ¶ 6. Thus, Defendant did not waive its argument that it was unable to obtain timely discovery into the facts behind the letter, nor could have Defendant since Mr. Goodman was uncooperative and unwilling to subject himself to a deposition.

In any event, Plaintiff does not cite any authority for having unilaterally scheduled a deposition in the midst of the Court's schedule for filing dispositive motions. It is contrary to the Court's discovery scheduling order and Rule 16. "A party seeking to conduct discovery after the deadline for discovery expired is obligated to seek a modification of the Scheduling Order by demonstrating 'good cause.'" DAG Enters. v. Exxon Mobil Corp., 226 F.R.D. 95, 105 (D.D.C. 2005), vacated in part, 2005 U.S. Dist LEXIS 3566 (D.D.C 2005). Even if defense counsel had been properly notified of the deposition and had been able to participate, his participation would

have been contrary to the scheduling order and a violation of Rule 16. It is impermissible for counsel, by agreement, to modify a scheduling order. "[A] scheduling order entered by a district judge 'shall not be modified except upon a showing of good cause and by leave of the district judge....'" Olgyay v. Society for Envtl. Graphic Design, 169 F.R.D. 219 (D.D.C. 1996).

Defendant should not be faulted for not participating in a violation of the Court's rules. Plaintiff's belated disclosure of the letter denied Defendant the opportunity to depose Mr. Goodman during the appointed discovery period, in advance of the deadline for filing dispositive motions. Plaintiff's ***unsuccessful*** efforts to schedule a belated deposition cannot cure the problem or transfer blame to Defendant.

**C.    By Any Standard, the Belated Disclosure was not Substantially Justified or Harmless.**

Plaintiff has described a number of factors that certain circuit courts consider in Rule 37(c)(1) cases. Some courts have adopted a factors tests; at least one circuit has rejected them as unnecessary. Harris v. United States, 132 Fed. Appx. 183, 185, 2005 U.S. App. LEXIS 9796 (9th Cir. 2005) (unpublished) ("The text of the rule includes a test: whether either of the two exceptions, "substantial justification" and "harmlessness," excuse compliance. These exceptions are not difficult for courts to apply and review. We therefore decline to adopt a "factors test.") The U.S. Court of Federal Claims has summarized the various iterations of factors tests as follows:

> In determining whether a failure to disclose can be considered substantially justified or harmless, the circuit courts have developed various multi-pronged tests. Although each variation has certain idiosyncracies, they largely seem to address at least some combination of the following factors: (1) surprise to the party against whom the evidence would be offered; (2) the importance of the

information withheld; and (3) the explanation for the failure to disclose the information.

Tritek Techs., Inc. v. United States, 63 Fed. Cl. 740, 750 (Ct. Cl. 2005).

Whether or not the Court adopts a factors test, Plaintiff fails to meet her burden. The Smithsonian has no record of the letter and the EEO counselors, including the addressee, never received it. Thus the Smithsonian was surprised by the delayed production. The letter is important, in that Plaintiff now argues, contrary to her prior assertions, that it is evidence of timely contact. Plaintiff's explanation for not disclosing it amounts to a claim of carelessness, "Oops, I've had it all along and did not realize it was important." As difficult as it is for Defendant to believe that Plaintiff (a Ph.D. Fulbright Scholar) could overlook the significance of a contact between her lawyer and a complaint counselor after years of litigating the very issue, even if one takes Plaintiff at her word, the "innocent" explanation is not a justification at all, and definitely not a substantial one. It is significant that Rule 37(c) does not require a finding of bad faith. "While Rule 37(c)(1) requires the non-disclosure to be 'without substantial justification' and harmful, neither of these requirements suggests that the non-disclosing party must act in bad faith or otherwise culpably." Southern States Rack & Fixture, Inc. v. Sherwin-Williams Co., 318 F.3d 592, 596 (4th Cir. 2003) (noting that even in circuits where bad faith is an explicit factor in the exclusion analysis, it is not a prerequisite for exclusion.")

