UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BETH M. NORDEN, )<br>)<br>Plaintiff, )<br>v. )<br>)<br>CRISTIAN SAMPER )<br>Acting Secretary, Smithsonian Institution, )<br>)<br>Defendant. )<br>) | Civil Action No. 05-1232 (RMC) |

## MEMORANDUM OF LAW

Pursuant to the Order of the Court, Defendant, through under-signed counsel, hereby submits this Memorandum of Law addressing whether Defendant may offset any back pay or front pay awarded in this case with worker's compensation benefits already paid to Plaintiff. As discussed below, the law is well-settled that the collateral source doctrine does not apply when the party making the worker's compensation payments is the actual defendant, and not a "collateral source." In addition, disability benefits (worker's compensation or disability retirement) and retirement under FERS are inapposite, and Plaintiff cannot receive both types of retirement benefits concurrently. Thus, any possible award of back pay and front pay (including retirement) must be offset by the worker's compensation or other disability benefits received by Plaintiff.

## FACTUAL BACKGROUND

In this matter, Plaintiff was employed as a GS-11 Museum Specialist with the Department of Entomology of the Smithsonian Institution's National Museum of Natural History. See Opposition to Plaintiff's Motion for Summary Judgment and Defendant's Cross-

Motion for Summary Judgment (Dkt. No. 33) at Exhibit 1 (SF-50 effective 10/12/1997). In approximately September 2000, Plaintiff contracted Dengue Hemorrhagic Fever ("DHF") on a work-related trip to Brazil. Deposition of Beth Norden ("Plaintiff's Depo.") at 68-69. Due to Plaintiff's DHF, Plaintiff was forced to take a leave of absence from work, and received worker's compensation payments funded by the Smithsonian. Plaintiff's Depo. 72-72. After a series of failed attempts to return to work, Plaintiff's light duty status was terminated and she returned to a full time leave without pay status on November 30, 2002, after which she continued to receive workers' compensation payments. Dkt. No. 33 at Exhibit 4 (SF-50 effective 11/30/02). Plaintiff's employment was eventually terminated from the Smithsonian for her inability to perform the essential duties of her position. Dkt. No. 33 at Exhibit 25 (October 8, 2004 Letter from W. Mathis to B. Norden). Plaintiff remains on the rolls of the Department of Labor workers' compensation program and receives monthly payments. See Declaration of Farhana Hossain ("Hossain Decl.") attached hereto.

In her Amended Complaint, Plaintiff alleges that the Defendant discriminated against her and terminated her employment in violation of the Rehabilitation Act and further retaliated against her for engaging in EEO protected activity. See generally Amended Complaint (Dkt. No. 2). As part of her prayer for relief, Plaintiff seeks reinstatement to her position with the Smithsonian Institution, and recovery for back-pay lost from the time her employment with the Smithsonian Institution was terminated, and front-pay, if any. Id. at ¶¶ 165-166.

## DISCUSSION

As part of her prayer for relief, Plaintiff seeks equitable and monetary relief, including reinstatement, back pay and front pay. However, Plaintiff currently receives, and has received

since the date of her employment termination, worker's compensation benefits on the basis of her disability from the effects of DHF.  Under the worker's compensation, Plaintiff receives three-fourths of her previous salary at the Smithsonian Institution, with annual cost of living increases.  Hossian Decl. at ¶ 5, and Attachment 1.  These payments are not subject to any Federal or state income taxes.  See 26 U.S.C. § 104(a)(1).

A.    **The Collateral Source Doctrine Does Not Apply In The Present Matter to Bar an Offset of Any Amounts Awarded For Lost Past or Future Wages.**

    1.    **Worker's Compensation and the Collateral Source Doctrine.**

The "collateral source doctrine" bars reduction of a complainant's back-pay and front-pay award by benefits received from third parties.  The rationale behind the collateral source rule is that between the employer, whose conduct may have caused the injury, and the employee, the burden should be on the employer and the employer is not entitled to a windfall (reduction in liability) simply because plaintiff has received compensation from a "collateral source."  See, e.g., FDIC v. United Pac. Ins. Co., 20 F.3d 1070, 1083 (10th Cir. 1994); Promisel v. First Am. Artificial Flowers, Inc., 943 F.2d 251, 258 (2d Cir. 1991), cert. denied, 502 U.S. 1060 (1992); Amwest Sav. Ass'n v. Statewide Capital, 144 F.3d 885, 889 (5th Cir. 1998) ("[P]laintiff should not be forced to transfer to a wrongdoer a benefit that the plaintiff has received either as a gift or as a result of foresight and planning, as by purchasing insurance or bargaining for employment benefits.").

