UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BETH M. NORDEN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 05-1232 (RMC) |
| ) | |
| CHRISTIAN SAMPER, ) | |
| Acting Secretary, Smithsonian ) | |
| Institution, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

Beth M. Norden sues the Smithsonian Institution for alleged discrimination under the Rehabilitation Act of 1973, 29 U.S.C. §§ 701 *et seq*. The Court has already found that the Smithsonian violated the Rehabilitation Act when it failed and refused to return Dr. Norden to work in 2004 and discharged her. *See* Dkt. ## 38 & 39 (Aug. 3, 2007 Mem. Op. & Order). Pending now is the question of whether the Smithsonian also violated Dr. Norden's rights when it put her on unpaid leave in November 2002. *See* Def.'s Renewed Mot. for Summ. J. [Dkt. # 41] and Pl.'s Cross-Mot. for Summ. J. [Dkt. # 42]. Also before the Court is Defendant's Motion to Strike and for Sanctions [Dkt. # 57].

**I. BACKGROUND**

The Court will recount only those facts necessary to resolve the pending motions and refers the reader to its earlier decision for a more complete recounting.

Dr. Norden holds a Ph.D. in entomology.[1] She worked at the Smithsonian's

---

[1] The facts are not in dispute unless otherwise indicated.

Department of Entomology at the Museum of Natural History for approximately 15 years. In the summer of 2000, Dr. Norden contracted Dengue Hemorrhagic Fever ("DHF") while in Brazil in support of a Smithsonian research project. She attempted to return to work in 2002 but was unsuccessful and the Smithsonian put her on unpaid leave in November 2002. Thereafter, the Smithsonian failed and refused to authorize a detail for Dr. Norden to the Department of Agriculture, which had received funding for a part-time job that she might have performed. Dr. Norden alleges that the Smithsonian violated the Rehabilitation Act by its actions.

Federal employees must contact an equal employment opportunity ("EEO") counselor within 45 days of an allegedly discriminating event. 29 C.F.R. § 1614.105(a)(1)-(2). There is no doubt that, at the latest, Dr. Norden filed a complaint with the Smithsonian's EEO office in April 2003. The parties dispute whether the Court should receive into evidence a letter from Bruce Goodman, Dr. Norden's counsel in 2002-2003, to the Smithsonian's EEO office dated February 10, 2003. The parties also dispute whether Dr. Norden had sufficient warning of the 45-day deadline through EEO posters at her workplace. The issues will be addressed in reverse order.

## II. LEGAL STANDARDS

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment must be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *see also Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995). Moreover, summary judgment is properly granted against a party who "after adequate time for discovery and upon motion . . . fails to make a showing sufficient to establish the existence of

an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson*, 477 U.S. at 255. A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position. *Id*. at 252. In addition, the nonmoving party may not rely solely on allegations or conclusory statements. *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999). Rather, the nonmoving party must present specific facts that would enable a reasonable jury to find in its favor. *Id*. at 675. If the evidence "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

### III. ANALYSIS

#### A.    EEO Posters

A federal claimant is entitled to equitable tolling of the 45-day deadline to contact an EEO counselor if she can make a showing that she was unaware of the time limit. *Harris v. Gonzales*, 488 F.3d 442 (D.C. Cir. 2007). Lack of actual notice of the 45-day time limit is not itself sufficient to warrant equitable tolling. Rather, the D.C. Circuit adopted the Seventh Circuit's two-step constructive notice inquiry, which considers "(1) whether 'notification of the time requirements was provided,' and (2) whether the notification was 'reasonably geared to inform the complainant of the time limits.'" *Id*. at 445 (quoting *Johnson v. Runyon*, 47 F.3d 911, 918 (7th Cir. 1995)). As the Court of Appeals explained, "it cannot be that an employee claiming to have been unaware of the 45-day time limit would be automatically entitled to an extension even though the agency,

through posters, employee handbooks, orientation sessions, etc., made conscientious efforts to advise its employees of the time limit." *Id*. The relevant EEO posters were not in the record when the parties last filed dispositive motions, which prevented the Court from deciding whether the time limit should be tolled for Dr. Norden. That gap has now been filled and the posters are in the record.

