Alex T. Sliheet, D.C. Bar No. 438977
Vickie Inge Fang, *pro hac vice*
Attorneys for Plaintiff Beth Norden
8792 Nightingale Drive
Lanham, MD 20706
alexsliheet@yahoo.com
fvickie@comcast.net
(301) 552-4908

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Beth M. Norden, ) | Case No. 051232 (RMC) |
| ) | |
| v. ) | AFFIDAVIT OF DR. DONALD OBERG IN SUPPORT OF MEMORANDUM & OPPOSITION REGARDING ECONOMIC DAMAGES |
| ) | |
| Cristian Samper, Acting Secretary Smithsonian Institution, ) | |
| ) | |
| Defendant ) | |

### AFFIDAVIT OF DR. OBERG

I, Dr. Donald Oberg, declare:

1. I am Dr. Norden's treating psychologist. In May of 2003, I diagnosed Dr. Norden with Major Depressive Disorder, non-psychotic, (MDD) and Post Traumatic Stress Disorder (PTSD). These two diagnoses remain active to this day.

2. During the 2003-2004 period, I communicated with Dr. Lawford of the Smithsonian regarding Dr. Norden's condition and treatment.

1

3. Dr. Norden's MDD was initially triggered by the Smithsonian's failure to accommodate her disability after she contracted dengue hemorrhagic fever. The MDD was severely exacerbated by Dr. Norden's experience with the Smithsonian in 2004, including Dr. Norden's failed return to work, her termination, and the resulting loss of her career.

4. Dr. Norden's PTSD was initially caused by 1) contracting dengue hemorrhagic fever in the line of duty, 2) the medical treatment she received for it, and 3) the Smithsonian's failure to accommodate her and the 2004 return to work proposal and subsequent loss of her career exacerbated her PTSD. Of the three factors, the discrimination by the Smithsonian caused her the most trauma.

5. The Smithsonian's April 2004 return to work proposal and its subsequent October 2004 termination of Dr. Norden also severely exacerbated Dr. Norden's MDD. Dr. Norden suffered severe emotional and physical pain in the form of severe and increased nightmares, migraine headaches, and a painful sense of devaluation and punishment.

6. The stress Dr. Norden feels about her loss of pension and the possibility that she will not be able to remain on OWCP workers' compensation payments or earn a living in the future greatly contributes to her anxiety and MDD.

7. Dr. Norden is willing to continue working and very much wants to continue working as an entomologist. I believe that it would be highly therapeutic if Dr. Norden were to find work as an entomologist, comparable to her previous position at the Smithsonian, and with any necessary reasonable accommodations. Dr. Norden has consistently benefited psychologically from the volunteer work

2

she has done as an entomologist with the USDA in Greenbelt, Maryland and the Archibold Research Center in Florida.

8. Although Dr. Norden would benefit greatly from returning to work comparable to the work she performed prior to contracting dengue, she is not able to return to the Smithsonian at anytime. Dr. Norden's inability to return to the Smithsonian is the result of the trauma she suffered from being discriminated against. She is not psychologically able to work in the same environment and/or with the same people who destroyed her career, caused her MDD, and contributed significantly to her PTSD.

9. Dr. Norden suffered from migraines and nightmares as the result of learning that the mediator in her case suggested the possibility of a return to the Smithsonian.

10. Dr. Norden suffered from a severe PTSD "flashback" during deposition when her former supervisor, Dr. Schultz, attempted to justify his behavior towards her. Dr. Norden has reported that Dr. Schultz testified during depositions that he was aware during the 2002 return to work that Dr. Norden was being harmed by her exposure to naphthalene. Dr. Norden suffered serious pain during her 2002 return to work, including exhaustion, nosebleeds, other internal bleeding, and prolonged migraines. She believes that her sensitivity to naphthalene and her vulnerability to migraines were permanently exacerbated by her work during this period without accommodations. Two of her physicians have advised her that they strongly suspect that her work without accommodations in 2002 caused the harm she describes. Thus, Dr. Norden deeply distrusts Smithsonian management and is afraid that she will be harmed physically if she returns to the Smithsonian and is

exposed to chemicals such as naphthalene and cyanide that are part of the work environment.

11. Moreover, whether Dr. Norden would be physically harmed or not, Dr. Norden would be psychologically harmed by a return to work at the Smithsonian as the Smithsonian now serves as an easy trigger for Dr. Norden's conditions of PTSD and MMD. Dr. Norden would not be able to control the effects of these conditions while working at the Smithsonian. The effects of these conditions would be severe and would be likely to include severe depression, nightmares, prolonged anxiety, and an uncontrollable sense of panic and anxiety. Such a result would damage Dr. Norden psychologically and would be a major set back to Dr. Norden's treatment.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: 4/26/08                    Respectfully submitted,

                                  _____
                                  Dr. Donald Oberg, Ph.D.

4