UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BETH M. NORDEN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 05-1232 (RMC) |
| | ) |
| CRISTIAN SAMPER, ACTING SECRETARY | ) |
| SMITHSONIAN INSTITUTION, | ) |
| | ) |
| Defendant. | ) |

**DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO MEMORANDUM
REGARDING OFFSET OF ANY BACK PAY OR FRONT PAY
AND WORKERS' COMPENSATION BENEFITS**

Pursuant to the Order of the Court, Defendant, through undersigned counsel, hereby submits this Reply on the issue of whether Defendant may offset any back pay or front pay awarded in this case to Plaintiff with workers' compensation benefits paid to Plaintiff.

In its initial memorandum of law, Defendant offered case law to support its argument that when a federal employee has received workers' compensation payments from her employer, those payments reduce the amount of any back pay to which the employee may be entitled. In her 45 page response, Plaintiff does not cite any case involving a federal employer that reaches the opposite conclusion. Rather, in the absence of any contrary legal authority, Plaintiff fills her sizeable brief with unfounded and irrelevant factual allegations seemingly intended to cast the Smithsonian in a negative light. These range from the questionable charge that Plaintiff's initial illness was caused by Smithsonian negligence (Memo at 16) to the meritless proposition that the Smithsonian "is actually able to make money" by "floating" Congressional appropriations for 30

1

days before making payments to the Department of Labor. (Memo at 22). The matter before the Court is a simple question of law in order to assist the parties in their settlement negotiations and this Court in the future, and the Defendant will not engage in a contest as to who is more or less deserving of the Court's sympathy. Lost in Plaintiff's flurry of unfounded accusations is the very simple fact that Plaintiff has been compensated since 2001 (and continues to be compensated) for *lost wages* by the Smithsonian through its payments pursuant to the Federal Employee Compensation Act (FECA).[1] Requiring the Smithsonian to compensate Plaintiff for back pay or front pay for the same period of time would amount to Plaintiff being paid twice for only the one loss.

**I.     In the Federal System, Employees Recover Lost Wages Only Once**

Though FECA and Title VII provide relief for different types of injuries, both statutory schemes prohibit double recovery. See 5 U.S.C. §§ 8131, 8132; 42 U.S.C. § 2000e-5(g); Miller v. Bolger, 802 F.2d 660, 666 n.5 (3d Cir. 1986) (holding that FECA and Title VII are not mutually exclusive remedies, but expressly not deciding what relief might be recoverable under Title VII for lost wages if plaintiff is also recovering FECA benefits for lost wages); Morris v. Roche, 182 F. Supp. 2d 1260, 1278 (M.D. Ga. 2002) (finding that double recovery for back pay is prohibited by 42 U.S.C. 2000e5(g)(1) and back pay recoverable by plaintiff for Rehabilitation

---

[1] FECA provides for payment of several types of benefits, including compensation for wage loss, schedule awards, medical and related benefits, and vocational rehabilitation services for conditions resulting from injuries sustained in performance of duty while in service to the United States. 20 C.F.R. 10.0 (b); see also 10 C.F.R. 10.422 (stating that the Office of Workers Compensation Benefits does not provide lump sum payments to persons entitled to wage-loss benefits because the purpose of FECA is to replace lost wages). Plaintiff receives tax-free wage loss compensation at the rate of 3/4 of her former salary. See page 5 of Attachment 1 to Hossain Declaration (Document 64-3) showing periodic payments compensation rate of 3/4. Plaintiff does not receive scheduled awards for her condition.

Act violations must be reduced by the amount he received in FECA benefits during the relevant time period).

The prohibition against double recovery has been recognized by the Equal Employment Opportunity Commission in a number of administrative decisions. In <u>Schultz v. Henderson</u>, Petition No.03980087, 1999 EEOPUB LEXIS 6009 (Oct. 14, 1999), the EEOC agreed with the Merit System Protection Board's finding that the petitioner had suffered disability discrimination when, following a request from petitioner to return to work within his medical restrictions, his employer removed him from employment. The agency subsequently reinstated the petitioner, leaving a period of constructive suspension for which he was entitled to damages. The EEOC stated:

> Notwithstanding petitioner's receipt of wage-replacement benefits under FECA, he is entitled to an award of back pay for the period of the constructive suspension. The award must, however, <u>be offset by the amount of the wage-replacement benefits which petitioner has received under FECA</u>; neither is petitioner entitled to recover leave which has already been restored under FECA.

