Alex T. Sliheet, D.C. Bar No. 438977
Vickie Inge Fang, *pro hac vice*
Attorneys for Plaintiff Beth Norden
8702 Nightingale Drive
Lanham, MD  20706
alexsliheet@yahoo.com
fvickie@comcast.net
(301) 294-6839

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **Beth M. Norden,** ) | |
| ) | **Case No. 05cv1232 (RMC)** |
| **Plaintiff** ) | |
| ) | **DR. NORDEN'S SUR-REPLY AS** |
| **v.** ) | **AUTHORIZED BY COURT ORDER** |
| ) | |
| **Cristian Samper, Acting** ) | |
| **Secretary Smithsonian** ) | |
| **Institution,** ) | |
| ) | |
| **Defendant** ) | |

## SUR-REPLY

**I.    Analysis of Defendant's reply to the seven (7) separate legal issues raised in Plaintiff's memorandum and upon which rulings have been requested.**

**Issue 1:  <u>Already paid OWCP payments should not be set-off against back pay or front pay.</u>**

Congress has specifically protected defendants from overpaying for damages through the mandatory deduction of "interim earnings" under 42 U.S.C. § 2000e-5(g). Money from <u>benefits</u> is not "earned" from employment, is not an "interim earning," and is not subject to mandatory mitigation set-offs; but money from benefits is subject to the

court's discretion in equity under the collateral source rule. *[Plaintiff's Memorandum Section III (A)]*

Unemployment compensation benefits, disability retirement benefits, and OWCP benefits are correctly analyzed under the collateral source rule as to the character of the benefits and not irrationally as "double payments" and/or "punitive damages." Any <u>benefit</u> stemming directly or indirectly from a defendant and not set-off under the collateral source rule will always be claimed to be a "double payment" and a hidden "punitive damage" award. These sound bite arguments of the Smithsonian have been rejected by *Neal v. Director, District of Columbia*, 1995 U.S. Dist. LEXIS 11515, *19-23 (D.D.C. 1995) and most other courts.

Currently, <u>as applied to federal employees</u>, unemployment compensation benefits and disability retirement benefits are both prohibited as off-sets under the character of the benefit analysis of the collateral source rule.

<u>Dr. Norden's simple point as to OWCP benefits is that</u>: OWCP benefits are also subject to a proper character of the benefit analysis under the collateral source rule. The Court should not make the same mistake that the EEOC and the Smithsonian make by simply concluding that because the defendant (through Congress) pays for the benefit, the benefit cannot be collateral, i.e., the Smithsonian's argument that the money comes from the public fisc. A proper application of the character of the benefit analysis as to OWCP benefits demonstrates that: 1) the benefit functions analogous to insurance to protect both employees and the Smithsonian, 2) the benefit is not FREE, for employees ultimately pay for such benefits by waiving their rights and the potential for a much greater damage award against the federal government in a tort action in exchange for the OWCP benefit, and 3) that in this case, the Smithsonian's unlawful termination caused the necessity of Dr. Norden to maintain the OWCP benefits from 2003 through the present. *[Dr. Oberg, aff., ¶¶ 3-6 and ¶¶8-11]*. On this last point, see *Arneson v. Social Security Administration*, 128 F. 3d 1243, 1248 and fn.#8

(8th Cir. 1997), holding that the <u>disability retirement benefit for a federal employee</u> would not be set-off because the employer's unlawful termination caused an able plaintiff to take a disability retirement.  See, *Knafel v. Pepsi-Cola Bottlers, Inc.*, 899 F.2d 1473, 1480-1481 (6th Cir. 1990) (no set-off as employer's discrimination caused the need for the workers' compensation benefit).

There is no logical and compelling reason to perform the character of the benefit analysis as to OWCP benefits and to arrive at a completely different conclusion than has already been reached for federal employees as to unemployment compensation benefits and disability retirement benefits.