The fact that the parties are in the summary judgment phase, and not the trial phase, of the case, does not discount the harm to Defendant. "Evidence offered to rebut a summary judgment motion may be excluded under Rule 37(c)(1), . . ., if the non-moving party has failed to provide the opposing party with proper disclosures and supplements as required by Rule 26(a) and (e)."

Contech Stormwater Solutions, Inc. v. Baysaver Techs., Inc., 2008 U.S. Dist. LEXIS 6034 (D.

Md. 2008) (granting summary judgment to the plaintiff on defendants' counterclaims because

defendants failed to satisfy their disclosure and supplementation obligations.).  "The rule's

phraseology applies with equal force to motions for summary judgment." Lohnes v. Level 3

Communs., Inc., 272 F.3d 49, 60 (1st Cir. 2001) (affirming exclusions of expert witness revealed

after summary judgment motion had been filed); see, Trost v. Trek Bicycle Corp., 162 F.3d 1004,

1007-09 (8th Cir. 1998) (applying Rule 37(c)(1) to exclude, during the summary judgment stage,

affidavits by experts who were not adequately disclosed before the close of discovery).

In Primus v. United States, 389 F.3d 231 (1st Cir. 2004), for example, the plaintiff

attempted to add an additional expert witness after the government had filed a summary

judgment motion.  The district court denied the request and excluded the witness.  In affirming

the district court's decision, the court of appeals noted:

> [W]e cannot fault the court for considering the time and expense involved in the
> government's having prepared a dispositive motion. To be sure, evidentiary
> changes on the eve of trial are much more problematic and disruptive of trial
> preparation. . . .But contrary to appellant's contention, what occurred here was not
> simply a matter of "inconvenience" or timing; real resources were expended on
> legal work that was premised on the expert evidence submitted before the
> deadline. That work was relevant not only for the summary judgment motion, but
> for trial preparation as well.

Id. at 236

It is Plaintiff's burden to show substantial justification and harmlessness.  Elion v.

Jackson, 05cv0992 (PLF), 2006 U.S. Dist. LEXIS 63854 at 2-4, 2006 WL 2583694 at 1 (D.D.C.

September 8, 2006).  She has not met it.  Plaintiff has not established that the Smithsonian

received Goodman's letter, but has raised questions about the circumstances by which Mr.

Goodman requested and received the complaint form– again, prejudicing Defendant and denying Defendant the opportunity to investigate at or near the time of the EEO complaint and placing Defendant in the position of having to disprove new theories of the case after having spent considerable resources preparing two motions for summary judgment. Litigation surprises of this sort are exactly what Rule 37 is intended to prevent. Lohnes, 272 F.3d at 60 (Unveiling an expert witness after summary judgement has been filed is "exactly the type of unfair tactical advantage that the disclosure rules were designed to eradicate.")

**D.** **Plaintiff's Prior Sworn Statement Must Be Given Preclusive Effect.**

Plaintiff further attempts to create the mis-impression that the Defendant mis-states the case law regarding the preclusive effect of her prior sworn statements. However, it is hard for Defendant to mis-stated the law in this area where the Defendant's entire argument consisted of quotations from the controlling cases.

In Pyramid Securities Ltd. v. IB Resolution, Inc., 924 F.2d 1114 (D.C. Cir. 1991), the Circuit Court was faced with facts similar to those before this Court – whether the complainant's own affidavit, which demonstrated that the claim was untimely, could be contradicted by a subsequent affidavit and other evidence that purportedly undermined the prior affidavit. Id. at 1122. Citing a long-history of case law, the Court recognized that "a party may not create a material issue of fact simply by contradicting its prior sworn testimony." Id. at 1123. The Court went further and held that "[w]here a party emphatically and wittingly swears to a fact, it bears a heavy burden - even in the summary judgment context - when it seeks to jettison its sworn statement." Id.