When the employer itself is the payer of the benefits, however, the complainant is not receiving any benefits from third parties or a "collateral source."  See McLean v. Runyon, 222 F.3d 1150, 1155-56 (9th Cir. 2000) (declining to apply collateral source rule where federal

defendant directly paid worker's compensation benefits to plaintiff; defendant entitled to offset damage award based on payments already made to plaintiff under Federal Employees Compensation Act); EEOC v. Yellow Freight Sys., Inc., 2001 U.S. Dist. LEXIS 20240, *4 (S.D.N.Y. 2001) (rationale behind the collateral source rule is not found when the employer himself is the source of the benefit to plaintiff); Promisel, 943 F.2d at 258 (noting that pension benefits paid by the employer himself should be offset from a back pay award); Brooks v. Fonda-Fultonville Cent. Sch. Dist., 938 F. Supp. 1094, 1109 (N.D.N.Y. 1996) (noting that the court may deduct unemployment contributions from award of back pay); EEOC v. Enterprise Ass'n Steamfitters Local No. 638, 542 F.2d 579, 591 (2d Cir. 1976), cert. denied, 430 U.S. 911 (1977) (holding that it is not an abuse of discretion to deduct sums received from collateral sources); Williams v. Secretary of the Navy, 853 F. Supp. 66, 72 (E.D.N.Y. 1994) (collateral source rule did not apply because federal employees' unemployment compensation does not come from a collateral source - it is the federal employer who provides the compensation); Stratton v. Dep't for the Aging, 922 F. Supp. 857, 866 (S.D.N.Y. 1996) (noting that the collateral source rule does not apply because the government agency defendant is the source of unemployment compensation payments); accord Restatement Second of Torts, § 920A(1) ("A payment made by a tortfeasor or by a person acting for him to a person whom he has injured is credited against his tort liability."). Thus, the employer is the party making the actual payments, and can, accordingly, offset any damages awarded to complainant while still making the complainant whole because the damages, coupled with the worker's compensation benefits, give the complainant full recovery for lost wages.

2. **The Limits Upon the Collateral Source Doctrine Apply to Offset Any Front-Pay Award.**

The rule allowing offset applies equally to "front pay." In Giles v. General Electric Company, 245 F.3d 474 (5th Cir. 2001), the Fifth Circuit Court affirmed the district court's decision to offset the front pay award with disability pension payments received by a complainant. 245 F.3d at 494. In noting that the collateral source rule does not bar an offset, the Court stated that "the benefits used to offset the front pay were not additional, bargained-for compensation but were instead compensation for the injury out of which this case arises." Id. at 495. "Properly interpreted . . . the collateral source rule . . . prevents tortfeasors from paying twice for the same injury – a result that would achieve both over-deterrence and overcompensation." Davis v. Odeco, Inc., 18 F.3d 1237, 1244 n.21 (5th Cir. 1994).

Similarly, in Pollard v. E.I. DuPont de Nemours, Inc., 338 F. Supp. 2d 865 (W.D. Tenn. 2003), a District Court reduced a complainant's front pay award by the amount received in supplement payments and retirement benefits because the employer funded the benefits entirely. 338 F. Supp. 2d at 883. The court noted that "failure to offset [the front pay award with the benefits] would provide Plaintiff duplicate recovery." Id. In short, failure to offset any front pay award would present a windfall to a complainant where the employer has paid, and continues to pay, the complainant's worker's compensation benefits. Otherwise, a complaining party would recover from the employer twice - once from the worker's compensation payments and secondly from the award of front pay.

3. **Defendant May Offset Any Back-Pay or Front-Pay Award to Plaintiff by the Amount Paid to Plaintiff in Worker's Compensation Benefits.**

Here, worker's compensation payments received by Plaintiff should be used to offset any

potential award of back pay and front pay by the Court.  Because she has received extensive workers compensation benefits following her termination, Plaintiff has enjoyed the same standard of living she received while employed with the Smithsonian Institution.  She has received three-fourths of her previous salary at the Smithsonian (with periodic increases), and the amounts are not subject to any Federal or state income taxes.