The EEO posters in use by the Smithsonian from spring 2001 until 2004 were approximately 20 by 24 inches, and included the following language explaining the time limits:

> As an applicant or employee of the Smithsonian Institution, you have the right to file a complaint if you believe you have been discriminated against because of race, color, sex, religion, national origin, age or disability. You can also file a complaint if you believe you have been retaliated against for previously participating in equal employment opportunity activity.
>
> An employee or applicant for employment must contact the Office of Equal Employment and Minority Affairs within **forty-five (45) calendar days** of the alleged discrimination or the effective date of a personnel action.

*See* Def.'s Supp. Statement of Material Facts Not in Genuine Dispute ("Def.'s Supp. Facts"), Decl. of Carol Gover (2d Gover Decl.") ¶¶ 3-4 (and Attachments) (boldface in original). Dr. Norden worked at the Smithsonian's Natural History Museum, where the posters were placed in several locations: in the hallway outside the Departmental Management Support Specialist's Office on the sixth floor; the hallway outside the Museum Director's Office on the third floor; near the third floor elevators close to the staff cafeteria; and next to the stairway entrance leading to the Kirby Room, which is used as a staff meeting room for events, lectures, and meetings. Def.'s Supp. Facts ¶ 4. EEO posters were also located on the Entomology Department's bulletin board on the sixth floor and on all departmental bulletin boards. *Id*. ¶ 5. From March 25, 2002, to at least May 2004, the intranet

webpage for the EEO Office also contained the following language:

> When can I initiate an EEO discrimination complaint?
> You must contact an EEO Counselor or [the EEO Office] within forty-five (45) calendar days of the matter alleged to be discrimination or, in the case of a personnel action, within 45 days of the effective date of the action.

*Id*. ¶¶ 7-8.[2]  Posters and the webpage contained the phone number and address for the EEO Office.

Dr. Norden contends that she did not have actual notice of the time limits and was not aware of the 45-day requirement until it became a defense raised by the Smithsonian. She explains that the Museum is a massive series of buildings. The Entomology Department was moved into the new East Court building sometime in 2002, a building that has its own elevators. During the 2002 period, Dr. Norden worked only six months and only part-time and remained, almost without exception, in her office on the fifth floor of the East Court building during her working day. Her route in and out of the building did not bring her past any of the EEO posters. Dr. Norden brought her lunch and did not use the cafeteria, so she had no occasion to see any EEO posters that might have been posted in that location. She never went to the Kirby room on the third floor at any time in 2002 and very rarely went before that date; in any event, she never walked by the EEO posters. Finally, she went to the West Wing no more than four times during the 2002 period. As to the PRISM intranet system, Dr. Norden says that she has never used the PRISM system and was never aware that EEO information was on the PRISM system. She used "groupwise" in 2002 to access e-mails at the Smithsonian.

There is no reason to question Dr. Norden's statements that her routes through the

---

[2] Dr. Norden does not contest these facts but states here that she did not have access to the webpage in 2002-2003.

Museum in 2002 did not put her in contact with any of the EEO posters. That, however, is not the entire issue. "[T]estimony to the effect that [a plaintiff] 'did not see' the EEO notices is not by itself sufficient to establish that the notices were not, in fact, posted." *Clark v. Runyon*, 116 F.3d 275, 277 n.3 (7th Cir. 1997). The test articulated by the Seventh Circuit and adopted by our Circuit in *Harris v. Gonzalez* is more objective than the knowledge, or lack thereof, of an individual employee; *i.e.*, the questions are "(1) whether 'notification of the time requirements was provided,' and (2) whether the notification was 'reasonably geared to inform the complainant of the time limits.'" *Harris v. Gonzalez*, 488 F.3d at 445.

Using an objective test, the Court finds that the Smithsonian has demonstrated that it provided notice of the EEO time limitations to its employees at the Museum of Natural History. The EEO posters were located on the departmental bulletin boards, near the staff cafeteria, near a staff meeting room, near the EEO Office, and near the Director's office. Working part-time and struggling with her recovery from DHF, Dr. Norden herself might not have visited any of these locations during 2002, when she tried to return to work for the first time since 2000. But these locations speak to the fact that the Smithsonian did provide notification of the EEO time limits to its employees. The Court concludes that these posters were also reasonably geared to inform Dr. Norden and other employees of the time limits. Their language is clear and the specific information about the 45-day limit is in boldface.[3]

The Court finds that the Smithsonian has demonstrated that it provided notice that was reasonably geared to informing employees of the time limitations to filing an EEO complaint.