<u>Id</u>. at *11-12 (emphasis added).

Similarly, in <u>Hernandez v. Potter</u>, Appeal No. 07A30005, 2004 EEOPUB LEXIS 3862 (July 16, 2004), the EEOC found that the Postal Service had failed to accommodate an employee's work-related back injury, causing a relapse of the injury and depression. The EEOC also found that the Postal Service had subjected the complainant to retaliatory harassment. There, the EEOC noted, "To the extent that complainant has received or will continue to receive workers' compensation wage replacement benefits under the Federal Employees Compensation Act (FECA), the agency may offset his back pay and future pecuniary damages by this amount." <u>Id.</u> *23 n.4.

In Morrison v. Potter, Appeal No. 07A50003, 2006 EEOPUB LEXIS 1656 (Apr. 18, 2006), the EEOC found that complainant suffered from Post Traumatic Stress Syndrome as a result of sexual harassment and could not return to work with the agency due to possible trauma. In that case, which did not involve allegations of disability discrimination, the EEOC stated, "Any future pecuniary damages paid to complainant must be offset by the amount of any wage replacement benefits she received from the Office of Workers Compensation Programs (OWCP) and any fringe benefits which have been continued under OWCP." Id. at *23. (The administrative judge had also ordered that back pay be reduced by OWCP payments, an issue that was not appealed. Id. at *18.)

The Merit System Protection Board also adheres to this principle against double recovery. Recent examples include Law v. U.S. Postal Service, Docket. No, CH-0752-06-0119-I-1 2006 MSPB LEXIS 6314 (Oct. 30, 2006) and Duncan v. SSA, Docket No. 0752-04-0213-I-1, 99 M.S.P.R. 512, 515, 2005 MSPB LEXIS 1902 (2005). In Law, the MSPB found that an agency constructively suspended an employee when it terminated his light duty assignment. The MSPB noted, the employee "may receive back pay for the remaining salary and benefits because he has shown that the agency took an 'unjustified or unwarranted personnel action' against him; however, such pay must be offset by the OWCP benefits he received during the relevant period." Law, 2006 MSPB LEXIS 6314 at *15-16. Similarly in Duncan, the employee alleged that the agency put her in a non-pay status, barred her from the workplace, and processed a request for her to be placed on OWCP's rolls against her wishes. The MSPB held that her allegations were not barred by her OWCP claim, but merited a hearing because they constituted a nonfrivolous allegation of constructive suspension. However, the MSPB noted that "an appellant who has

been affected by an unjustified or unwarranted personnel action is entitled to back pay **with an offset for any OWCP payments received during the relevant period**." <u>Duncan</u>, 99 M.S.P.R. at 515 (emphasis added).

As illustrated by these cases, the federal agencies responsible for administering Title VII and civil service laws have prohibited double payment in a range of scenarios from the circumstance in which the employer's failure to accommodate and retaliation caused a re-occurrence of a pre-existing injury (<u>Hernandez</u>) to the circumstance in which the employee's inability to work arose directly and exclusively from the employer's sexual harassment (<u>Morrison</u>). It makes no difference, therefore, whether Plaintiff's current inability to work at the Smithsonian is described as resulting exclusively from the alleged discriminatory conduct or a combination of the alleged discrimination and a pre-existing workplace injury. (Plaintiff's brief includes variations of both arguments.) As the EEOC and MSPB cases aptly demonstrate, to the extent that Plaintiff has been compensated by the Smithsonian for lost wages through FECA, she has not suffered a loss of wages as a result of the alleged failure to accommodate or retaliation.