### Defendant's incorrect reference to Fogg

Defendant's citation to the *Fogg* cases as support of its position is incorrect for the *Fogg* cases do not hold that workers compensation are deductible as a set-off.  In *Fogg v. Gonzales,* 407 F. Supp. 2d 79, 88 (D.D.C. 2005), plaintiff Fogg did not argue against a set-off and simply proposed the set-off on his own:

> "Fogg's proposed dollar amount is <u>the difference</u> between (1) the pay and benefits he would have received had he continued to work at the USMS and received his desired promotions through the Senior Executive Service Level, <u>and (2) his actual income and benefits, including workers' compensation payments</u> received during his time on administrative leave." (emphasis added)

The district court followed Fogg's proposal, and the appellate court simply acknowledged the lower court's decision to do so.  No ruling or discussion was made on the issue by either court.  As did the plaintiff in *Neal*, the plaintiff in *Fogg* never bothered to make the argument under the collateral source rule as to workers' compensation to the court.

### Defendant's false argument that Plaintiff is relying upon cases decided prior to the 1991Civil Rights Act

- *See: Arneson v. Social Security Administration,* 128 F. 3d 1243, 1248 (8th Cir. 1997), a 1997 case holding that the disability retirement for a federal employee would not be

deducted and citing the factor that the disability retirement was only taken because of the unlawful termination. *[Plaintiff's Memorandum, pp. 25, 39]*

- See: *Hamlin v. Charter Township of Flint*, 165 F.3d 426, 435-436 (6th Cir.1999) a 1999 case holding that it is improper to argue that "any benefits that a plaintiff would not have earned had he or she continued working should be offset [under the collateral source rule]." *[Plaintiff's Memorandum, pp. 10, 25]*

- See: *Moysis v. DTG Datanet,* 278 F.3d 819, 828 (8th Cir. 2002) a 2002 case holding that it is improper to allow a set-off for workers' compensation because it would reduce the deterrence effect of Title VII. *[Plaintiff's Memorandum, pp. 9, 11, 16]*

- See: *Neal v. Director, District of Columbia,* 1995 U.S. Dist. LEXIS 11515, *19-23 (D.D.C. 1995) a 1995 case analyzing the character of the benefit under the collateral source rule and dismissing the Smithsonian's arguments to this court, i.e., that refusing the set-off will result in more than a make whole remedy and an award of punitive damages. *[Plaintiff's Memorandum, pp. 9, 12, 41, et. al.]*

### *Defendant's reliance on incorrect EEOC decisions*

The defendant cites EEOC decisions for the proposition that the set-off must be allowed to prevent a double recovery. Without exception, the reasoning for the EEOC decisions under the collateral source rule is the incorrect and myopic focus on the source of the defendant instead of the character of the benefit analysis. For example see <u>Finlay v. Runyon</u>, Appeal No. 01942985, 1997 EEOPUB LEXIS 1700 (April 29, 1997) that summarizes the EEOC's universal reasoning for allowing the set off of workers' compensation:

> "…FECA benefits are paid in full by the agency. Because FECA benefits therefore come from the agency itself, see text below at 13-14, and not a collateral source, offset is appropriate. See Wallis v. U.S. Postal Service, EEOC Appeal No. 01950510 (November 13, 1995); Scott v. U.S. Postal Service, EEOC Appeal No. 01921641 (June 11, 1993)."

As discussed in *Plaintiff's Memorandum, Section IV*, the collateral source rule is a rule of substantive law and under DC law it is the character of the benefit that matters and not whether the defendant pays for the benefit. *District of Columbia v. Jackson,* 451 A.2d 867, 871-872 (D.C. 1982)  Because the EEOC cases utterly fail to engage in a character of the benefit analysis, these decision in their entirety are incorrect in their reasoning and incorrect in their application of the collateral source rule.  See: *Neal v. Director, District of Columbia,* 1995 U.S. Dist. LEXIS 11515, *19-23 (D.D.C. 1995).

### *Defendant's attempt at distinguishing private versus public employees does not change the character of the benefit analysis.*

Defendant cites *Bell* and *Army* and *Kizas* in an attempt to undermine the *Neal* character of the benefit analysis by stating that the *Neal* analysis is inapplicable to federal employees because they are appointed and do not have a contractual relationship with the federal government.  The defendant's cases stand for the proposition that Dr. Norden's "entitlement to pay and other benefits 'must be determined by reference to the statutes and regulation governing [compensation], rather than to ordinary contract principles [because the federal government must first waive its sovereign immunity under the compensation statute at issue.]'" *Kizas v. Webster*, 707 F.2d 524, 535 (D.C.C. 1983) The *Kizas* case performed a thorough analysis of the issue of a government employee's entitlement to pay and other benefits and concluded that: "This rule derives from the familiar principle that waiver of sovereign immunity cannot be implied but must be unequivocally expressed." As is true of all the cases cited by defendant, including *Chin,* the issue is one of sovereign immunity and a refusal to allow common law contract principles to sidestep sovereign immunity and jurisdictional safeguards as to the federal government.