In its discussion of the case law, the Circuit Court in <u>Pyramid Securities</u> addressed various circumstances that may qualify as meeting that burden. For example, the Court opined that where the initial statement took the form of a deposition, the deponent "may have been confused about what was being asked or have lacked immediate access to material documents." <u>Id</u>. However, the Court specifically found that where the initial statement took the form of an affidavit (as in the present matter) such excuses are inapplicable, "[a]s affidavits are prepared at the affiant's own initiative...." <u>Id</u>. Moreover, where the alleged evidence repudiating the declaration was within the declarant's own possession "when he signed his affidavit," the declarant "obviously knew about it," and, therefore, cannot not qualify as "new evidence" sufficient to meet the party's burden. <u>Id</u>. Finally, the Court held that where the evidence does not directly support the new allegation, but merely creates the probable existence of an alternative explanation, it does not rise to the level of supporting evidence. <u>Id</u>. at 1124. Because "cases resting summary judgment on sworn but repudiated party assertions reflect both a judicial insistence that parties proceed with real care in their supporting affidavits or testimony and a belief that parties' opportunism should not readily imperil summary judgment," a party must come forward with more than "probabilities" in order to overcome its prior sworn affidavit. <u>Id</u>.

Here, after extensive discovery, and with the participation of two attorneys, Plaintiff prepared multiple affidavits, and multiple written pleadings in which she admitted that she did not seek EEO counseling until April, 2003. Plaintiff admits that the alleged letter from Mr. Goodman was in her possession at the very moment those documents were drafted, finalized and signed. Accordingly, under the case law in this Circuit, these facts alone bar Plaintiff from contradicting her own sworn statements. Nevertheless, her claim is further undermined by the

10

fact that the letter does not establish, as a matter of fact, that her claim was actually received within the time limits. Rather, Plaintiff's argument that the letter and the faxed form creates the probability that it was timely received cannot, under the case law, carry her burden, and the Court must strike the letter.

E. **Plaintiff's Argument That Defendant Engaged in a "Pattern and Practice" of Concealment Are Unsupported and Irrelevant to the Matter Before the Court, and Have No Place in this Proceeding.**

Finally, Plaintiff's attempt to slander the Defendant and influence the Court's perception of the Smithsonian by citing to unsupported and irrelevant accusations is improper and shameful. See Plaintiff's Opposition at 17-21. Needless to say, each of the allegations made by the Plaintiff are unsupported, except by her own slanted and conclusory allegations. "[C]haracterizations, no matter how garish or heartfelt, are no substitute for the presentation of evidence that tends to prove legally cognizable causes of action." Tate v. Rosenfeld, 02cv0283 (HHK), Memorandum Opinion at 3 n. 1 (February 4, 2005), aff'd 05-5086 (November 21, 2005).[2]

---

[2]     Among the unsupported and irrelevant claim that the Smithsonian EEO Office committed wrongdoing, Plaintiff alleges that OEEMA deliberately withheld the Report of Investigation from Plaintiff's counsel and used "the in-house mailing system" to misdirect the ROI to Boyers, Pennsylvania. (The ROI was prepared in Plaintiff's first administrative complaint, Smithsonian number 03-20, and related to whether Plaintiff had constructive notice of the deadlines.) Plaintiff's counsel knows well that the Smithsonian correctly addressed the ROI and mailed it using ***certified, return receipt U.S. Mail*** to Ms. Fang and that the ***U.S. Postal Service tracking*** system showed delivery to Boyers, Pennsylvania. See Exh. 3 (Karen Margensey fax to Vickie Fang). To blame this mis-delivery on the Smithsonian's "EEO in-house mailing system" (Plaintiff's Opposition at page 18) is meritless. Moreover, Plaintiff neglects to inform the Court that Ms. Margensey in OEEMA confirmed that Ms. Fang in fact had a copy of the ROI – the hard copy that Ms. Margensey successfully sent to Plaintiff's home using the U.S. Mail. Plaintiff also neglects to mention that on July 23, 2004, OEEMA mailed Ms. Fang a CD Rom containing the complaint file, the ROI, and other documents. Exh. 4 (July 23, 2004 letter from Era Marshall to Robert Barnhart).
    Plaintiff also alleges that OEEMA counselor Shadella Davis perjured herself in EEO

(continued...)