Federal Employment Compensation Act (FECA) benefits are paid from the Employee's Compensation Fund, which is reimbursed entirely by the appropriate federal agency or instrumentality for each payment made to an employee for injury.  5 U.S.C. § 8147.  Through April 2008, Plaintiff has received $236,060.23 in worker's compensation benefits for Plaintiff.  See Hossain Decl. at ¶ 5.  Although the checks are issued by the Office of Workers Compensation Program ("OWCP") of the Department of Labor, worker's compensation benefits are paid in full by the Smithsonian Institution.  Id. at ¶¶ 2-3.  Because the amounts paid by the Smithsonian are direct, and are not obtained as a result of any insurance or other collateral source, the collateral source doctrine does not bar an offset of back-pay or front-pay that the Court may award to Plaintiff.

**B.      Plaintiff Cannot Receive Both FECA Payments and FERS Retirement Benefits.**

In her complaint, Plaintiff further requests that the Court further order that she be reinstated with the Smithsonian, and "other relief as allowed by law and that may be just and equitable."  To the extent that Plaintiff seeks an award of retirement benefits at the level she would have received absent any alleged discriminatory or retaliatory conduct, her request for such future relief is limited to only that which would make her whole, but not more than whole.  Nelson v. J.C. Penney Co., 858 F. Supp 914, 930 (N.D. Iowa 1994) (back and front pay damages

may be offset by disability benefits received by plaintiff after termination to make plaintiff "whole," but not "more than whole"), *reversed on other grounds*, 70 F.3d 962 (8th Cir. 1995). Federal employees are not entitled to receive retirement benefits from the Federal Employees Retirement System (FERS) (whether the basic payment or disability payment) while receiving FECA compensation benefits. They must elect between the two systems. 5 C.F.R. § 844.103. Thus, if Plaintiff remains on workers compensation, she will not be entitled to FERS annuity payments, and any award of a future FERS retirement benefit by the Court must be offset for any FECA compensation that she may receive.

Under the FERS basic retirement plan, Federal employees are entitled to receive one percent of their average high-three salaries for each year of service, if they retire with less than 20 years of service. 5 C.F.R. § 842.403. Employees at 62 years of age or older, with over 20 years of service, receive 1.1% for each year of service. Id.

Here, Plaintiff is eligible to receive a FERS basic annuity in 2014 once she reaches the age of 62. That annuity would be based on the almost 16 years of service (up to the time her employment was terminated) and the high-three salary she had at the time of her 2004 termination. Assuming Plaintiff is reinstated and works until 2014 (the year in which she will reach 62 and could retire without incurring a penalty), she will have 25 years of service and receive 27.5% of her high three average. Using the wages predicted by Plaintiff's expert, her annuity payment would be approximately $1,739 dollars per month in retirement benefits once she reaches age 62. See Hossain Decl. at ¶ 6.

If reinstated, Plaintiff also would become eligible to apply for FERS disability retirement. If accepted by the Office of Personnel Management into FERS disability retirement, Plaintiff, in

her first year on disability retirement, would receive 60% of her high-three average salary (less 100% of any disability payment she might receive from the Social Security Administration) and, after her first year, would receive 40 % of her high-three average pay (less 60% of any Social Security disability benefit). 5 C.F.R. 844.302(b) and (c). In contrast, under the FERS basic retirement annuity, Plaintiff would have to reach 36 years of service (working until the age of 73) to reach the 40% mark.

Under either of the FERS retirement options (basic or disability), Plaintiff would receive far less than the 75% of her 2004 salary that she now receives from FECA ($3733.43 per month) and is eligible to receive indefinitely.[1]  Defendant, therefore, is entitled to offset any future retirement award with Plaintiff's workers compensation payments.

## **CONCLUSION**

Allowing the Plaintiff to receive damages without offset of the worker's compensation or other disability payments received is contrary to the widely accepted rule that is intended to prevent a double recovery for back pay and front pay.  Additionally, because Plaintiff cannot under the law receive both FECA payments or FERS disability retirement in addition to her FERS basic annuity, the Court must also offset any retirement by an amount received pursuant to FECA or other FERS disability compensation.

---

[1] The Department of Labor can terminate workers compensation benefits if the weight of the evidence demonstrates:(a) The disability for which compensation was paid has ceased;
(b) The disabling condition is no longer causally related to the employment;
(c) The employee is only partially disabled; or (d) The employee has returned to work.  20 C.F.R. §10.503.

Respectfully submitted,


  /s/ Jeffrey A. Taylor
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


  /s/ Rudolph Contreras
RUDOLPH  CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney


  /s/ Darrell C. Valdez
DARRELL C. VALDEZ, D.C. BAR # 420232
Assistant United States Attorney
Judiciary Center Building
555 4th St., N.W., Civil Division
Washington, D.C.  20530
(202) 307-2843