---

[3] The Court does not rely on the information contained in the PRISM system because Dr. Norden says she did not have it loaded on her computer, was never trained in PRISM, and did not know that the EEO Office webpage could be accessed in that manner.

Therefore, Dr. Norden is not entitled to equitable tolling of those time limits and had to file her complaint within 45 days of the allegedly discriminating occurrences.

B.    **Counsel's Letter to Smithsonian EEO Office**

Throughout this litigation, by affidavit and argument, Dr. Norden has stated that she first contacted the EEO Office in April 2003,[4] which is obviously more than 45 days from the decision to terminate her part-time position in November 2002, and also more than 45 days from the time that Dr. Norden learned that the Agriculture Department had gotten funding for a part-time job but that the Smithsonian was unwilling to send her there. Whether or not Dr. Norden's EEO complaint was timely as to her charges that the Smithsonian unlawfully failed to accommodate her disability in 2002 is a subject of many briefs and arguments both in the administrative forum and before this Court. Now, however, in opposition to the Smithsonian's motion for summary judgment, Dr. Norden presents a February 10, 2003, letter from her prior counsel, Bruce E. Goodman, to the Smithsonian EEO Office. Mr. Goodman wrote:

> Please be advised that I have been retained by Dr. Beth Norden to represent her with respect to charges against the Smithsonian Institution for violations of the Americans With Disabilities Act (ADA). . . .
>
> In August 2000, Dr. Norden contracted [dengue] hemorrhagic fever during the course of performing fieldwork for the Smithsonian Institution. . . . The Department has failed and refused to accommodate Dr. Norden's disability and terminated her part-time work schedule effective November 30, 2002.

---

[4] *See* Pl.'s Mot. for Summ. J. [Dkt. # 17] at 17 ("Dr. Norden filed her first informal complaint in April of 2003"); *id*., Oct. 3, 2006 Aff. of Beth Norden ¶ 34 ("In April of 2003, I filed an informal complaint for failure to accommodate and retaliation"); Pl.'s Statement of Material Facts Not at Issue [Dkt. # 18] ¶ 59 ("In April of 2003, Dr. Norden filed an informal complaint for failure to accommodate and retaliation").

> In light of the foregoing, please consider this letter to be an informal or a formal complaint under the ADA.

Pl.'s Opp'n [Dkt. # 42], Ex. 1.  This letter was never produced by either party in discovery, although their respective document requests to each other would have encompassed it.  Dr. Norden explains that she did not realize the significance of the letter and did not remember it until, in November 2007, she checked her file for correspondence with Mr. Goodman to ascertain his fees, discovered the letter, and sent it to her present counsel.  Mr. Goodman presents an affidavit that he, in fact, mailed the letter to the Smithsonian.  The Smithsonian insists that it never received the letter, has no copy of it, it is not in its files, and personnel in the EEO Office have no recollection of it.  The Smithsonian cries foul and asks the Court to strike the letter from the record and to sanction Dr. Norden for presenting it so late in the game.  *See* Def.'s Mot. to Strike and for Sanctions [Dkt. # 57].

The Federal Rules of Civil Procedure require parties to produce relevant documents and other materials in response to another party's discovery requests.  *See* Fed. R. Civ. P. 26(b), 33(b), and 34(b).  A party who has made an initial disclosure must supplement it if the party learns or discovers that the information previously disclosed is incomplete.  Fed. R. Civ. P. 26(e). Sanctions are available for failure to abide by these Rules.  Federal Rule of Civil Procedure 37(c) provides:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

Fed. R. Civ. P. 37(c)(1).  "Rule 37(c)(1) is a self-executing sanction, and the motive or reason for the failure is irrelevant.  It therefore is unnecessary to decide whether the [Plaintiff] acted in bad faith

. . . or was simply sloppy in its search for relevant documents and in assisting its litigation counsel in responding to interrogatories." *Elion v. Jackson*, No. 05-0992, 2006 U.S. Dist. LEXIS 63854, at *2-3 (D.D.C. Sept. 8, 2006). "The overwhelming weight of authority is that preclusion is required and mandatory absent some unusual or extenuating circumstances – that is, a 'substantial justification.'" *Id*. at 3 (citing *Klonoski v. Mahlab*, 156 F.3d 255, 269, 271 (1st Cir. 1998)). As the one who proposes that the letter be admitted into evidence, Dr. Norden bears the burden of showing substantial justification and lack of harm to the Smithsonian. *Coles v. Perry*, 217 F.R.D. 1, 5 (D.D.C. 2003).