## II.     The Unclean Hands Doctrine Does Not Permit Double Recovery

Plaintiff argues that Defendant is not entitled to offset her back pay award with her OWCP award because Defendant has unclean hands. This argument turns both Plaintiff's request for relief and the doctrine on its head. First, it is Plaintiff who is seeking the equitable remedy of back pay and arguing that her loss is equal to her full salary without regard to the wage loss compensation she has received through FECA. Plaintiff, however, bears the initial burden of establishing the extent of the loss occasioned by the Defendants' discriminatory or retaliatory actions. See <u>Carter v. Duncan-Huggins, Ltd.</u>, 727 F.2d 1225, 1237 (D.C. Cir.1984). Second,

Plaintiff has not cited any case that applies the unclean hands doctrine to a defendant who has been found liable. Rather, the law in this Circuit has long held that the matter of back pay and reinstatement are irrelevant to the discriminatory environment issue, and accordingly cannot be increased or decreased based upon any compensatory or punitive-type issues. See <u>Bundy v. Jackson</u>, 641 F.2d 934, 946 n. 12 (D.C. Cir. 1981). Moreover, in <u>Fogg v. Gonzales</u>, 492 F.3d 447, 456 (D.C. Cir. 2007), the case cited by Plaintiff, the Court of Appeals upheld the District Court's denial of a **successful plaintiff's** request for front pay because he misrepresented his position before Congress and thus had unclean hands. Notably, in the <u>Fogg</u> case, the District Court awarded plaintiff back pay reduced by the amount of workers' compensation benefits he had received, an award that was affirmed by the Court of Appeals. <u>Fogg v. Gonzales</u> 407 F. Supp. 2d 79, 90-91 (D.D.C. 2005), <u>affd in part, rev'd in part</u>, 492 F.3d 447, 456 (D.C. Cir. 2007).

      Plaintiff is entitled to certain damages, established by Congress, because the Court has found that the Defendant discriminated against her. Specifically, Plaintiff is entitled to equitable relief in order to make her whole, 42 U.S.C. § 2000e-5(g), and compensatory damages for "future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses." 42 U.S.C. § 1981a(b)(1)-(3). Plaintiff's "unclean hands" theory essentially is an argument that she is entitled to <u>more</u> back pay than necessary to make her whole because the Smithsonian acted <u>really</u> badly, the evidence of which is the Court's finding of discrimination. This argument is tantamount to an award of punitive damages against the Smithsonian, which is specifically prohibited. 42 U.S.C. § 1981a(b) (prohibits awards of punitive damages in employment discrimination or retaliation cases in which the plaintiff was employed by a government entity. See <u>Johnson v. Ashcroft</u>, 2001 WL 34366564 *4 (D.D.C.

June 21, 2001) (*citing* 42 U.S.C. §1981a, and Baker v. Runyon, 114 F.3d 668 (7th Cir. 1997)). Lucero-Nelson v. Washington Metropolitan Area Transit Authority, 1 F.Supp.2d 1, 10 (D.D.C. 1998) ("Section 102(b)(1) of the Civil Rights Act of 1991 states on its face that punitive damages are not recoverable against 'a government, government agency or political subdivision'"). See also City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 267 (1981) ("punitive damages imposed on a [government entity] are in effect a windfall to a fully compensated plaintiff, and are likely accompanied by an increase in taxes or a reduction in public services for the citizens footing the bill[; n]either reason nor justice suggests that such retribution should be visited upon the shoulders of blameless or unknowing taxpayers").

Plaintiff additionally uses several pages of her brief to argue that her psychological injuries were foreseeable to the Smithsonian. (Brief at 29-32). Plaintiff's alleged psychological injuries, however, are a matter for a jury to consider in setting compensatory damages. They are not a reason to provide her more equitable relief (i.e. backpay) than necessary to make her more than whole. Finally, Plaintiff repeatedly cites Knafel v. Pepsi Cola, 899 F.2d 1473 (6th Cir. 1990), and numerous other cases decided before the 1991 amendments to Title VII, for the proposition that an offset would reward Defendant for its own wrong-doing and not deter future wrong-doing: in other words, that the relief awarded Plaintiff should serve as punishment for Defendant. These older cases, however, were decided when the primary form of monetary relief available to a plaintiff was back pay. See, Landgraf v. USI Film Prods., 511 U.S. 244, 252 (1994). They do not take into account the compensatory damages available to plaintiffs as a result of the 1991 amendments to Title VII. Nor do they (or any private sector case) reflect the

fact that Congress did not permit for punitive damages against federal defendants. See 42 U.S.C. § 1981a(b)(1)-(3).