However, Dr. Norden is not required to demonstrate that she could sue the government for breach of contract under FECA in order to demonstrate a valid *Neal*

Plaintiff's  SUR-REPLY

character of the benefits analysis as to OWCP benefits. Directly on point is the case of *Arneson v. Callahan*, 128 F.3rd 1243, 1248 (8th Cir., 1997), where the court performed a *Neal* character of the benefits analysis as to a statutory CRCS disability retirement pension of an able federal employee and concluded that the pension was not deductible from back pay - one of the factors being that the disability retirement was only taken because of the defendant's unlawful termination. Defendant's present argument to the Court is that *Bell* and *Army* and *Kizas* would prohibit the *Arneson* analysis and block any determination that the CRCS disability retirement pension could not be set-off under the collateral source rule because federal workers are employees by appointment. Defendant's reliance on *Bell* and *Army* and *Kizas* is a nonstarter.

Thus, once sovereign immunity has been waived and jurisdiction has been established as to the FECA statutory rights, there is no reason for the Court to not follow *Arneson* and to do a character analysis of the OWCP benefit.

**Issue 2: <u>Independent of any other rationale, the Smithsonian's "Unclean Hands" prohibit any set-off.</u>**

Defendant's position is that the doctrine of unclean hands as a matter of law cannot prohibit a set-off for OWCP benefits. However, set-offs are an issue in equity and the doctrine of unclean hands specifically applies in equity; therefore, Defendant's position cannot be correct as a matter of law. Defendant next states that Dr. Norden wants to apply the doctrine of unclean hands in this case because Dr. Norden says that the defendant acted "<u>really</u> badly." This of course is not Dr. Norden's argument because such an argument could be made in every discrimination case where liability is found.

On the contrary, Dr. Norden wants the Court to apply the doctrine of unclean hands in this case because unlike other "typical" discrimination cases, there is amply evidence of ***actual and proximate cause that the defendant's bad faith forced the necessity of OWCP benefits that the defendant now wants the Court to set-off in equity.*** Equity requires the

"door to be closed" to one tainted with unclean hands as to the matter in which he seeks relief i.e., OWCP payment set-offs. *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co., 324 U.S. 806, 814, 65 S. Ct. 993, 89 L. Ed. 1381, 1945 (1945)* (The doctrine of unclean hands "closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief")

In its reply brief, Defendant does not dispute its 2003 knowledge of Dr. Norden's mental health, the 2003 warnings the defendant received regarding its future conduct on Dr. Norden's mental heath, its 2003 admission that Dr. Norden would have trouble finding work as an entomologist. *Plaintiff's Memorandum, Section V* amply demonstrates these points with multiple exhibits that were incidentally solicited at the Smithsonian's request in planning for a return to work in 2004. Thus, the defendant had knowledge, intention and forseeability as to Dr. Norden's mental health and as to the consequences of its conduct in terms of forcing Dr. Norden to incur and maintain OWCP benefits from 2003 to present. Armed in such a manner, the Defendant went out of its way to illegally force Dr. Norden to incur and maintain OWCP benefits, including: 1) forcing Dr. Norden to maintain OWCP benefits in 2003-2004 due to the Smithsonian's illegal return to work plan and termination, [Collyer Order 8/3/07], 2) causing and/or severely exacerbating Dr. Norden's "Major Depressive Disorder" and "PTSD" *[Oberg, aff., ¶¶ 3-6],* thus rendering Dr. Norden unable to return to work for the defendant *[Oberg, aff., ¶¶ 8-11],* and requiring future OWCP benefits, and 3) <u>actively interfering with Dr. Norden's own attempt to mitigate and to reduce her OWCP benefits through a USDA transfer that the defendant subsequently terminated through inaction.</u> *[See Plaintiff's Memorandum, Section V]* The Smithsonian seeks relief in the form of set-offs for OWCP benefits; but the Smithsonian, armed with knowledge, intent and forseeability, has unclean hands as to those OWCP benefits that it literally forced upon Dr. Norden. The facts in this case are simply not found in the "typical" discrimination case. Forcing benefits upon a plaintiff that does not need them is a relevant factor as to set-offs and