Nevertheless, the examples cited by Plaintiff have nothing to do with the present matter before this Court – whether Plaintiff failed to produce the document in discovery. Plaintiff admits this fact. Plaintiff further admits that she repeatedly made assertions of facts contrary to those alleged by the document. And finally, it is undisputed that discovery has long-since closed, and the matter has progressed beyond the dispositive motions stage. Accordingly, the Court should strike the document and dismiss Plaintiff's remaining claim as a discovery sanction pursuant to Fed. R. Civ. P. 37(c).

---

[2](...continued)
proceedings. Though it is not clear in Plaintiff's brief, this alleged "sham affidavit" was submitted in a proceeding related to Plaintiff's second administrative complaint (Smithsonian case number 05-04), which alleged retaliation, and which was filed in ***December 2004.*** In other words, the issues regarding contacts between Ms. Davis, Plaintiff, and Ms. Fang, in that matter have nothing to do with the claim remaining before this Court. In that case, Ms. Davis attempted to Mail Ms. Fang a "notice of final interview " using certified, return receipt U.S. Mail, but it was returned by the U.S. Postal service and stamped "refused." The issue in that case was whether Ms. Davis should have sent a copy of the notice to Plaintiff in addition to Ms. Fang. Ms. Davis testified that she had been instructed by Plaintiff to send correspondence to her attorney only, and the Smithsonian did submit to the EEOC a letter from Plaintiff to Ms. Davis that is consistent with Ms. Davis's statement. EEO Affidavit of Shadella Davis (Davis EEO Aff.) at ¶ 3-4 and attachment. Plaintiff submitted an affidavit stating that she did not give Ms. Davis that instruction. So, the only "evidence" of Ms. Davis's perjury is Plaintiff's self-serving statement to the contrary. Again, rather than clearly explain the facts related to the issue at hand -- Mr. Goodman's letter and the absence of any proof that OEEMA received it – Plaintiff has muddied the waters by casting spurious accusations that have no bearing on Mr. Goodman's letter.

Plaintiff further accuses OEEMA of deliberately losing Plaintiff's records or deliberately distorting them. The gist of this allegation is that the Smithsonian hid from the EEOC an October 13, 2003, letter from Ms. Fang to OEEMA. Plaintiff's allegation that the letter is missing from the EEOC file represents a misunderstanding of the EEOC record. The October 13, 2003, letter is contained in a fifty- four-page Complaint File for case number 03-20, specifically pages 13-20. OEEMA sent the complaint file to the EEOC's Office of Federal Operations on July 23, 2004, along with the Report of Investigation, which focused on the issue whether Plaintiff had actual or constructive knowledge of the time limits for contacting a counselor. Exh. 4. OEEMA also mailed Plaintiff and Ms. Fang the CD Rom and transmittal letter. Id. The Smithsonian OEEMA did not fail to provide the letter to the EEOC. The EEOC had the letter in the record provided by the Smithsonian (and received it again in the briefs submitted by Plaintiff), but did not find Plaintiff's continuing violation argument convincing.

Respectfully submitted,


  /s/ Jeffrey A. Taylor
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


  /s/ Rudolph Contreras
RUDOLPH  CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney


  /s/ Darrell C. Valdez
DARRELL C. VALDEZ, D.C. BAR # 420232
Assistant United States Attorney
Judiciary Center Building
555 4th St., N.W., Civil Division
Washington, D.C.  20530
(202) 307-2843

13