Dr. Norden states that she "was mailed a copy of the February 10, 2003 letter by my former attorney Bruce Goodman in February 2003. I was not aware that the February 10, 2003 letter could be viewed as first contact with an EEO counselor." Nov. 19, 2007 Affidavit of Dr. Beth Norden ("Norden Aff.") ¶ 1. However, Dr. Norden and the Smithsonian have been litigating the timeliness of her contacts with the EEO Office for years and Dr. Norden has earlier listed her communications with various other Smithsonian employees, in the aftermath of her return to unpaid leave in November 2002 (including human resource representatives and the ombudsman, but no EEO counselor), to persuade the Court that her efforts were sufficient. The Court makes no findings here but it seems likely that Dr. Norden filed the letter, changed counsel, and completely forgot about it until she was rummaging in the old file to dig out her attorney's fees paid to Mr. Goodman. Sloppy responses to the opposing party's discovery do not constitute substantial justification. *See Elion*, 2006 U.S. Dist. LEXIS 63854, at *2-4.

The Smithsonian also argues that the late introduction of the letter is harmful. Notably, the February 10, 2003 letter was not sent within 45 days of November 30, 2002, the date

on which the Smithsonian terminated Dr. Norden's light duty assignment.  Dr. Norden argues that the letter is a timely contact with the EEO Office and should be construed as relating to December 20, 2003, the date on which she learned that the Department of Agriculture had received partial funding for a support position.  The Smithsonian argues:

> Thus, by introducing the letter, Plaintiff has attempted to make an issue both of its existence (whether it was sent and received) and its content (whether it references or was intended to reference activity/inactivity post-dating the termination).  Because [Dr. Norden] withheld the letter from [the Smithsonian], [the Smithsonian] was unable to explore either issue during the discovery process.  Thus, the harm to [the Smithsonian] from [Dr. Norden's] omission is not *de minimis* or harmless.

Def.'s Reply in Supp. of Renewed Mot. for Summ. J. [Dkt. # 54] ("Def.'s Reply) at 7.

The Court agrees that allowing the letter to be part of the record this late in the case would prejudice the Smithsonian.  *See Minebea Co. v. Papst*, 231 F.R.D. 3, 6 (D.D.C. 2005) (holding that Plaintiff's failure to disclose supplemental expert report was not harmless where supplemental report substantially refined the original report, contained new or different material, and provided additional information to support specific elements of plaintiff's case); *cf.*, *United States v. Philip Morris USA, Inc.*, 219 F.R.D. 198, 202-03 (D.D.C. 2004) (declining to exclude evidence belatedly produced by the plaintiff where the defendants knew of the evidence, deposed plaintiff's expert witnesses about it, and referred to it in their own preliminary proposed findings).

The February 10, 2003 letter from Bruce Goodman and all testimony and evidence relating to it will be stricken from the record.  The Court will not, however, grant Defendant's request for more severe sanctions.  *See* Def.'s Reply at 8.  Dr. Norden – not the Smithsonian – is the party who is disadvantaged by the letter's exclusion from the record; any further action would be

inappropriate in these circumstances. *See S. States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 596 n.2 (4th Cir. 2003) ("The alternative sanctions referenced in the rule [37(c)] [including dismissal of claims or case] are primarily intended to apply when a party fails to disclose evidence helpful to an opposing party.")

### III.  CONCLUSION

The Court will grant Defendant's Renewed Motion for Summary Judgment [Dkt. # 41], deny Plaintiff's Cross-Motion for Summary Judgment [Dkt. # 42], and grant in part and deny in part Defendant's Motion to Strike and for Sanctions [Dkt. # 57].  A memorializing order accompanies this Memorandum Opinion.


Date: April 16, 2008                               /s/
                                         ROSEMARY M. COLLYER
                                         United States District Judge