### III. OWCP Payments Are Not a Collateral Source

Plaintiff makes two somewhat contradictory arguments that OWCP payments are collateral source: (1) that they are a bargained-for benefit of her employment contract with the Smithsonian and (2) that Congress, not the Smithsonian, pays for the OWCP.

Plaintiff's first argument, citing Neal v. District of Columbia Department of Correction, that she contracted for her employment and that FECA is a benefit of that contract, does not apply to the Federal government; and to the extent that Plaintiff argues that it does, it is contrary to Supreme Court and Circuit Court precedent. See Army & Air Force Exch. Serv. v. Sheehan, 456 U.S. 728, 741 (1982) (holding that federal employment regulations do not create implied-in-fact contracts); Bell v. United States, 366 U.S. 393, 401 (1961) (stating that "common-law rules governing private contracts have no place in the area of military pay"). As recognized by the D.C. Circuit Court of Appeals, "[F]ederal workers serve by appointment, and their rights are therefore a matter of 'legal status even where compacts are made.' In other words, their entitlement to pay and other benefits 'must be determined by reference to the statutes and regulations governing [compensation], rather than to ordinary contract principles.'" Kizas v. Webster, 707 F.2d 524, 535 (D.C. Cir. 1983) (quoting Kania v. United States, 650 F.2d 264, 268 (Ct. Cl. 1981), and United States v. Larionoff, 431 U.S. 864, 869 (1977)). The principle that federal employees "derive the benefits and emoluments of their positions from appointment rather than from any contractual or quasi-contractual relationship with the government" has been acknowledged with respect to FECA benefits specifically. Chin v. United States, 890 F.2d 1143,

1146 (Fed. Cir. 1989) (dismissing suit alleging that the denial of FECA benefits was a breach of contract) (*quoting* Chu v. United States, 773 F.2d 1226, 1229 (Fed. Cir. 1985)). Neal v. Director, Distict of Columbia of Corrections, No. 93-2420, 1995 U.S. Dist LEXIS 11515 (D.D.C. Aug. 9. 1995), and the private sector cases cited by Plaintiff for the proposition that bargained-for benefits cannot be used to offset back pay, are inapplicable to the case at hand.

      Plaintiff's second argument that FECA benefits are a collateral source because Congress, not the Smithsonian, pays them, is likewise unsupported. While it is certainly true that the Smithsonian receives appropriations from Congress, which it uses to reimburse the Department of Labor for workers' compensation payments to the Smithsonian, Congress also funds the salaries of Smithsonian employees, see 110 Pub. L. 161, 135 (Div. F, Tit. III), 121 Stat. 1844 (2007), and appropriates funds for the Department of Treasury's judgement fund, 31 U.S.C. § 1304. Agencies also use federal appropriations to reimburse the Judgement Fund as required by the No FEAR Act. 107 Pub. L. No. 174 § 201(b), 116 Stat. 566, 568-69 (2002). The fact that reimbursement for Plaintiff's lost wages ultimately comes from the public fisc, as did her salary, as will any damages she may receive, is exactly why courts and administrative agencies consistently have offset back pay with FECA payments.

**IV.    In Computing the Difference Between Actual Lost Wages and FECA Payments, the Court should Compare Post-Tax Income to FECA's Non-Taxable Benefits**

      To the extent there is a difference between the benefits received through FECA and the salary Plaintiff would have received had she been working, Plaintiff's equitable award of back pay should be reduced. Whether Plaintiff's payments would totally offset back pay is a question of fact to be determined by the Court. However, equitable relief is designed to make Plaintiff

whole, but not more than whole. Nelson v. J.C. Penney Co., 858 F. Supp. 914, 930 (N.D. Iowa 1994). It is logical, therefore, that in determining whether there is a difference between the two amounts, the Court would compare Plaintiff's non-taxable FECA payments to the after-tax wages Plaintiff's would have received. Alternatively, the Court could compute the FECA payments to represent the amount of taxes saved and compare that amount to Plaintiff's pre-tax wages.