is found in the case law.  Although the analysis was not done under the doctrine of unclean hands: See *Arneson v. Social Security Administration,* 128 F. 3d 1243, 1248 and fn.#8 (8th Cir. 1997), holding that the disability retirement for a federal employee would not be set-off as employer's discrimination caused an able plaintiff to take a disability retirement.  See *Knafel v. Pepsi-Cola Bottlers, Inc.*, 899 F.2d 1473, 1480-1481 (6th Cir. 1990) (no set-off as employer's discrimination caused the need for the workers' compensation benefit).

**Issue 3:** <u>**Uncertain and non-existing future OWCP payments should not be used as a set-off against back or front pay.**</u>

Defendant says that uncertain and non-existing future OWCP payments are no more speculative than calculating an award of front pay.  The defendant is comparing apples to oranges in an attempt to shift the risk of uncertain and non-existing OWCP payments to Dr. Norden. <u>There is a huge difference.</u>

In any speculative award of front pay, defendant would be legally required to make the full payment, and Dr. Norden would be legally assured of the full receipt of the funds.

However, there is no legal assurance whatsoever that Dr. Norden will actually receive any uncertain and non-exiting OWCP future payments that are presently summed and deducted by the Court.  For example, if the Court speculates that Dr. Norden will be receiving 10 years of workers' compensation into the future to be presently summed and deducted from Dr. Norden's damages, the Court will presently make the deduction, to Dr. Norden's detriment, and the Court will have no ability to guarantee that Dr. Norden will actually receive any of the presently deducted 10 years of OWCP payments.  Although Dr. Norden suffers from a serious handicapping condition, she also enjoys superior intellect, education, and even physical strength as evidenced by the work she performs on a volunteer basis.  Defendant has pointed to nothing that even suggests that Dr. Norden will be able to remain on any OWCP benefits, much less 100% benefits for the rest of her life.  Dr. Norden can be thrown off of OWCP benefits next year, two years from now, and/or the OWCP

payments can be reduced or otherwise limited.  [5 USC §8123; 5 USC §8128; 5 USC §8104; 5 USC §8106]  Defendant, who carries the burden, responds by merely says that this is not probable; but there is absolutely nothing that prohibits Dr. Norden from finding herself in 2009 or 2010 in the situation of both being unable to locate comparable employment and also being denied further OWCP payments and/or being issued a vastly lower OWCP payment.

Defendant's reply argument on this point offers no case that shifts the risk and holds or reasons that uncertain and non-existing future OWCP payments are to be summed and presently deducted.  In support, on page 12 of its brief, defendant only points to Hernandez v. Potter decision, appeal no. 07A30005, 2004 EEOPUB LEXIS 3862.  However, in Hernandez, the EEOC did not speculate and did not sum the uncertain and non-existing OWCP payments out into the future.  The EEOC decision dealt with lost earning capacity and not front pay.  The plaintiff was *permanently* and left with the ability to only work 4 hours a day.  The EEOC decision gave the plaintiff the difference between his lost earning capacity and any OWCP payments that he would received for one year - between the time of the decision July 17, 2004, and July 20, 2005:

> "No later than sixty (60) calendar days after the date this decision becomes final, the agency shall determine the appropriate amount of future pecuniary damages and other benefits due to the complainant, as described (incorrectly as "front pay and future benefits") in the "Remedies" portion of the AJ's decision, from the date of this decision [June 17, 2004] through July 20, 2005, and pay this amount to the complainant."