Plaintiff's reliance upon her own expert's calculation do not assist her here because the Plaintiff's expert ignored FECA payments as a collateral source, and did not perform any offset calculations. Pltf's Ex. 1, Doc. 67-5. Further, in determining the adverse tax impact resulting from Plaintiff's termination, Plaintiff's expert appears to have included the Smithsonian's contribution to Plaintiff's TSP account as part of her taxable income. (The amounts listed in column C of Schedule 2 as "before tax income" are the total earnings, wages plus TSP contributions from Column H in Schedule 1). Pltf's Ex. 1, Doc. 67-5. However, an employer's contributions to a TSP account are not taxed at the time the contribution is made.[2]

---

[2] As explained to federal employees on the Thrift Savings Plan's website, http://www.tsp.gov/features/chapter03.html:

> When you participate in the TSP, you make *before-tax* contributions. That means the money you contribute is taken out of your pay before Federal and, in almost all cases, state income taxes are withheld. Therefore, the amount used to calculate your taxes is smaller and you pay less in taxes now. Deposits to a regular savings account do not provide such an advantage.
>
> Your TSP contributions are excluded from the taxable income reported on IRS Form W-2, Wage and Tax Statement, that you receive from your agency each year. Thus, you do not report them on your annual Federal tax return.

## V. Any Calculation of Front Pay Must be Offset By Expected FECA or Disability Retirement Payments

Plaintiff argues that FECA payments should not offset front pay because the existence of such payments is uncertain. This argument overlooks the fact that all front pay awards require speculation. Barbour v. Merrill, 48 F.3d 1270, 1280 (D.C. Cir. 1995) (remanding the front-pay issue to the district court for determination); Peyton v. DiMario, 287 f. 3d 1121, 1129 (D.C. Cir. 2002) (noting that "some speculation is necessary to determine front pay" and holding that the district court's "award of 26 years of front pay was unduly speculative and therefore an abuse of discretion."). What is certain is that, at this moment, Plaintiff remains on the periodic roles and has represented to the Court that she has been unable to find work "as a highly experienced entomologist specializing in aculeate Hymenoptera."[3] On the one hand, Plaintiff would have the Court believe that she is entitled to front pay and will be unable to mitigate her damages by finding a position equivalent to the one she held at the Smithsonian. On the other hand, however, she argues that, despite this inability to find work, she faces an imminent risk of being removed from the FECA rolls. The likeliest scenarios for the short term -- both of which undercut Plaintiff's claims for full front pay – are that Plaintiff is incapable of finding employment and remains on the periodic rolls indefinitely or that she finds employment and mitigates the need for front pay. The third scenario posited by Plaintiff – that the Department of Labor finds her capable of working at Wal-Mart and terminates her FECA payments because she

---

[3] Plaintiff has included in her memo a number of factual assertions that Defendant would dispute at a hearing on the issue of damages, including the foregoing description of Plaintiff's job. (See e.g., Defendant's position description, Exhibits 1-2 to Def's Cross-MSJ (Dkt. No. 34)). As the parties offered to brief the Court on the legal issue of collateral sources, Defendant has not attempted to correct the numerous factual errors in Plaintiff's brief and respectfully reserves the opportunity to do so at a hearing.

declines to take that job (memo at 34) -- is far more speculative than her current situation or the likelihood that she finds suitable employment for a person of her capabilities. An award beyond the short term would be "unduly speculative." Barbour, 48 F.3d at 1280; see Partington v. Broyhill Furniture Industries, Inc., 999 F.2d 269, 273 (7th Cir. 1993) (observing that as a general proposition, "the amount of proof required to establish damages will tend … to be proportional to the amount of damages claimed."); Hybert v. Hearst Corp., 900 F.2d 1050, 1056-57 (7th Cir. 1990) (five years was too speculative); Goss v. Exxon Office Sys. Co., 747 F.2d 885, 890 (3d Cir. 1984) (affirming four months of front pay because a longer period would be speculative); Baker v. John Morrell & Co., 263 F. Supp. 2d 1161, 1184 (N.D. Iowa 2003) (finding that a twenty-year award of front pay is unsupportable as a matter of law.); Snow v. Pillsbury Co., 650 F. Supp. 299, 300 (D.Minn.1986) (nine-year award reduced to three years).