Defendant should suffer the risk of uncertain and non-existing future OWCP benefits. The only other alternative is that Court maintains jurisdiction of this case well into the future and orders that any front pay awarded to Dr. Norden be paid on a continuing yearly basis, and that only OWCP benefits actually received during a particular year can be off-set and only against that year's front pay income.  However: 1) continuing jurisdiction is not a substitute for an

award of front pay typically paid out as a lump sum discounted present value,[1] and 2) the length of a front pay award in this case is expected to run through Dr. Norden's retirement at 65 years of age. [*Plt. Ex. 1, Gaskin's report*]

- See: *Pierce v. Atchison, Topeka & Santa Fe Railway*, 65 F.3d 562, 574 (7th Cir. 1995), where the Seventh Circuit affirmed an award of 10 years of front pay until age 65;

- See: *Salitros v. Chrsler Corp,* 306 F. 3d 562 (8th Cir. 2002), where the court affirmed an award of 7 years of front pay in an ADA case. The plaintiff's anticipated retirement date was the end of seven years;

- See: *Buckley v. Reynolds Metals Co*. 690 F. Supp. 211 (S.D.N.Y. 1988) , where a 56 year old unlawfully discharge employee was awarded nine years in front pay because there was no reason to reject his claim that he would have remained with the employer until age 65;

- See: *Cummings v. Standard Register, Inc*. 265 F. 3d 56 (1st Cir. 2001), where the First Circuit approved an award of 14 years of front pay in a case in which there was evidence that the employee was a long term employee, would have remained with the employer until retirement, and had been unable to find comparable employment despite substantial efforts.

---

[1]  See: *Neal v. Director, D.C. Dep't of Corrections*, 1995 U.S. Dist. LEXIS 11515, *16: "In support of their contention that courts should exercise continuing jurisdiction rather than award front pay, defendants cite *Patterson v. American Tobacco Co*., 535 F. 2d 257 (4th Cir.)…But *Patterson* mentions continuing court supervision in a single passing sentence, and only as an alternative remedy.  The court explicitly sanctioned front pay. "Compensation should be supplemented by an award equal to the estimated present value of lost earnings that are reasonably likely to occur between the date of judgment and the time when the employee can assume is new position. Id at 269.  The court then added: "Alternatively, the court may exercise continuing jurisdiction over the case and make periodic back pay awards until the workers are promoted to the jobs their seniority and qualifications merit." Id. This language cannot reasonably be construed as an endorsement of continuing jurisdiction over front pay."

Plaintiff's  SUR-REPLY

**Issue 4: <u>Uncertain and non-existing future OWCP payments should not be used as a set-off against Dr. Norden's retirement pension.</u>**

Defendant offers no reply to Dr. Norden's points on this issue other than to restate that at age 65, Dr. Norden cannot stay on workers' compensation and simultaneously start receiving her retirement pension.  Dr. Norden has already argued in Section VII of its memorandum that the defendant's future scenario as to what will occur when Dr. Norden reaches age 65 is irrelevant, because:

- Defendant is shifting the risk of uncertain and non-existing OWCP payments to Dr. Norden with no legal or evidentiary justification and with unsupported assumptions;

- Dr. Norden will not be making an election between OWCP payments and a retirement pension at age 65, because Dr. Norden can be awarded a current lump sum award of her retirement pension, adjusted for all of the losses and lack of contributions caused by the unlawful termination, and then discounted to its present value and <u>paid currently as a damage award in equity for discrimination injuries;</u>

- Even FECA under its exclusive-liability provision, 5 USC §8116, does not authorize the right to stop or to set-off benefits based on a present value award of damages in equity to a victim of discrimination for discrimination injuries;

Furthermore, from now until Dr. Norden reaches the age of 65, OWCP payments have absolutely nothing to do with the ongoing damages that are occurring to Dr. Norden's retirement pension.  For example, Dr. Norden has every right to be reimbursed for missed TSP contributions into her retirement pension regardless of the amount of OWCP benefits that she may receive, if any, between now and age 65.

<u>Finally,</u> if the defendant wants to assume that Dr. Norden will be on OWCP payments until the end of her life expectancy at age 82, *[See Plt. Ex. 1, Gaskin's report],* while the defendant maintains the position that it will be paying for all of these OWCP benefits, then ***the defendant should be willing: 1) to sum up the OWCP benefits between now and age 82, 2) to gross-up the summed amount of OWCP benefits to account for the fact that the***

Plaintiff's  SUR-REPLY

*OWCP benefits are tax free, but the lump sum will be taxed as gross income, and finally 3)*
*to discount the gross-up amount to its present value and pay it out to Dr. Norden.*
Otherwise, the defendant should drop its lifetime OWCP argument.