Offsetting a front pay award (the need for which is always speculative) with Plaintiff's probable FECA payments prevents the double recovery prohibited by Title VII and FECA and is consistent with the administrative case law. See Hernandez v. Potter, Appeal No. 07A30005, 2004 EEOPUB LEXIS 3862 (July 16, 2004).

**VI.   Because the Plaintiff's Own Conduct Caused Her Failure to Timely Apply for Disability Retirement, The Court Does Not Have The Equitable Authority To Order Her Reinstatement Solely For the Purpose of Making an Application**

With respect to the issue regarding disability retirement, Plaintiff misconstrues Defendant's argument and the facts regarding possible disability retirement. First, Plaintiff cannot demonstrate that her failure to timely apply for disability retirement was caused by any act of the Defendant. Indeed, in her own deposition in this case, Plaintiff acknowledged that Michael Johnson, an employee with the Smithsonian Human Resources Department, specifically

12

informed plaintiff, "I recommend you apply for disability retirement and with confidence, I believe OPM will rule/approve in your favor." Pltf's Depo. 201:23-202:2. Plaintiff admitted that she did not follow Mr. Johnson's advice and did not apply within the time required under the regulations. Pltf's Depo. 202:3-202:25. Thus, it was Plaintiff's own choice, and not any act of the Defendant, that caused her to not file for disability retirement. And, because Plaintiff cannot meet her burden of demonstrating that she would have applied for disability retirement but for the alleged discrimination or retaliation, the Court cannot now order that she be reinstated solely for the sake of making such application.

      Second, in its memorandum of law, Defendant did not argue that front pay must be offset by any disability retirement, or that the disability retirement is exempt from the collateral source rule. Rather, Defendant argued that under either retirement option (basic FERS or disability), Plaintiff would receive far less than the amount she is presently receiving from FECA, and is eligible to receive indefinitely. See Memorandum of Law at 8. Thus, Defendant argued that it is entitled to offset any future retirement award with Plaintiff's FECA workers' compensation payments, which, as demonstrated above and in Defendant's initial memorandum, are not collateral sources. Id.

      Defendant then raised the matter regarding the disability retirement to demonstrate that, should Plaintiff wish to retire in the future, the Defendant could offer Plaintiff the opportunity to apply for a retirement alternative to what is otherwise possible through this Court's equitable authority. Defendant demonstrated that, should the Court order Defendant to put Plaintiff's FERS retirement in the same position as it would have been without her termination, she would receive only 27.5% of her high three average salary if she retired at age 62, compared to the

potential for disability retirement (if approved by OPM), which would pay 60% of her high-three average salary in the first year (less 100% of any disability payment she might receive from the Social Security Administration) and, after her first year, would pay 40 % of her high-three average pay (less 60% of any Social Security disability benefit).  Thus, the amounts possible through disability retirement are above any amounts that this Court may order through its equitable authority, and settlement with the Defendant would be in Plaintiff's interest.

        Respectfully submitted,

        /s/ Jeffrey A. Taylor
        JEFFREY A. TAYLOR, D.C. Bar # 498610
        United States Attorney

        /s/ Rudolph Contreras
        RUDOLPH CONTRERAS, DC BAR #434122
        Assistant United States Attorney

        /s/ Darrell C. Valdez
        DARRELL VALDEZ, D.C. Bar # 420232
        Assistant United States Attorney
        555 4th Street, N.W., Civil Division
        Washington, DC 20530
        (202) 307-2843