**Issue 5:** <u>**Under the collateral source rule, a "Disability Retirement Pension" should not**</u>
<u>**be used as a set-off against back or front pay.**</u>

Dr. Norden raised this disability retirement issue in its memorandum because the
issue is certain to be raised during future settlement discussions and will potentially stall such
discussions.  Therefore, a ruling was and is requested by Dr. Norden.

In its reply brief, defendant concedes that it is not arguing that front pay or back pay
should be reduced by a disability retirement pension.  Defendant has cited many EEOC
rulings in its reply brief.  Although EEOC decisions are not controlling, even the EEOC has
ruled in <u>Savage v. United States Postal Service</u>, EEOC Petition No. 04990044 (March 28,
2000) that an agency may not deduct disability retirement benefits payments from a back pay
award.  Citing to EEOC policy guidance, the Commission explained that it is not equitable
for an employer to be permitted to recoup these pension payments. The decision relied upon
*Arneson v. Social Security Administration,* 128 F. 3d 1243 (8th Cir. 1997), in which the court
applied the common law collateral source rule with a character of the benefit analysis and
refused to deduct the disability retirement pension of a federal employee.  One of the factors
was that the disability retirement was only taken because of the unlawful termination.

The *Arneson* collateral source rule analysis that prohibits the deduction of a disability
retirement pension against back pay should be no different when applied to front pay.  It
would be improper to argue that a portion of the disability retirement pension should be set-
off against the front pay award because the disability retirement pension is a benefit that Dr.
Norden would not have earned had she continued working during the awarded front pay
period. See: *Plaintiff's Memorandum Section III*(B), and *Hamlin v. Charter Township of
Flint*, 165 F.3d 426, 435-436 (6th Cir.1999) rejecting this line of argument.  Such an

argument should also easily fail where the defendant's unlawful termination in the cause of plaintiff seeking disability retirement. See: *Arneson, supra*, and *Knafel v. Pepsi-Cola Bottlers,Inc.*, 899 F.2d 1473, 1480-1481 (6th Cir. 1990) (no set-off as employer's discrimination caused the need for workers' compensation).

**Issue 6: <u>Damages are gross wages – not net wages after taxes.</u>**

In its reply brief, the defendant cites to no legal authority. Defendant simply says that if the court does not deduct taxes, then Dr. Norden will be made more than whole. Defendant's tax argument has been explicitly rejected by multiple courts because whatever income a plaintiff receives in a back pay or front pay award is taken as the ***<u>gross income</u>*** by the IRS for tax purposes. See: *Commission of Internal Revenue v. Schleier*, 132 L. Ed. 2d 294, 115 S. Ct. 2159 (for federal income tax purposes, plaintiff must include the back-pay award in gross income); *Tanaka v. Department of Navy*, 788 F.2d 1552, 1553 (Fed. Cir. 1986) (holding that the awards are taxable in the year issued). The general rule was stated in *Neal v. Director, District of Columbia*, 1995 U.S. Dist. LEXIS 11515, *25-26 (D.D.C. 1995):

> "The Supreme Court's explicit holding -- that back pay awards are taxable as gross income -- commits this court to treat income taxes the same as payroll taxes. Neither will be subtracted in computing the amount of back pay to which plaintiffs are entitled. The requisite subtraction will be discharged at the appropriate time -- undoubtedly with great relish -- by the relevant taxing authorities." [See also footnote 2, below][2]

The same rationale applies to front pay. See: *Johnson v. United States*, 76 Fed. Appx. 873, 877 (10th Cir. 2003), holding that front pay was the <u>gross amount</u> of the wages since the

---

[2] **See also**: *Robinson v. Southeastern Pennsylvania Transportation Authority*, 982 F. 2d 892, 898 (3rd Cir. 1993) ("…we remand to the district court with directions to reinstate the amount of the award reduced for payment of income taxes.") *Rasimas v. Michigan Dep't of Mental Health*, 714 F.2d 614, 627 (6th Cir.1983), *cert. denied*, 466 U.S. 950, 80 L. Ed. 2d 537, 104 S. Ct. 2151 U.S. (1984)." ("Backpay awards should not be reduced by the amount of income and social security taxes which would have been deducted from the wages the claimant would have received but for discrimination.") See: *Commission of Internal Revenue v. Schleier*, 132 L. Ed. 2d 294, 115 S. Ct. 2159 (For federal income tax purposes, Plaintiff must include the back-pay award in gross income).

front pay was not a payment for personal injury that would have been except from taxes under IRS section 104(2).  The defendant's tax argument has no merit.

**Issue 7:**  <u>**The equitable remedy of ordering a temporary reinstatement so that Plaintiff**</u>
<u>**can apply for an OPM disability retirement pension is one of the make whole**</u>
<u>**remedies available to Dr. Norden in this case and is not dependent on the**</u>
<u>**defendant's consent.**</u>

In its reply brief, the defendant does not deny that the primary and overriding reason that an OPM disability retirement benefit is not currently available to Dr. Norden is because the defendant violated the law and illegal terminated Dr. Norden, i.e., but for defendant's unlawful termination, *[Collyer, 8/3/7, Order]* Dr. Norden would still be employed at the Smithsonian *[Oberg, aff., ¶ 7]* and would still be working with the back-up option of being able to apply for an OPM disability retirement should the need arise.

Instead the defendant tries to shift the blame to Dr. Norden, and in a covert manner, the defendant is really making an equitable argument for the application of the doctrine of unclean hands as to Dr. Norden's failure to apply for OPM disability.  However, the doctrine requires bad faith, and the defendant has presented no such evidence.  *Precision Instrument Mfg. Co., supra.*  Defendant's citations to Dr. Norden's deposition 201:23-202:2 specifically refer to questions regarding a specific email sent by Michael Johnson/Smithsonian Human Resources to Dr. Norden around November 10, 2003.  Through no coincidence, the  Johnson email was sent immediately after Dr. Schultz had sent his November 5, 2003, certified letter to Dr. Norden threatening to remove Dr. Norden from the Rolls in 30 days.  This was the very time that Dr. Norden responded to Dr. Schultz with her November 13, 2003, letter requesting that she be allowed to return to work with reasonable accommodations, a request that prompted the Smithsonian to seek medical updates as to Dr. Norden's condition.  The medical updates were promptly provided to the Smithsonian's Dr. Lawford by: 1) Dr. Oberg's November 24, 2003 memo [Plt. Ex.4], and 2) Dr. Granite's November 26, 2003 memo [Plt. Ex. 7].  <u>Dr. Norden wanted to work with reasonable accommodations and did not</u>

want to retire on disability despite the Johnson email prompting her to do so. Forcing a disability retirement on a plaintiff who can work with reasonable accommodations is bad faith, and for example, was has been used as a factor to deny off-sets. See *Arenson, supra; Knafel, supra.*

Defendant's last argument is that the Court has no equitable power to make such a ruling. This statement by the defendant flies in the face of: 1) the wide discretion that the Court enjoys in equity under *Franks v. Bowman Transp. Co.*, 424 U.S. 747, 763-64, 47 L. Ed. 2d 444, 96 S. Ct. 1251 (1976), and 2) the primary purpose of the make whole remedies of Title VII that the defendant otherwise has continually stressed and emphasized throughout its reply brief to the Court when the defendant perceived the make whole argument could be made to its advantage. Defendant's flip-flopping as to Title VII's make whole remedy should be rejected. The court should rule that the equitable remedy of ordering a temporary reinstatement so that Dr. Norden can apply for an OPM disability retirement pension is one of the make whole remedies available to Dr. Norden in this case and is not dependent on the defendant's consent.

## II.    Conclusion

Dr. Norden requests a ruling on each of the above 7 legal issues that are deemed necessary in order to streamline the settlement negotiations between the parties.

Dated: 5/19/08                                     Respectfully submitted,

                                                   __/s/   Alex Sliheet_____
                                                   Alex T. Sliheet, D.C. Bar No. 438977
                                                   Vickie F. Fang, p*ro hac vice*
                                                   *Attorneys for Dr. Norden*

Plaintiff's  SUR-REPLY